# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

_____

| | | |
|---|---|---|
| CHRISTINE SIMMONS, as Parent and Natural Guardian of T.S. and CHRISTINE SIMMONS, Individually; | ) ) ) | |
| | ) | |
| HSINYI LIU, as Parent and Natural Guardian of B.W. and HSINYI LIU, Individually, | ) ) | |
| | ) | |
| and All Others Similarly Situated, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No.: |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| JAY ROBERT ("J.B.") PRITZKER, in his official capacity as Governor of Illinois, ILLINOIS STATE BOARD OF EDUCATION, CITY OF CHICAGO SCHOOL DISTRICT 299, BOARD OF EDUCATION OF THE CITY OF CHICAGO, RONALD AMUNDSEN HIGH SCHOOL, OTTAWA TOWNSHIP HIGH SCHOOL #140, DR. CARMEN I. AYALA, in her official capacity as Superintendent of Education of Illinois; PEDRO MARTINEZ, in his official capacity as Chief Executive Officer of Chicago, Public Schools; MIGUEL DEL VALLE, in his official capacity as President of the City of Chicago Board of Education; and MICHAEL CUSHING, in his official capacity as Superintendent of Ottawa Township Public Schools, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

_____)

## CLASS ACTION COMPLAINT FOR AUTOMATIC AND PRELIMINARY INJUNCTION

Plaintiffs, by and through undersigned counsel, individually and on behalf of their special needs children (collectively referred to as "Plaintiffs"), for their Class Action Complaint and Request for Automatic Injunction against Governor Jay Robert Pritzker (hereinafter "J.B.

Pritzker"), the Illinois State Board of Education ("ISBE"); City of Chicago School District #299 ("aka" Chicago Public Schools) ("CPS"); Board of Education of the City of Chicago; Ronald Amundsen High School ("RAHS"); Ottawa Township High School #140 ("OTHS"); Dr. Carmen I. Ayala, in her official capacity as Superintendent of Education in the State of Illinois; Pedro Martinez, in his official capacity as Chief Executive Officer of Chicago Public Schools; Miguel Del Valle, President of the City of Chicago Board of Education; and Michael Cushing, in his official capacity as Superintendent of Ottawa Township Public School #140 ("individual Defendants," collectively "Defendants"), allege as follows:

## INTRODUCTION

1.  Chicago Public Schools ("CPS") and the Illinois State Board of Education ("ISBE") systematically failed to provide a distinct subset of children with disabilities a free appropriate public education ("FAPE") they are entitled to under Federal Law. This action is brought pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1401, et seq. ("IDEA"), Section § 504 of the Rehabilitation Act of 1973 ("§ 504), 29 U.S.C. § 794(a), 34 C.F.R. §104.4(a), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, 28 CFR §35.104, Illinois School Code, 23 Ill. Adm. Code §226.760, and 105 ILCS 5/14-8.02a *et seq.*, 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment, the Racketeer Influenced and Corrupt Organizations ("RICO") Act of 1970, 28 U.S.C. §§ 1961- 1968, *et seq.,* §901(a), and the concomitant implementing regulations, case law and public policy.

2.  Plaintiffs are children with disabilities, and parents of those children, who were denied their rights under IDEA, the ADA, § 504, 20 U.S.C. §1412(a)(3), 34 C.F.R. §300.125, the Illinois School Code, 23 ILL. ADM. CODE § 226.760, 105 ILCS 5/14/8.02, 42 U.S.C. §1983, and the

Equal Protection Clause of the Fourteenth Amendment for the 2019-2020, 2020-2021 and 2021-2022 school years and other by Defendants.

3. Plaintiffs seek declaratory and injunctive relief on behalf of themselves and a class of similarly situated students to enjoin Defendants from violating their procedural and substantive rights under IDEA, the ADA, § 504, the Fourteenth Amendment, the Illinois School Code, 23 ILL. ADM. CODE § 226.760, 105 ILCS 5/14-8.02a *et seq.*, and 42 U.S.C. §1983.

4. Plaintiffs have suffered and continue to suffer irreparable harm as a result of Defendants' refusal to adhere to the procedural safeguards set forth in the IDEA, in order to meet the educational needs of students with disabilities in Illinois School Districts, and will continue to suffer further irreparable harm, unless and until the Court grants declaratory and injunctive relief against Defendants to remedy the unlawful treatment of and discrimination against students with disabilities in Illinois School Districts, and to ensure that the educational rights of the students with disabilities are not violated.

## JURISDICTION AND VENUE

5. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331, based upon the federal question raised herein. There is a present and actual controversy between the parties to this action.

6. Jurisdiction of the United States District Court for the Northern District of Illinois is invoked under 20 U.S.C. § 1415(i)(2), providing for jurisdiction and a right of action in this Court for parties aggrieved under IDEA.

7. Jurisdiction of the United States District Court for the Northern District of Illinois is also invoked under Section 504 of the Rehabilitation Act of 1973 ("§504"), 29 U.S.C. § 794(a),

34 C.F.R. § 104.4(a), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12132, 28 § C.FR. §35.104, the Illinois School Code, 23 ILL. ADM. CODE § 226.760, 105 ILCS 5/14-8.02a *et seq.*, and 42 U.S.C. §1983.

8.   This Court has jurisdiction over the supplemental claims arising under Illinois state law pursuant to 28 U.S.C. § 1367(a).

9.   Jurisdiction is also invoked under 42 U.S.C. §1983.

10.  Jurisdiction is also invoked under the Racketeer Influenced and Corrupt Organizations Act ("RICO") of 1970 pursuant to 28 U.S.C. §§ 1961-1968, and 18 U.S.C. § 1964.

11.  This Court may also order declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201 and 2202.

12.  The Court also has pendent jurisdiction to adjudicate any state claims, which may arise out of the same facts as the federal claims asserted herein pursuant to 28 U.S.C. § 1367.

13.  Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), as Plaintiffs reside within the Northern District of Illinois and all events and omissions giving rise to this Complaint occurred in the Northern District of Illinois.

14.  The matter arose in this State; all Plaintiffs reside in this district and all the Defendants reside in the State of Illinois.

15.  Plaintiffs initiated, but have not exhausted, their administrative remedies under 20 U.S.C. § 1415(i)(2) because they fall within the exceptions to 20 U.S.C. § 1415(i)(2), including 20 U.S.C. § 1415(j).

16.  This Court has personal jurisdiction over Defendants in that they are residents of the State of Illinois.

## THE PARTIES

### B.W.

17.   Plaintiff B.W. was 15 years old in March of 2020.

18.   Plaintiff B.W. is a young man diagnosed with Down Syndrome and Cognitive delays, both recognized disabilities under the IDEA.

19.   Plaintiff Hsinyi Liu is the Parent and Natural Guardian of B.W.; she shares custody and guardianship of B.W. with Rex Wu, B.W.'s father.

20.   At all relative times herein, Plaintiffs Hsinyi Liu and B.W. resided in Cook County, Illinois.

21.   At all relative times herein, Plaintiffs resided in Chicago Public Schools District.

22.   Plaintiff B.W. was 15 years old when Chicago Public Schools ceased in-person instruction and services due to COVID-19 pandemic. Therefore, he was a minor during the 2019-2020, 2020-2021 and 2021-2022 school years. Attached hereto as EXHIBIT 1 is a copy of B.W.'s 2020 – 2021 Individualized Education Plan ("IEP").

### T.S.

23.   Plaintiff T.S. was 16 years old in March of 2020.

24.   Plaintiff T.S. is a child diagnosed with a general learning disability and cognitive impairment under the IDEA.

25.   Plaintiff Christine Simmons is the parent and natural guardian of T.S.

26.   At all relevant times herein, Plaintiffs Christine Simmons and T.S. reside in LaSalle County Illinois.

27.   At all relevant times herein, Plaintiffs resided in Ottawa Public School District

28.   Plaintiff T.S. was 16 years old when the Ottawa Public School District ceased in-person instruction and services due to the COVID-19 pandemic, and was therefore a minor during

the 2019-2020, 2020-2021, and 2021-2022 school years. Attached hereto as **EXHIBIT 2** is a copy of T.S.'s 2019-2020 IEP.

## DEFENDANTS

29. B.W. and T.S. are students with disabilities, as defined by 20 U.S.C. § 1401(3), and therefore, are entitled to receive both a FAPE and related services from the ISBE and respective School District Defendants.

30.  At all times relevant herein, Plaintiffs resided and continue to reside in Illinois.

31. B.W. and T.S. are not expressly named within this complaint because of privacy in IDEA and the Family Education Rights Privacy Act ("FERPA"), 20 U.S.C. §1232.

32. Defendant ISBE is, and was at all material times, an Illinois state education agency ("SEA") that manages and controls the educational affairs of Illinois public schools.

33. J.B. Pritzker is the current Governor of Illinois, with a principal office located at the James R. Thompson Center, 100 West Randolph, 16-100, Chicago, Illinois.

34. As Governor, J.B. Pritzker is the head executive agent of Illinois, and is responsible for the faithful execution of the law. ILL. CONT. ART. V.

35. School District Defendants are LEAs as defined by 14 U.S.C. §1401 and 34 C.F.R. §300.28 responsible for providing Plaintiffs with a FAPE.

36. The State of Illinois and the ISBE have established policies and procedures, both written and informal, concerning the implementation of IDEA.

37. The ISBE receives funding pursuant to IDEA, 20 U.S.C. §1412, the ADA, and §504 therefore, must comply with the statutes' provisions.

38. Defendant ISBE contains the State Education Department ("SED"), which is responsible for overseeing the provision of special education in Illinois.

39.     Defendant ISBE's principal place of business is in Springfield, Illinois.

40.     Board of Education of the City of Chicago is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. §300.28 responsible for providing B.W. with FAPE.

41.     Defendant City of Chicago School District #299 (Chicago Public Schools) is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. §300.28 responsible for providing B.W. with a FAPE.

42.     Defendant Ronald Amundsen Public School is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. §300.28 responsible for providing B.W. with FAPE.

43.     Defendant Ottawa Township High School #140 is the LEA as defined by 14 U.S.C. §1401 and 34 C.F.R. §300.28 responsible for providing T.S. with FAPE.

44.     Defendant Dr. Carmen I. Ayala, is the Superintendent for the Illinois State Board of Education ("ISBE").

45.     Defendant Pedro Martinez is the Chief Executive Officer of Chicago Public Schools.

46.     Defendant Miguel Del Valle is the President of the City of Chicago Board of Education.

47.     Defendant Michael Cushing is the Superintendent of Ottawa Township High School District.

## FACTUAL ALLEGATIONS

48.     Plaintiffs bring this action under IDEA, the ADA, § 504, the Illinois School Code, 23 ILL. ADM. CODE § 226.760, 105 ILCS 5/14-8.02a *et seq.*, RICO and § 1983 seeking declaratory and injunctive relief to enjoin the ISBE, the School District Defendants and other similarly situated local education authorities (LEAs) from violating their procedural and substantive rights under IDEA, § 504 and § 1983.

49.     The primary mechanism for ensuring implementation of IDEA's mandate of FAPE is the Individualized Education Plan ("IEP"), as defined by 20 U.S.C. § §1401 (14) and §1414(d).

50. An IEP is a written statement, prepared for every child with a disability, that sets forth the special education and related services, supplementary aids, and services, as well as program modifications or supports to be provided to the child, or on behalf of the child, to enable that child to achieve a comprehensive set of annual goals and short-term objectives.

51. Due to the COVID-19 pandemic, the United States Department of Education ("U.S. DOE") published two guidance documents to school districts in March of 2020: a Supplemental Fact Sheet and a Questions and Answers document. *See* **EXHIBIT 3** and **4**.

52. In specific, the Fact sheet stated: "To be clear: ensuring compliance with the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act (Sections § 504), the Illinois School Code, 105 ILCS 5/14-8.02a *et seq.*, and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction." *See* **EXHIBIT 3**.

53. The Questions and Answers sheet provided that each school would have to "make an individualized determination whether and to what extent compensatory services may be needed, consistent with applicable requirements, including to make up for any skills that may have been lost." *See* **EXHIBIT 4**.

54. The Questions and Answers sheet stated that each school would have to "make and individualized determination whether and to what extent compensatory services may be needed, consistent with applicable requirements, including to make up for any skills that may been lost." *See* **EXHIBIT 4**.

55. The U.S. DOE did not provide any waivers of IDEA to any state. *See* **EXHIBIT 3**.

56. On March 13, 2020, Governor J.B. Pritzker issued an Executive Order in response to COVID-19 ("Executive Order 2020-05") (COVID-19 Executive Order No. 3), provided in

Section 1, that "all public and private schools in Illinois serving pre-kindergarten through 12th grade students must close for educational purposed through March 30, 2020." *See* **EXHIBIT 5**.

57. In addition, Section 3 of COVID-19 Executive Order No. 3 provided pursuant to 10 ILCS 5/10-20.56(b) "Illinois school districts [are required] to receive approval by the school board before establishing and maintaining a program for the use of electronic-learning (e-learning)" was suspended during the effect of the Gubernational Disaster Proclamation." *Id*.

58. Section 3 of COVID-19 Executive Order No. 3 further eliminated the requirement to hold a public hearing to 10 ILCS 5/10-20.56(c) or the requirement to communicate protocol to teachers, staff, and students 30 days prior to implementation pursuant to 10 ILCS 5/10-20.56(d)(10).

59. On March 17, 2020, Governor J.B. Pritzker and the Illinois Education Association ("IEA"), Illinois Federation of Teachers ("IFT"), Illinois Association of School Administrators ("IASA"), Illinois Principals Association and the Illinois State Board of Education ("ISBE") issued a joint statement ("joint statement"). *See* **EXHIBIT 6**.

60. The joint statement indicated that the school closure days will be "Act of God Days" from March 17 through March 30, and that the organization would determine "what's best for our students in Illinois." *Id*.

61. On March 27, 2020, Defendant Governor J.B. Pritzker, IEA, IFFT, IASA and ISBE issued an updated joint statement advised that the ISBE stated as follows:

> [R]emote learning will occur for the duration of the suspension of in-person instruction. Districts must develop instructional remote learning to allow for student engagement and continuity of instruction. School districts will not be expected to extend their school year calendar. All Act of God days, remote planning days and remote learning days will count as actual days of pupil attendance. *See* **EXHIBIT 7**.

62.     The joint statement further advised ISBE convened an advisory group to develop recommendations for best practices in several areas including Special Education. *Id*. Of the recommendations offered, there were several important points noted as follows:

> (1) instructional remote learning differs from statutory eLearning plans;
> (2) districts must work with local unions to determine how instructional remote learning will occur;
> (3) time allotted to tasks should be age appropriate;
> (4) students will not be required to master and will not be penalized for failure to master new content;
> (5) instructional remote learning does not eliminate the teacher but instead works to develop a partnership with families to provide instructional remote learning in these difficult times.

*Id*.

Nothing in the joint statement specified a plan for additional accommodations, services for speech and language therapies or other required SECA or paraprofessional services as outlined in the student class members (B.W. and T.S.) IEPs.

63.     On June 4, 2020, Executive Order 2020-40 ("EO 2020-40") issued by Governor J.B. Pritzker allowed schools to reopen for in-person instruction. *See* **EXHIBIT 8**.

64.     EO 2020-40 issued the following guidelines prior to the reopening that are as follows:

- Require use of appropriate personal protective (PPE), including coverings;
- Prohibit more than 50 individuals from gathering in one space;
- Require social distancing be observed, as must as possible;
- Require that schools conduct symptom screenings and temperature checks of individuals self-certify that they are free of symptoms before entering school buildings; and
- Require an increase in schoolwide cleaning and disinfection.

*Id*.

65.     On June 23, 2020, ISBE issued a Transition Joint Guidance ("TJG") plan, which published specific Special Education Considerations. *See* **EXHIBIT 9**.

66.     The TJG (plan) specified the following:

[D]istrict remain responsible for ensuring that special education students receive a free appropriate public education…Blended Remote Learning Plans must address

the unique needs of students eligible for special education services…It is important to utilize paraprofessionals in the general education classroom during the transition from remote learning. Districts must adhere to timelines for annual IEP meetings and required evaluations. There continues to be limited flexibility from complying with federal and state laws. All individuals with Disabilities with Education Act and Section 504 timelines remain in effect. IEP teams should meet to determine whether any amendments to students IEPs are necessary to address students' current levels of performance…Students must receive education in their least restrictive environment, according to federal and state laws. Staff therapists, and paraprofessionals may be able to work in person with students if appropriate safety measures are in place.

*Id.*

67.     The ISBE received approximately $12,364,392,000 in IDEA funds for the 2019 school year and for the 2020 school year approximately $12,764,392,000, to be distributed to each named alleged County Enterprise at a designated amount. *See* **EXHIBIT 13**.

68.     Upon information and belief, the County Enterprises disturbed IDEA funds to School District Enterprises name herein, even though the County Enterprises and the ISBE knew or reasonably should have known that FAPE was not being offers to special education students during the shutdown. *See* **EXHIBIT 9**.

69.     After the closure of in-person instruction, in March of 2020, the U.S. DOE approved the ISBE's "application for Federal Fiscal Year (FFY) funds under Part B of the Individuals with Disabilities Education Act." *See* **EXHIBIT 10**.

70.     The ISBE assured the U.S. DOE of the following: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 C.F.R. §300.400 through 300.536 and in accordance with 20 C.F.R. §1412(a)(6); 34 C.F.R. §300.121" *See* **EXHIBIT 10, 11, 12**.

71.     ISBE assured the U.S. DOE as follows:

The Chief Executive Office of a State or designee of the officer shall assure that an interagency agreement or other mechanism for interagency coordination is is in effect

between each public agency described in subparagraph (b) of 34 § C.F.R. 300.154 and the State education agency, in order to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education are provided, include the provision of such services during the pendency of any dispute under §300.154(a)(3).
*See* **EXHIBIT 12**.

72. Upon information and belief, ISBE offered false assurances to U.S. DOE again on or about July 1, 2021. *Id.*

73. In the face of a new COVID-19 variant called Omicron, the Chicago Teachers Union (CTU) are "preparing to vote on whether to work remotely on Wednesday [January 5, 2022], with or without the district's blessing."[1]

74. On January 5, 2022, a newsletter from Alderman Jason C. Ervin of the 28th Ward, notified families in his district that the CTU "has voted not to report to work tomorrow [January 5], therefore, classes will be canceled for all CPS students on Wednesday, January 5."[2]

75. The Chicago Teachers Union is comprised of teachers and education providers within Chicago that are responsible for offering students with disabilities a FAPE, in accordance with the IDEA and their respective District policies.

76. By voting "not to report to work," CTU's actions directly deprive students with disabilities of a FAPE, as the last-agreed upon IEP for Plaintiffs and other students similarly situated, indicates in-person education and related services.

77. Each day the CTU interferes with Plaintiffs in-person education, is an injury to their constitutional rights, resulting in irreparable harm. *See R. v. Milwaukee Pub. Sch.*, 495 F. Supp 864, 870 (1980) ("Other courts which have considered the injury to a handicapped

---

[1] Dana Goldstein, The New York Times, Omicron Upends Return to School in the U.S. (2022), https://www.nytimes.com/live/2022/01/03/us/school-closings-covid (last visited Jan. 5, 2022).
[2] http://www.aldermanervin.com/information-for-you/cpslettertoparents

child who is deprived of the special educational facilities required to be provided under the law have also concluded that such injury constitutes irreparable harm.")

78. As it concerns OTHSD #140, on January 5, 2022, the school administration via a Facebook group page, sent out a survey asking parents about their opinion with regard to in-person learning versus remote learning.[3]

79. The Survey asks parents if their student(s) "will return to in-person learning ***when invited to do so.***" *Id.*

80. The Survey does not collect any information about those students with a qualifying disability under the IDEA. *Id.*

**B.W.**

81. Plaintiff B.W. was 15 years old during the 2019-2020 school year in March 2020 and turned sixteen (16) years old in August of 2020.

82. Plaintiff Hsinyi Liu is the Parent and Natural Guardian of B.W.; she shares custody and guardianship of B.W. with Rex Wu, B.W.'s father.

83. At all relative times herein, Plaintiffs reside in the Chicago Public School District.

84. B.W. is eligible for special education from Chicago Public Schools due to a diagnosis of Down Syndrome and Cognitive delay; his IEP lists the following disabilities: Intellectual Disability – Moderate Visual Impairment and Speech or Language Impairment. *See* **EXHIBIT 1**.

85. B.W. was eligible for the extended school year. *Id.*

---

[3]https://forms.office.com/Pages/ResponsePage.aspx?id=GAjgUsTWSEG6clYpZ8s5vdJ8LXQ7mwBBlGH1piFPPL
dUNFlQNFlXODlCNVBNWjVDT0pINEowMlE3RC4u&fbclid=IwAR2BERfQJGcfPwNqRb1xQIzcpYqcj3TWtZ
TK8Itoji-MOBrt2SxPDHNqiEA

86.   According to B.W.'s 2019 – 2020 IEP, B.W. is to receive 15 minutes monthly, from a Special Education Teacher (SECA) to Paraprofessional in the following subjects: English Language/Arts; Mathematics; Science, Social Services; World Language; Art; Music; Physical Education; and Extra Curricular Activities. In addition, B.W. was to receive 15 minutes quarterly instruction from a SECA or paraprofessional in Independent Functioning; Non-Academic and from an Occupational Therapist (OT) or SECA 15 minutes quarterly of independent functioning and from Teacher – VI or SECA 30 minutes monthly of Vision services and from a Speech Pathologist or SECA 15 minutes quarterly of Speech and language services. *Id.*

87.   B.W. received at-home instruction from March 16, 2020, through April of 2020. In April of 2020 thru June of 2020, B.W. resumed in-person classes via a hybrid setting where he would attend school in-person classes for a half-a-day, every other week. The weeks B.W. was in his father's custody, he would attend classes remotely; during the weeks in his mother's custody, he would attend a half-a-day of in-person instruction. Thus, B.W. received in-person instruction every other week during April 2020 – June 2020 school year consistent with his parents' shared custody agreement.

88.   The alterations and concomitant placement of B.W. at home receiving virtual instruction and services was procedurally defective because:

    a.   B.W.'s IEP was altered to complete virtual instruction without prior written notice or any written notice;

    b.   B.W.'s IEP was altered without the meaningful participation of his parents;

    c.   The School District failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing B.W.'s placement from

      in-person instruction and services to home placement with virtual instruction and services, without a paraprofessional;

    d.  The School District failed to ensure that B.W. could access a free and appropriate public education on the same level as his non-disabled peers.

89.   Upon information and belief, the school districts' failure to provide B.W. with in-person services during the 2019-2020 and 2020-2021 school year denied B.W. FAPE by the school district.

90.   Plaintiff Hsinyi Liu brought forth a Due Process Complaint against ISBE, asserting the denial of FAPE, as well as B.W.'s pendency rights (20 U.S.C. § 1415(j) and 34 CFR §300.518).

91.   Plaintiff Hsinyi Liu is not required to exhaust her administrative due process remedies under 20 U.S.C. § 1415(i)(2), on behalf B.W., because their claims fall within the exceptions specified by law.

92.   Plaintiff Hsinyi Liu has neither waived nor abandoned any claims or argument under IDEA or state law.

## T.S.

93.   Plaintiff T.S. was 16 years old during the 2019-2020 school year.

94.   Plaintiff Christine Simmons is the parent and natural guardian of T.S.

95.   At all relative times herein, Plaintiffs resided in the Ottawa Township Public School District.

96.   T.S. was eligible for special education from the Ottawa Township Public Schools due to a specific learning disability. *See* EXHIBIT 2.

97.   According to T.S. 2020-2021 IEP, T.S. is required to receive "extended time on test x1.5 in an alternate setting, receive an accommodation for classroom assessments." *Id*.

98. T.S.'s IEP also prescribes transition services, including for 10th grade a requirement to research information on the computer to learn about careers in law enforcement; a health class that instructs him on how to take care of personal hygiene and care, nutrition, and other life skills; and T.S. and his family will begin research the available supports or services after high school. *Id*.

99. T.S. received at-home instruction from March 16, 2020 through August 2020, and during the 2020-2021 school year.

100. The alterations and concomitant placement of T.S. at home receiving virtual instruction and services was procedurally defective because T.S.:

   a. T.S.'s IEP was altered to complete virtual instruction without prior written notice or any written notice;

   b. T.S.'s IEP was altered without the meaningful participation of his parents;

   c. The School District failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing T.S.'s placement from in-person instruction and services to home placement with virtual instruction and services;

   d. The School District failed to ensure that T.S. could access a free and appropriate public education on the same level as his non-disabled peers.

101. When T.S. returned to school in the fall of 2020, he only received a half-a-day of in-person instruction, thereby cutting his educational hours, to be provided in accordance with the terms of a FAPE under the IDEA, was essentially cut in half.

102. Upon information and belief, the school districts' failure to provide T.S. with in-person services during the 2019-2020 and 2020-2021 school year denied T.S. a FAPE.

103. Plaintiff Christine Simmons brought forth a Due Process Complaint against ISBE asserting the denial of FAPE, as well as T.S.'s pendency rights (20 U.S.C. § 1415(j) and 34 §300.518).

104. Plaintiff Christine Simmons is not required to exhaust her administrative due process remedies under 20 U.S.C. §1415(i)(2), on behalf of T.S., because their claims fall within the exceptions specified by law.

105. Plaintiff Christine Simmons has neither waived nor abandoned any claims or arguments under IDEA or relevant state law.

**CLASS ACTION ALLEGATIONS**
**GENERAL CLASS ALLEGATIONS**

106. Plaintiffs bring this action on behalf of themselves and all other similarly situated school aged children with disabilities covered by IDEA in Illinois and their parents to assert the claims alleged in this complaint on a common basis.

107. Specifically, Plaintiffs seek a judgment declaring that plaintiffs and the putative class members' unilateral change of educational placement for more than ten (10) cumulative days in each of the 2019-2020 and 2020-2021 school years respectively, from in-person instruction and services to virtual instruction and services violated the procedural safeguards of IDEA and discriminated against Plaintiffs under IDEA, Illinois State law, § 504, the ADA, and § 1983.

108. Plaintiffs also seek an injunction to prevent the Defendant's herein, and other similarly LEAs from engaging in similar conduct for more than ten cumulative days in the 2021-2022 school year and beyond, in the event of any future school closures.

109. A class action is a superior means, and the only practicable means, by which Plaintiffs and unknown class members can challenge the actions of Defendants herein and other similarly situated LEAs in Illinois, restricting the rights of named Plaintiffs and similarly situated class

members, under IDEA, Illinois State law, the ADA, § 504, §1983, and RICO without providing them due process of law.

110. This action is brought and may properly be maintained as a class action under Federal Rule of Civil Procedure 23(a) and 23(b)(2).

111. This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Rule 23(a), as well as the requirements of Rule 23(b)(2), where applicable.

### Rule 23(a)(1): Numerosity

112. The class, which is still being discovered, is likely so numerous that joinder is impracticable.

113. All the putative class members are children with disabilities under IDEA in Illinois and their parents.

114. In the 2019-2020 school year there was a total of 300,356 students with disabilities receiving special education services pursuant to ISBE's annual report. *See* **EXHIBIT 13**.

115. However, the total number of individuals denied the procedural safeguards under IDEA – either in the past, currently, or in the future – is still being investigated.

### Rule 23(b): Commonality

116. Common questions of law and fact exist as to all members of the class.

117. All class members seek relief on the common legal question of whether the ISBE, the School District Defendants, and other similarly situated LEAs violated the IDEA, the ADA, § 504, the Equal Protection Clause and Substantive/Procedural Due Process Clauses of the Fourteenth Amendment, Illinois School Code, 23 ILL. ADM. CODE §226.760, 105 ILCS 5/14-8.02a *et seq.*, §1983, and RICO by altering Plaintiff's IEPs and changing their educational placement, without following the regulations promulgated under the statutes.

118. All class members seek the same injunctive relief.

18

119. All class members also present common factual questions regarding the Defendants' closures of schools and their concomitant educational placement.

120. All class members seek injunctive relief requesting that the Court:

    1) Issue a judgment declaring that the class members' pendency placement is in-person instruction services.

    2) Issue a judgment declaring that the Plaintiffs' and the class members' unilateral change of educational placement for more than ten (10) cumulative days in each of the 2019-2020 and 2020-2021 school years, respectively, from in-person instruction and services to virtual instruction and services, violated the procedural safeguards of IDEA and discriminated against Plaintiffs under IDEA, § 504, the ADA, the Equal Protection Clause and Substantive/Procedural Due Process Clauses of the Fourteenth Amendment, 105 ILCS 5/14-8.02a *et seq.*, and §1983;

    3) Issue a judgment declaring that the ISBE failed to monitor and provide proper oversight and resources to School District Defendants and similarly situated LEAs to comply with the procedural safeguards guaranteed by IDEA for the 2021-2022 school year for the class members;

    4) Order the ISBE, School District Defendants, and similarly situated LEAs to comply with the procedural safeguards guaranteed by IDEA for the 2021-2022 school year for the class members;

    5) Assign a Special Monitor to:

        a) Oversee the completion of IEEs for all the class members to determine regression and loss of competencies due to the unilateral changes to their IEPs

and placements, and reconvene IEP Team meetings within thirty (30) days of the completion of the IEEs.

b) Make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies;

c) Ensure the expert recommendations are included in writing in the class members' IEP documents.

6) Require the ISBE and School District Defendants to comply with IDEA, the ADA, §504, the Equal Protection Clause and Substantive/Procedural Due Process Clauses of the Fourteenth Amendment, 105 ILCS 5/14-8.02a *et seq.*, §1983 and RICO in the event of any future school closures; and

7) Assign a RICO Special Monitor to:

a) Oversee the completion of an independent audit of Defendants' expenditures of their IDEA Part B Funds from March of 2020 to the present;

b) Oversee the Defendants' expenditures of their IDEA Part B Funds for the 2021-2022 school year to ensure Defendants spend IDEA Part B Funds for instruction and/or services for students with disabilities under IDEA; and

c) Ensure any IDEA Part B Funds that Defendants spent on items other than instruction and/or services for students with disabilities under IDEA from March of 2020 through the present are reimbursed to a monitored account to be spent only upon review and approval by the RICO Monitor.

**Rule 23(a)(3): Typicality**

121. Plaintiffs' claims are typical of the claims of other respective members of the class.

122. Like all members of the class, Plaintiffs are children with disabilities under IDEA in Illinois or their parents, who were denied the procedural due process or substantive rights by IDEA, the ADA, §504, the Equal Protection Clause and Substantive/Procedural Due Process Clauses of the Fourteenth Amendment, 105 ILCS 5/14-8.02a *et seq.*, and §1983.

123. All members of the class claim that the ISBE, School District Defendants, and similarly situated LEAs violated their procedural and substantive due process rights provided by IDEA, the ADA, § 504, the Equal Protection Clause and Substantive/Procedural Due Process Clauses of the Fourteenth Amendment, 105 ILCS 5/14-8.02a *et seq.*, and §1983.

124. All members of the class, including named Plaintiffs, seek a declaratory judgment that the actions of Defendants were unlawful and an injunction preventing Defendants from committing such actions in the future.

125. There is nothing distinctive about named Plaintiffs' claims for declaratory, injunctive or pendency relief that would lead to a different result in their case than in any case involving other class members.

**Rule 23(a)(4): Adequacy**

126. Plaintiffs are adequate representatives of the class because their interest in the vindication of their rights is aligned with the interests of the other class members.

127. Plaintiffs are members of the class, and their interests do not conflict with those of the other class members with respect to any claims.

128. Plaintiffs are represented by attorneys from the Brain Injury Rights Group, who have knowledge of IDEA, § 504, 29 U.S.C. §794(a), 34 C.F.R. § 104.4(a), ADA, 42 U.S.C. §

12132, 28 C.F.R. §§ 34.104, 105 ILCS 5/14-8.02a *et seq.*, §1983, the Equal Protection Clause of the Fourteenth Amendment, RICO, and other relevant issues.

129. Class counsel has developed and continues to develop relationships with Plaintiffs and others similarly situated.

<u>**Rule 23(b)(2): Declaratory and Injunctive Relief Class**</u>

130. A class action is appropriate for declaratory and injunctive relief under Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the class – namely the unilateral change of placement in March of 2020, from in-person instruction and services to virtual instruction and services ***<u>and continuing</u>*** – without complying with Plaintiff's rights under IDEA, the ADA and 105 ILCS 5/14-8.02a *et seq.*, and §1983.

131. The class seeks declaratory and injunctive relieve to enjoin the ISBE, the School District Defendants, and similarly situated LEAs from denying the rights guaranteed under IDEA, the ADA, §504, the Equal Protection Clause and Substantive/Procedural Due Process Clauses of the Fourteenth Amendment, 105 ILCS 5/14-8.02a *et seq.*, and §1983, to all Plaintiffs with disabilities.

132. Class status is particularly appropriate because there is a risk that any individual members' claim for declaratory or injunctive relief will become moot before the litigation is resolved.

133. There is a risk that a class member that is or was a senior during the 2019-2020 and 2020-2021 school years will lose eligibility for injunctive relief under IDEA.

<u>**Rule 23(b)(3): Damage Class**</u>

134. No class damages are sought at this time except for nominal damages and compensatory education, in an amount that this Court deems appropriate, but no claims for damages should be deemed to be waived by this lawsuit.

## CAUSES OF ACTION

### COUNT ONE:

### SYSTEMATIC VIOLATIONS OF THE
### INDIVIDUALS WITH DISABILITIES EDUCATION ACT

#### Systemic Violation 1: Prior Written Notice

135. Plaintiffs reiterate, repeat, and affirm each allegation set forth above as if fully set forth herein.

136. 20 U.S.C. § 1415(c)(1) requires that a LEA give prior written notice of any action proposed by the LEA regarding the provision of a FAPE.

137. The LEAs including the School District Defendants did not give Plaintiffs prior written notice of its closure of schools and alteration of Plaintiffs IEPs and school placements from in-person instruction or services.

138. ISBE failed to appropriately monitor and conduct oversight of its LEAs, including the School District Defendants, to ensure they complied with IDEAs procedural safeguards upon the March 2020 closing of its schools.

139. After returning students to in-person learning in the later half of the 2021 school year, ISBE again failed to protect and ensure the rights of the Plaintiffs and those similarly situated, as they closed their doors to in-person learning as of January 3, 2021, with no clear end in sight.

140. It is clear that Defendants herein choose to ignore the clear constitutional rights of the Plaintiffs and purported class.

141. As a result of Defendants' malfeasance, Plaintiffs' current educational placement of in-person learning has been unilaterally transferred to a remote online learning platform without the appropriate or last-agreed upon services within each respective student's IEP.

**Systemic Violation 2: Educational Placements**

142. 20 U.S.C. §1414(e) states that each LEA and SEA "shall ensure that the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child."

143. 20 U.S.C. § 1415(j) states, "[d]uring the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. §1415(j).

144. 20 U.S.C. § 1415(j) obligates courts to implement pendency placement via an automatic injunction, without analysis of the traditional injunction elements. *Ridley School Dist. V. M.R.*, 2015 WL 1619420, at *4 (2015).

145. The U.S. Supreme Court "has emphasized that the provision's text is 'unequivocal' and states plainly that the child 'shall' remain in his current educational placement 'during the pendency of any proceedings initiated under the act.'" *Id.*

146. The LEAs, including the School District Defendants, did not ensure that the parents of each child with a disability were included as members of any IEP team that made decisions on the educational placement of their children.

147. The LEAs, including the School District Defendants, did not maintain Plaintiffs' educational placement through in-person instruction.

148. The LEAs, including the School District Defendants, did not maintain Plaintiffs' pendency placement person instruction.

149. Under "extraordinary circumstances" a school district may remove a student from their educational placement for no more than ten (10) days without triggering a violation of 20

U.S.C. §1415(j) ***but only where a student poses an immediate threat to the safety of others.*** *See Honig*, 484 U.S. 305, 325-26, n.8.

150. Such a unilateral action by the school district may create a "change in placement," and by the terms of the IDEA, a change in placement can only occur with the consent of the parents, or after written notice, and the opportunity for a hearing. *Honig,* at 325.

151. ISBE failed to appropriately monitor and conduct oversight of School District Defendants to ensure compiled with IDEA's procedural safeguard upon the March 2020 closing of its schools.

152. ISBE failed to appropriately monitor and conduct oversight of School District Defendants to ensure compiled with IDEA's procedural safeguard upon the January 2022 closing of its schools.

153. Plaintiffs are entitled to all appropriate relief available under IDEA, including injunctive relief declaring that the class members' pendency placement is in-person instruction and ISBE and School District Defendants to comply with IDEA in the event of any future school closures for which U.S. DOE does issue IDEA waivers.

### **Systemic Violation 3: Failure to Reconvene IEP Meetings**

154. 20 U.S.C. §1414(d)(3)(F) states that an IEP may be amended by the entire IEP Team.

155. The School District Defendants did not reconvene IEP Team Meetings to change Plaintiffs' IEPs to provide complete virtual instruction and services.

156. ISBE failed to appropriately monitor and conduct oversight the School District Defendants, and similarly situated LEAs, to ensure that Defendants complied with IDEA's safeguards upon the March 2020 closing of its schools.

157. ISBE failed to appropriately monitor and conduct oversight the School District Defendants, and similarly situated LEAs, to ensure that Defendants complied with IDEA's safeguards upon the January 2022 closing of its schools.

**Systemic Violation 4: Discrimination on the Basis of Disability and Denial of Access to Educational Services**

158. Defendant ISBE must ensure that each LEA in Illinois, including the School District Defendants, take steps to ensure that children with disabilities within its jurisdiction have access to the same educational opportunities as their non-disabled peers. 20 U.S.C. § 1412(a)(2); §1413(a)(1); 34 C.F.R. §300.110.

159. Defendants' systematic failure to ensure that children with disabilities had appropriate access to the same educational opportunities as their non-disabled peers is a violation of IDEA.

160. Defendants' actions have caused Plaintiffs damages, including regressions in skills and loss of competencies regarding the goals and objectives outlined in their IEPs.

**Systemic Violation 5: ISBE's denial of FAPE requires reimbursement to parents for out-of-pocket expenditures and private placement**

161. Pursuant to 20 U.S.C. §1415(i)(2)(C), Plaintiff Parents should be reimbursed for expenses and additional costs associated with the closures and deprivation of in-person education and related services, including but not limited to tutoring expenses, specialist co-pays, and tuition paid by Plaintiff Parents to provide the necessary education and services that the student(s) required when Defendants deprived Plaintiff Students of a FAPE.

**AS AND FOR A SECOND CAUSE OF ACTION**

**VIOLATION OF THE REHABILITATION ACT, 29 U.S.C. §794**

162. Plaintiffs reiterate, repeat, and reaffirm each allegation set forth above as if fully herein.

163. Section 504 of the Rehabilitation Act of 1973 and its implementing regulations provide, "no otherwise qualified individual with a disability in the United States … shall, solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); 34 C.FR. § 104.4(b)(I)(ii).

164. Among other requirements, entities subject to Section 504 must provide equal opportunity to qualified persons with disabilities to participate in or benefit from any aid, benefit, or service they make available. 34 C.F.R. §104.4(b)(1)(ii).

165. Entities subject to Section 504 must avoid otherwise limiting a qualified individual with disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit or service. 34 C.F.R. §104(b)(1)(vii).

166. A person has a disability under section 504 if they have a physical or mental impairment that substantially limits one or more of their major life activities. 42 U.S.C. §12102(1).

167. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning and working. 42 U.S.C. §12102(2)(A).

168. A "qualified individual with a disability" is one who, with or without reasonable accommodations for their disability, meets essential eligibility requirements to receive services from or participate in the programs or activities of a recipient of federal financial assistance. 29 U.S.C. §794(a).

169. A "program or activity" includes local education agencies, public boards of education, and school systems. 29 U.S.C. §794(b)(2)(B); 20 U.S.C. §7801(26).

170. A "recipient of federal financial assistance" is a public or private agency or other entity to which federal financial assistance is extended directly or through another recipient. 34 C.F.R. §104.3(f).

171. Student Plaintiffs are individuals having impairments, including but not limited to specific learning disorders, multiple disabilities, Other Health Impairment, ADHD, PDD ("Pervasive Development Disorder"), autism specific learning disability, and mild intellectual disability that affects the major life activity of learning.

172. Student Plaintiffs are otherwise qualified individuals with disabilities who meet essential eligibility requirements to receive services from or participate in the programs or activities of the School District Defendants. 42 U.S.C. §12131(2); 29 U.S.C. §794(a).

173. The ISBE and the School District Defendants receive federal funds to comply with §504.

174. The ISBE and School District Defendants are entities subject to the non-discrimination requirements of Section §504. *See* 29 U.S.C. §794(a); 34 C.F.R. §104.4.

175. The School District Defendants and other similarly situated LEAs' closure of in-person instruction in March of 2020 discriminated against Plaintiffs, as persons with disabilities, who necessitate in-person services including occupational therapy, speech therapy, social work services, and resource room services, by denying them equal access and otherwise limiting their access to education, programs, and services as compared to their non-disabled peers. *See* 34 C.F.R. §§ 104.4(a), 104.4(b)(ii) and (iv).

176. The LEAs' closure of in-person instruction in March of 2020, was unlawful disabilities discrimination that violated Section 504 of the Rehabilitation Act of 1973.

177. As a proximate cause of these violations of Section 504, Plaintiffs have suffered harm as set forth above.

## AS AND FOR A THIRD CAUSE OF ACTION

### VIOLATION OF TITLE II OF AMERICANS WITH DISABILITIES ACT, 42 U.S.C. § 12101

178.  Plaintiffs reiterate, repeat, and affirm each allegation set forth above as if fully set forth herein.

179.  Title II of the ADA and its implementing regulations forbid public entities, including local educational agencies, to exclude or deny people with disabilities the benefits of its services, programs, or activities, or to discriminate based on disability. 42 U.S.C. §12132; 28 C.F.R. § 35.104.

180.  Prohibited disability-based discrimination by public entitles includes the failure to provide qualified individuals with disabilities an equal opportunity to participate in or benefit from aides, benefits, or services or "otherwise limit" a qualified individual with a disability in the enjoyment of any right, privilege, aid, benefit, or service. 28 C.F.R. §§35.130(b)(1)(h), (vii).

181.  Prohibited discrimination additionally includes the failure to make reasonable modifications as necessary to avoid discrimination against an individual based on their disability. 28 C.F.R. § 35.130(b)(7).

182.  An "individual with a disability" is one who has a physical or mental impairment that substantially limits one or more of their major life activities. 42 U.S.C. §12102(1).

183.  Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning, and working. 42 U.S.C. §12102(2)(A).

184.  A "qualified individual with a disability" is one who, with or without reasonable accommodations for his or her disability, meets essential eligibility requirements to receive

services from or participate in the programs or activities of the public entity. 42. U.S.C. §12131(2).

185. Plaintiffs are individuals having impairments, including but not limited to, ADHD, autism, specific learning disabilities, and intellectual disabilities, and intellectual disabilities, that affect majority life activity of learning.

186. Plaintiffs' impairments affect their major life activities including learning. 42 U.S.C. §12102(2)(A).

187. Plaintiffs are otherwise qualified individuals with disabilities who meet the essential eligibility requirements to receive services from or participate in the programs or activities of the School District Defendants. 42 U.S.C. §12131(2).

188. The ISBE and the School District Defendants are public entities and officials forbidden to discriminate based on disability and have a duty to provide honest services. 42. U.S.C. §12132 *et seq*; 18 U.S.C. §§1341, 1346.

189. The School District Defendants and other similarly situates LEAs' closure of in person instruction in March of 2020 and again in January 2020 discriminated against Plaintiffs, as persons with disabilities, who necessitate in-person services including occupational therapy, speech therapy, social services and resource room services, by denying them equal access and otherwise limiting their access to education, programs, and services as compared to their non-disabled peers. 34 C.F.R. §§104.4(a), 104.4(b)(ii) and (iv).

190. As a proximate cause of these violations of Title II of the Americans with Disabilities Act, Plaintiffs have suffered harm as set forth above.

## AS AND FOR A FOURTH CAUSE OF ACTION

### VIOLATION OF FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION (42 U.S.C. § 1983) EQUAL PROTECTION

191. Plaintiffs reiterate, repeat, and affirm each allegation set forth above as if fully set forth herein.

192. Section 1 of the Fourteenth Amendment provides:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws. U.S. CONST., amend XIV, § 1.

193. To provide a remedy for violations of the Fourteenth Amendment, Congress has entered §1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceedings for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

> 42. U.S.C. §1983.

194. Defendants deprived Plaintiffs of their rights as guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of the Civil Rights Act of 1871, 42 U.S.C. §1983, when they closed their in-person instruction in March of 2020 and again in January 2022.

195. Specifically, Plaintiffs have been deprived of their right to equal protection under the Fourteenth Amendment by the acts of Defendants under the color of state authority.

196. Defendants' closure of schools in March of 2020, the reconvene of in-person learning, and initiating another closure in January 2022, the end result disparate impacts Plaintiffs in violation of the IDEA, ADA, Section §504, the Rehabilitation Act of 1973, the Fourteenth Amendment, and other relevant federal and state law.

197. As a direct and proximate result thereof, Plaintiffs suffered harm including significant regressions in skills and loss of competencies.

198. Defendants rendered the Plaintiffs more vulnerable to harm by closing its schools.

199. By closing schools to in-person learning, Defendants herein not only deprive Plaintiffs and the purported class of their constitutional and federal rights, but inflict irreparable harm for each day Defendants impede on Plaintiffs' rights as set forth by law.

## AS AND FOR A FIFTH CAUSE OF ACTION

## VIOLATION OF FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION (42 U.S.C. § 1983) SUBSTANTIVE DUE PROCESS

200. Plaintiffs reiterate, repeat, and affirm each allegation set forth above as if fully set forth herein.

201. Section 1 of the Fourteenth Amendment provides:

All person born or naturalized in the United States and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. CONST., amend XIV, § 1.

32

202. To provide a remedy for violations of the Fourteenth Amendment, Congress has enacted §1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. §1983.

203. Defendants deprived Plaintiffs of their substantive due process rights as guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of the Civil Rights Act, 42 U.S.C § 1983, ADA, §504, IDEA and other relevant federal and state law when it closed its in-person instruction in March of 2020, and again in January 2022.

204. Defendants' closure of schools in March of 2020 and January 2022 violated Plaintiffs' substantive due process rights under IDEA, Section 504, 29 U.S.C. § 794(a), 34 C.F.R. § 104.4(a), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12132, 28 § C.FR. §35.104, and 42 U.S.C. §1983.

205. As a direct and proximate result thereof, Plaintiffs suffered harm including significant regressions in skills and loss of competencies.

## AS AND FOR A SIXTH CAUSE OF ACTION

### VIOLATION OF 23 ILLINOIS ADMINISTRATIVE CODE § 226.710 AND 105 ILCS/14/8.02 *et seq*.

206. Plaintiffs reiterate, repeat, and affirm each allegation set forth above as if fully set forth herein.

207. IDEA 20 U.S.C. § 1412(a)(2) is codified in Ill. Admin. Code Title 23, §226.710.

208. Defendant ISBE failed to ensure that each LEA in Illinois including School District Defendants failed to take steps that provide children with disabilities have access to the same educational opportunities as their non-disabled peers

209. 105 ILCS 5/14/8.02 requires that "the State Board of Education ("ISBE") shall make rules under which local school boards shall determine the eligibility of children to receive special education. Such rules shall ensure that a free appropriate public education be available to all children with disabilities as defined in §14-1.02." 105 ILCS 5/14/8.02(a).

210. ISBE failed to provide FAPE from March 2020 to June 2020 where all in person services as prescribed by each student's IEP ceased.

211. ISBE has denied Plaintiffs and those similarly situated a FAPE as a result of the closure initiated as of January 3, 2022 by closing in-person learning and services, and requiring *all* students to learn via a remote online learning platform, without a foreseeable end in sight.

## AS AND FOR A SEVENTH CAUSE OF ACTION

### VIOLATION OF THE RACKETEER INFLUENCE AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. § 1962(c) (Against Individual Defendants)

212. Plaintiffs reiterate, repeat, and affirm each allegation set forth above as if fully set forth herein.

213. This RICO cause of action arises from a scheme by individual Defendants, to fraudulently use their respective enterprises to defraud Plaintiffs, the beneficiaries of IDEA Part B, upwards of approximately $549,779,217 in 2020 and $664,232,575 (including American Rescue Plan funds) in 2021 by making false assurances to the United States Department of Education ("USDOE") that the ISBE and its LEAs complied with IDEA during the COVID-19 pandemic. *See* **EXHIBIT 12** Part B Application for Fiscal Year 2021, pg. 2.

214. After submitting the false assurances to obtain hundreds of millions of dollars in funding for the 2020 extended school year, Defendants **_again_** submitted false assurances to secure funding for the 2021 extended school year.

215. Upon information and belief, Defendants have or plan to submit false assurances regarding the compliance of their respective programs with the terms of the IDEA for the 2022 school year.

216. Such false assurances include that Defendants have, and continue to provide, a FAPE for students with disabilities within their respective jurisdictions despite school closures, remote education services in lieu of in-person learning, and IEPs that mandate in-person learning and related services.

## The Applicable Statutes

217. Under the U.S.C. § 1962(c), it shall be unlawful for "any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate directly or indirectly in the conduct of such enterprise's affairs for a pattern of racketeering activity or collection of unlawful debt."

218. Under 18 U.S.C. § 1962(d), it is unlawful to conspire to violate any of the RICO substantive provisions, including § 1962(c). 18 U.S.C. § 1964(a) creates a private cause of action to "prevent and restrain violations' of §1962.

219. The individual enterprises, as described in 18 U.S.C. § 1961(4), are: Illinois State Board of Education ("ISBE"); City of Chicago School District 299 (aka Chicago Public Schools ("CPS")); Board of Education of the City of Chicago; Ronald Amundsen High School; and Ottawa Township High School or collectively, "the RICO Defendants."

220. Each enterprise is an association in fact consisting of individuals who function together as a continuing unit with consensual decision-making authority.

221. Individual RICO Defendants herein conduct the affairs of their respective enterprise in part through predicate activity which defrauds Plaintiffs through false assurances that the School District Defendants and similarly situated LEAs complied with IDEA during the COVID-19 pandemic. *See* EXHIBIT **10, 11,** and **12**.

222. Upon information and belief, Local Education Agencies (LEAs) are required to submit quarterly expenditure reports within 20 days following the end of each quarter (*i.e.* September 30, December 31, March 31, and June 30).

223. Upon information and belief, the LEAs failed to spend the IDEA Part B earmarked funds for each respective student with a disability residing within their jurisdiction in accordance with the terms of the IDEA.

224. Upon information and belief, LEAs submitted quarterly expenditure reports with fraudulent and untrue information.

225. Alternatively, upon information and belief, the ISBE, as the State Education Agency (SEA), received the aforementioned quarterly expenditure reports that reflected little to no expenses for the education and related services of the disabled students within their jurisdiction, yet ISBE re-assured the United States Department of Education that the terms of the IDEA were being met, notwithstanding the significant decrease in expenses, or lack thereof, which clearly indicate that the LEA had failed to provide a FAPE.

226. For example, Dr. Carmen I. Ayala, in her official capacity as the current Superintendent of the ISBE, is among the individuals who conduct the operation of the enterprise in part through racketeering activity, as described further below.

227. ISBE assured the U.S. DOE that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 C.F.R. §§300.400 through 300.536 and in accordance with 20 U.S.C. §1412(a)(6); 34 C.F.R. §300.121." *See* **EXHIBIT 10, 11,** and **12**.

228. ISBE assured the U.S. DOE that "[t]he Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § C.F.R. 300.154 and the State Education Agency, in order to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education is provided, include the provision of such services during the pendency of any dispute under §300.154(a)(3)." *Id*.

229. Upon information and belief, RICO Defendants herein submitted additional fraudulent IDEA Part B assurances for the 2020-2021 and 2021-2022 extended school year(s).

230. Upon information and belief, these annual assurances are submitted via email, or wire to the United States Department of Education.

231. Upon information and belief, these annual assurances may have been alternatively submitted via mail to the United States Department of Education.

232. Each individual Defendant named herein conducted the affairs of his/her respective enterprise as set forth below.

233. Each individual enterprise operated as an ongoing organization separate and distinct from the individual defendants.

234. Each enterprise has a structure separate and apart from the racketeering activity in which the individual Defendants engaged, *i.e.*, each enterprise is an entity which consists of numerous

different individuals who function together with consensual decision-making authority to conduct the management and operation of the particular entity.

235. Each enterprise had longevity sufficient to permit their respective individual RICO Defendants to pursue the enterprise's purpose.

236. The activities of each enterprise affected interstate commerce through mail and/or interstate wires with the U.S. DOE in Washington D.C.

237. Each enterprise affected interstate commerce through each. Individual Defendant's unlawful transmission of assurances of compliance with IDEA via interstate electronic mail that was fraudulently prepared and submitted in furtherance of the racketeering scheme.

238. Each enterprise affected interstate commerce based on each individual Defendant's collection of IDEA Part B funds wired to them through interstate banks and otherwise from the U.S. DOE based on these fraudulent assurances.

## The Racketeering Violation

239. On or about March of 2020 and continuing up through the date of filing of this complaint, each individual RICO Defendant named herein, person(s) associated herein, a person associated with or employed by their respective enterprise, did knowingly and unlawfully conduct, or participate, directly or indirectly, in each Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. §§1961(1) and §1961(5), all in violation of 18 U.S.C. §1962(c).

240. Each Defendant engaged in a pattern of racketeering activity by committing a least two acts of racketeering by committing at least two acts of racketeering activity within 10 years of each individual act.

241. As mentioned above, LEAs are required to submit quarterly expenditure reports within 20 days following the end of each quarter (*i.e.* September 30, December 31, March 31, and June 30). *See* ¶212.

242. Upon information and belief, the LEAs failed to expend the IDEA Part B earmarked funds for each respective student with a disability residing within their jurisdiction in accordance with the terms of the IDEA.

243. Upon information and belief, these earmarked funds were not spent on the education and related services indicated in each respective Plaintiff and purported class member's IEP, but instead were either misappropriated or misspent.

244. Upon information and belief, LEAs submitted quarterly expenditure reports with fraudulent and untrue information for the following quarterly reports: March 2020, June 2020, September 2020, December 2020, March 2021, June 2021, September 2021, and December 2021.

245. In the alternative upon information and belief, the ISBE, as the SEA, received the aforementioned quarterly expenditure reports (March 2020, June 2020, September 2020, December 2020, March 2021, June 2021, September 2021, and December 2021) that reflected little to no expenses for the education and related services of the disabled students within their jurisdiction, yet ISBE re-assured the United States Department of Education that the terms of the IDEA were being met, notwithstanding the significant decrease in expenses, which clearly indicate that the LEA were failing, and continue to fail to provide a FAPE.

246. Each individual Defendant's actions violated the federal mail and wire fraud statues, 18 U.S.C. §1341 and 18 U.S.C. §1343, predicate acts for purposes of racketeering.

247. From March of 2020 through the present, each individual RICO Defendant knowingly and intentionally engaged in an ongoing pattern of racketeering activity under 18 U.S.C. §1962(c), by committing the predicate acts of wire fraud and mail fraud as set forth herein.

248. The fraudulent schemes involved using the interstate wires to defraud Plaintiffs, the beneficiaries of IDEA Part B Funds, of their procedural and substantive rights.

## **Predicate Acts by Officials of Each Enterprise**

### DEFENDANT PEDRO MARTINEZ FOR THE CHICAGO PUBLIC SCHOOLS INCLUDING RONALD AMUNDSEN HIGH SCHOOL

249. Upon information and belief, Pedro Martinez, in his official capacity as the Chief Executive Officer of the Chicago Public Schools, assured the ISBE, between January of 2019 to July 2019, that the ISBE had "policies and procedures in place as required by Part B of the Individuals with Disabilities Act." *See* **EXHIBIT 10**, ISBE SFY 2020 IDEA Basic and Preschool Grant Awards by District, Charter School and State Agency.

250. In addition, upon information and belief, Pedro Martinez, in his official capacity as current Chief Executive Officer of the Chicago Public Schools, assured ISBE, between January 2019 and July 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 C.F.R. §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. §300.121." *Id*.

251. Upon information and belief, Pedro Martinez, in his official capacity as current Chief Executive Officer ("CEO") of CPS, made assurances to the ISBE, between January of 2020 and July of 2020, that ISBE had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id*.

252. Upon information and belief, Pedro Martinez, in his official capacity as current CEO of CPS, made assurances to the ISBE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 C.F.R. §§ 300.400 through 300.536, and in accordance with 20 U.S.C. §1412(a)(6); 34 C.F.R. §300.121." *Id.*

253. Upon information and belief, Pedro Martinez, in his official capacity as current CEO of CPS, made assurances to the ISBE in the form of quarterly reports (March 2020, June 2020, September 2020, December 2020, March 2021, June 2021, September 2021, and December 2021), and annually for the 2020-2021 and 2021-2022 school years, that "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 C.F.R. §§ 300.400 through 300.536, and in accordance with 20 U.S.C. §1412(a)(6); 34 C.F.R. §300.121."

254. Upon information and belief, Pedro Martinez, in his official capacity as current CEO of CPS, made assurances to the ISBE in the form of quarterly reports (March 2020, June 2020, September 2020, December 2020, March 2021, June 2021, September 2021, and December 2021), and annually for the 2020-2021 and 2021-2022 school years, that CPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act."

255. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Martinez used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

256. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. §1343.

257. Defendant Martinez used the interstate wires and otherwise in the years 2019, 2020, 2021 and is continuing to use them, to further his objective to obtain federal funds under false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected CPS during its closure.

### DEFENDANT MIGUEL DEL VALLE BOARD OF EDUCATION OF THE CITY OF CHICAGO AND RONALD AMUNDSEN HIGH SCHOOL

258. Upon information and belief, Miguel Del Valle, in his official capacity as the President of the Board of Education of the City of Chicago, assured the ISBE, between January of 2019 and July of 2019, that the ISBE had "policies and procedures in place as required by Part B of the Individuals with Disabilities Act." *See* **EXHIBIT 10**, ISBE SFY 2020 IDEA Basic and Preschool Grant Awards by District, Charter School and State Agency.

259. In addition, upon information and belief, Miguel Del Valle, in his official capacity as current Chief Executive Officer of the Chicago Public Schools, assured ISBE, between January 2019 and July 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 C.F.R. §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. §300.121." *Id.*

260. Upon information and belief, Miguel Del Valle, in his official capacity as the Current President of the Board of Education of the City of Chicago, made assurances to the ISBE, between January of 2020 and July of 2020, that ISBE had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

261. Upon information and belief, Miguel Del Valle, in his official capacity as the current as the President of the Board of Education of the City of Chicago, made assurances to the ISBE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 C.F.R. §§ 300.400 through 300.536, and in accordance with 20 U.S.C. §1412(a)(6); 34 C.F.R. §300.121." *Id.*

262. Upon information and belief, Miguel Del Valle, in his official capacity as the current as the President of the Board of Education of the City of Chicago, made assurances to the ISBE in the form of quarterly reports (March 2020, June 2020, September 2020, December 2020, March 2021, June 2021, September 2021, and December 2021), and annually for the 2020-2021 and 2021-2022 school years, that "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 C.F.R. §§ 300.400 through 300.536, and in accordance with 20 U.S.C. §1412(a)(6); 34 C.F.R. §300.121."

263. Upon information and belief, Miguel Del Valle, in his official capacity as the current as the President of the Board of Education of the City of Chicago, made assurances to the ISBE in the form of quarterly reports (March 2020, June 2020, September 2020, December 2020, March 2021, June 2021, September 2021, and December 2021), and annually for the 2020-2021 and 2021-2022 school years, that CPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act."

264. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Del Valle used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

265. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. §1343.

266. Defendant Del Valle used the interstate wires and otherwise in the years 2019, 2020, 2021, and is continuing to use them, to further his objective to obtain federal funds under false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected CPS during its closure.

### DEFENDANT MICHAEL CUSHING OTTAWA TOWNSHIP HIGH SCHOOL

267. Upon information and belief, Michael Cushing, in his official capacity as the Superintendent of Ottawa Township High School ("OTHS"), assured the ISBE, between January of 2019 and of July 2019 an, that the ISBE had "policies and procedures in place as required by Part B of the Individuals with Disabilities Act." *See* **EXHIBIT 11**; **EXHIBIT 13**, ISBE SFY 2020 IDEA Basic and Preschool Grant Awards by District, Charter School and State Agency.

268. In addition, upon information and belief, Michael Cushing, in his official capacity as current Superintendent of OTHS, assured ISBE, between January 2019 and July 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 C.F.R. §§ 300.400 through 300.536, and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. §300.121." *Id.*

269. Upon information and belief, OTHS, in his official capacity as current Superintendent of OTHS, made assurances to the ISBE, between January of 2020 and July of 2020, that ISBE had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." *Id.*

44

270. Upon information and belief, Michael Cushing, in his official capacity as current Superintendent of OTHS, made assurances to the ISBE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 C.F.R. §§ 300.400 through 300.536, and in accordance with 20 U.S.C. §1412(a)(6); 34 C.F.R. §300.121." *Id*.

271. Upon information and belief, Michael Cushing, in his official capacity as current Superintendent of OTHS, made assurances to the ISBE in the form of quarterly reports (March 2020, June 2020, September 2020, December 2020, March 2021, June 2021, September 2021, and December 2021), and annually for the 2020-2021 and 2021-2022 school years, that "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 C.F.R. §§ 300.400 through 300.536, and in accordance with 20 U.S.C. §1412(a)(6); 34 C.F.R. §300.121."

272. Upon information and belief, Michael Cushing, in his official capacity as current Superintendent of OTHS, made assurances to the ISBE in the form of quarterly reports (March 2020, June 2020, September 2020, December 2020, March 2021, June 2021, September 2021, and December 2021), and annually for the 2020-2021 and 2021-2022 school years, that CPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act."

273. In furtherance of his scheme to defraud, and with the purpose of executing his scheme to defraud, Defendant Cushing used interstate wires and otherwise to defraud Plaintiffs of their rights under IDEA.

274. The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud, and in violation of 18 U.S.C. §1343.

275. Defendant Cushing used the interstate wires and otherwise in the years 2019, 2020, 2021, and is continuing to use them, to further his objective to obtain federal funds under false pretense that Plaintiffs' procedural and substantive rights under IDEA were protected CPS during its closure.

**Pattern of Racketeering Activity**

276. The course of conduct engaged in by each individual RICO Defendant constituted both "continuity" and "relatedness" of the racketeering activity, thereby constituting a pattern of racketeering activity, as that term is defined in 18 U.S.C. §1961(5).

277. The Individual Defendants' predicate acts have "similar purposes, results, participants, or methods of commission or are related to the affairs of the Enterprise." *Id*.

278. All predicate acts had the same purpose of defrauding Plaintiffs of IDEA Funds.

279. The continuity of the pattern of racketeering activity constitutes closed-ended continuity as it occurred over a substantial period, from March 2020 to the present.

280. There is a threat of continued activity as each individual Defendant has repeatedly engaged in the illegal and illicit activities, including but not limited to the fraudulent representations within the March 2020, June 2020, September 2020, December 2020, March 2021, June 2021, September 2021, and December 2021 quarterly reports, the annual 2020 IDEA Part B Application, the annual 2021 IDEA Part B Application, and the annual 2022 IDEA Part B Application.

281. Engaging in the pattern of racketeering as set forth herein in the regular way the individual Defendants conduct the affairs of their respective associated association in fact enterprise.

282. Because each enterprise has been existence for many years, and the seeking of federal funding by these individual Defendants on behalf of their associated association in fact enterprise will continue indefinitely, each individual Defendant, through the operation of his or her associated association in fact enterprise, remain a threat to others and their racketeering activity meets the open-ended continuity test.

## INJURY

283. As a direct and proximate result of the individual Defendants' predicate acts in furtherance of violating 18 U.S.C. § 1962(a), Plaintiffs have been and are continuing to be deprived of their rights under IDEA, as set forth more fully above.

284. As a direct and proximate result of thereof, Plaintiffs suffered harm including significant regressions in skills and loss of competencies.

## REQUESTED PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

1. Assert jurisdiction over this matter;

2. Certify this action as a class action pursuant to Fed. R. Civ. P. 23(a) and (b)(2);

3. Issue a judgment declaring that the class members' status quo pendency placement is in-person instruction and services;

4. Issue a judgment declaring that the unilateral change in the educational placement of the Plaintiffs for more than ten cumulative days in the 2019-2020, 2020-2021 and 2021-2022 school years, respectively, violated the procedural safeguards and rights to Plaintiffs under IDEA and discriminated against Plaintiffs under IDEA, the ADA, § 504, the Equal

Protection Clause and Substantive/Procedural Due Process Clauses of the Fourteenth Amendment, the Illinois School Code, 23 Ill. Adm. Code §226.760, 105 ILCS 5/14-8.02a *et seq.*, 105 ILCS 5/14 *et seq.*, the Equal Protection Clause of the Fourteenth Amendment, and RICO.

5.  Issue a judgment declaring that the ISBE failed to monitor and provide proper oversight and resources to the Named LEAs and other similarly situated LEAs during the COVID-19 pandemic as required under IDEA;

6.  Order Defendants herein to comply with the procedural safeguards guaranteed by IDEA for the 2021-2022 school year for the class members, thereby enjoining Defendants and other similarly situated LEAs from unilaterally changing the Plaintiffs' educational placement for more than ten cumulative days in the 2021-2022 school year, and in subsequent school years, in the event of any school closures;

7.  Assign a Special Monitor to:

    a)  Oversee the completion of Independent Education Evaluations ("IEE") for all the class members to determine regressions and loss of competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs;

    b)  Make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies; and

    c)  Ensure the expert recommendations are included in writing in the class members' IEP documents;

8. Require Defendants herein to comply with IDEA, the ADA, §504, Illinois Constitution, Article I, §19, the Equal Protection Clause of the Fourteenth Amendment, and RICO in the event of any future school closures;

9. Assign a RICO Special Monitor to:

   a) Oversee the completion of an independent audit of defendants' expenditures of their IDEA Part B Funds from March 2020 to the present;

   b) Oversee the defendants' expenditures of their IDEA Part B Funds for instruction and/or services for students with disabilities under IDEA; and

   c) Ensure any IDEA Part B Funds that defendants spent on items other than instruction and/or services for students with disabilities under IDEA from March of 2020 through the present are reimbursed to a monitored account to be spent only upon review and approval by the RICO Special Monitor;

10. Grant Plaintiffs, all class members, an award of compensatory education as appropriate;

11. Grant Plaintiffs, all class members, an award of compensatory education in the form of an additional year of education, or more, for each school year, and/or any portion thereof, where Plaintiffs received remote or hybrid education;

12. Grant Plaintiffs and all putative class members, an award of compensatory education, as pendency, in the form of a pendency voucher, or pendency fund, to address and/or compensate Plaintiffs', class members', regressions and/or loss of competencies;

13. Declare Plaintiffs to be the "substantially prevailing party" for purposes of IDEA's fee-shifting provision;

14. Award Plaintiffs, all class members, nominal damages as appropriate;

15. Grant leave to Plaintiffs to submit a statutory fee application;

16. Allow Plaintiffs to seek punitive damages for the claims herein, except for the RICO-related claims, to the extent that such damages are not barred by federal and state law.

17. Direct defendants to pay for the costs and expenses for maintaining this action, including reasonable attorneys' fees pursuant to 20 U.S.C. §1415(i)(3)(B);

18. An award of attorneys' fee pursuant to the Rehabilitation Act, the Americans with Disabilities Act, and 42 U.S.C. § 1988.

19. Retain jurisdiction over this action until this Court is satisfied that the systematic violations of the laws and regulations complained of herein have been reflected; and

20. Grant such other or further relief that the Court may deem just and proper.

Dated: January 8, 2022

Respectfully submitted,

*/s/ Amale Knox*
Amale Knox, Of Counsel
Brain Injury Rights Group (BIRG)
300 East 95th Street, Suite 130
New York, New York 10128
Amale.knox.esq@gmail.com
Illinois Bar. Id. No. 6308622
Attorney for Plaintiffs

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 8, 2022, I filed the foregoing using the Court's CM/ECF

system e-filing system, which will serve all counsel of record electronically.


*/s/ Amale Knox*
Attorney

# EXHIBITS

| Exhibit 01 | B.W.'s 2019-2020 IEP. |
|---|---|
| Exhibit 02 | T.S.'s 2019-2020 IEP. |
| Exhibit 03 | 3/12/20 Supplemental Fact Sheet by the United States Department of Education. |
| Exhibit 04 | March 2020 Questions and Answers for Providing Services to Children with Disabilities during the Coronavirus Disease 2019 Outbreak. |
| Exhibit 05 | March 13, 2020, Executive Order – 2020-05 (COVID-19 Executive Order No. 3) issued by JB Pritzker. |
| Exhibit 06 | March 17, 2020, Joint Statement of the Office of Governor JB Pritzker, Illinois Education Association, Illinois Federation of Teachers, Illinois Association of School Administrators, Illinois Principals Association, and Illinois State Board of Education. |
| Exhibit 07 | March 27, 2020 (Updated) Joint Statement of the Office of Governor JB Pritzker, Illinois Education Association, Illinois Federation of Teachers, Illinois Association of School Administrators, Illinois Principals Association, and Illinois State Board of Education. |
| Exhibit 08 | June 4, 2020, Executive Order 2020-40 issued by JB Pritzker. |
| Exhibit 09 | June 23, 2020, Transition Joint Guidance plan published by the Illinois State Board of Education. |
| Exhibit 10 | Letter from the USDOE to Superintendent Carmen Ayala (dated July 1, 2020). |
| Exhibit 11 | July 1, 2019, USDOE Award Letter and IDEA Part B Application. |
| Exhibit 12 | July 1,2020, USDOE Award Letter and IDEA Part B Application. |
| Exhibit 13 | 2020 Annual Report, Chair Darren Reisberg and State Superintendent of Education, Dr. Carmen I. Ayala. |