UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE SIMMONS, as Parent and Natural Guardian of T.S. and CHRISTINE SIMMONS, Individually; <br><br> HSINYI LIU, as Parent and Natural Guardian of B.W. and HSINYI LIU, Individually, <br><br> and All Others Similarly Situated, <br><br> Plaintiffs, <br><br> v. <br><br> JAY ROBERT ("J.B.") PRITZKER, in his official capacity as Governor of Illinois, ILLINOIS STATE BOARD OF EDUCATION, CITY OF CHICAGO SCHOOL DISTRICT 299, BOARD OF EDUCATION OF THE CITY OF CHICAGO, RONALD AMUNDSEN HIGH SCHOOL, OTTAWA TOWNSHIP HIGH SCHOOL #140, DR. CARMEN I. AYALA, in her official capacity as Superintendent of Education of Illinois; PEDRO MARTINEZ, in his official capacity as Chief Executive Officer of Chicago, Public Schools; MIGUEL DEL VALLE, in his official capacity as President of the City of Chicago Board of Education; and MICHAEL CUSHING, in his official capacity as Superintendent of Ottawa Township Public Schools, <br><br> Defendants. | Case No.: 1:22-cv-00123 |

**PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

# I. STATEMENT OF THE FACTS

On Monday, January 3, 2022, the Governor of Illinois, J.B. Pritzker ("Governor Pritzker"), stated he would not act to close schools during the current surge of the COVID-19 variant, publicly known as "Omicron."[1]

The next day, on January 4, 2022, President Joseph Biden ("President Biden") declared all schools should remain open despite the ongoing nationwide surge of COVID-19 cases due to the Omicron variant:

> "We have no reason to think at this point that Omicron is worse for children than previous variants. We know that our kids can be safe when in school, by the way. That's why I believe schools should remain open. They have what they need."[2]

That same day, the Illinois State Board of Education Superintendent, Carmen Ayala ("Superintendent Ayala"), said school districts should not declare an adaptive pause due to staffing shortages:

> "If the school is following guidance regarding masking, testing, and identifying and excluding COVID-19 cases and their close contacts, then an adaptive pause should not be necessary to mitigate an outbreak, and students are best served by continuing to provide in-person instruction. Please note that an adaptive pause means a temporary shift to remote learning for attendance days. Alternatively, schools may choose to take nonattendance days at any time for any reason and make up those attendance days later in the year. A school or school district may only enter into an adaptive pause with remote learning in consultation with the local health department and consistent with guidance or requirements from such local health department."[3]

Notwithstanding the President and Superintendent's clear instructions to keep schools open for in-person learning, Chief Executive Officer of the Chicago Public Schools (CPS), Pedro Martinez,

---

[1] https://news.wttw.com/2022/01/04/cps-cancel-wednesday-classes-if-teachers-union-votes-work-remotely
[2] https://www.webmd.com/lung/news/20220105/schools-should-stay-open-omicron-biden
[3] https://www.chicagotribune.com/coronavirus/ct-covid-staffing-shortages-close-schools-20220105-rcwbtqpbxfgfdagnaufm64c43i-story.html

released a statement that the "Chicago Teachers' Union (hereinafter, "CTU") voted not to report to work [January 5][4], therefore classes would be canceled for all CPS students.[5]

On January 5, 2022, as Chicago Public Schools remained empty, the Secretary of the United States Department of Education, Miguel Cardon ("Secretary Cardona"), repeated his previous calls for schools to stay open by stating "students suffered enough" and schools should remain open:

> "I know we have the tools to get our school safely open. And we have to do everything in our power to give our students the best opportunity for success. And that means giving them an in-person learning opportunity."[6]

Later that day, the Mayor of Chicago, Lori Lightfoot ("Mayor Lightfoot"), reacted to the CTU's arbitrary vote not to return to schools:

> "We are committed to remaining at the table with CTU leadership and negotiating a fair agreement. But what we cannot accept is unilateral action to shut down the entire District, depriving hundreds of thousands of students of the safe, in-person schooling environment they need."[7]

However, in the interim, students must suffer while the Mayor capitulates to a "fair agreement" to appease those self-blinded teachers ignorant to the suffering of their students and the constitutional rights afforded to them under State and federal law.

Also, on January 5, 2022, Ottawa Township High School District 140 ("OTHSD #140") communicated with parents via a Facebook group page and sent out a survey asking parents their opinion about in-person versus remote learning.[8] However, the form did not specify nor ask any

---

[4] Educational Researcher, Vol. XX No. X, pp. 1 – 4 DOI: 10.3102/0013189X211031551. Article reuse guidelines: sagepub.com/journals-permissions © 2021 AERA.https://journals.sagepub.com/doi/full/10.3102/0013189X21103155

[5] On January 6, 2022, the Chicago Teachers' Union was sued by several parents with children enrolled in the Chicago Public School in the matter of *Golden v. Chicago Teachers Union, AFT-IFT Local 1*, Case No. 2022CH00144 because of CTU's and obstruction of the return to in-person instruction and illegal strike. [**See, Exhibit 1 attached**].

[6] https://www.newsnationnow.com/us-news/education/education-secretary-cardona-says-schools-should-stay-open/

[7] https://www.courthousenews.com/chicago-schools-closed-after-teachers-union-votes-to-work-remotely/

[8] https://forms.office.com/Pages/ResponsePage.aspx?id=GAjgUsTWSEG6clYpZ8s5vdJ8LXQ7mwBBlGH1piFPPLdUNFlQNFlXODlCNVBNWjVDT0pINEowMlE3RC4u&fbclid=IwAR2BERfQJGcfPwNqRb1xQIzcpYqcj3TWtZTK8Itoji-MOBrt2SxPDHNqiEA

parent about their child's disability status or IEP. It is also unclear whether the survey was conducted by alternative means to include parents within their District who do not utilize Facebook.

Studies have shown that special education students suffer more than non-disabled students in almost all aspects of life; in a pandemic, where students are deprived of the educational plan tailored by educational and medical professionals to meet their specific needs, only results in exponential and unnecessary suffering for special education students.

Plaintiffs seek a Temporary Restraining Order/Preliminary Injunction to enjoin ISBE, CPS, and OTHS #140 from changing the Plaintiffs' and putative class members' current educational placement from in-person instruction to remote online virtual instruction in violation of the IDEA. If CPS, OTHSD #140 or other local education agencies ("LEAs") intend to move to remote online virtual instruction, Defendants and all other LEAs must provide notice of the proposed change of placement to all students with Individual Education Programs ("IEPs"), and dates for IEP meetings to discuss how the districts will ensure the students receive a free and appropriate public education ("FAPE) during such closure of in-person instruction.

Conversely, Plaintiffs contend that the school district can proactively plan to staff special education classrooms and some general education classrooms[9] for in-person instruction for students with qualifying special needs under IDEA, who simply cannot learn remotely.

## II.  LEGAL STANDARDS

**A.  20 U.S.C. § 1415(j) – Automatic Injunction of the IDEA's Stay-Put Provision**

---

[9] General education classrooms are included in Plaintiffs' request because if a student has an IEP that indicates that they must be integrated into the general education classrooms for [X]% of the day (as this is the least restrictive environment), then Defendants are required to allow those classes containing integrated special education students to remain in-person to adhere to the terms of the IEP, and prevent transferring the student to a more restrictive environment (*i.e.* depriving the student of their right to be educated alongside their non-disabled peers).

The "stay put" provision of the IDEA (20 U.S.C. § 1415(j)) provides, "during the pendency of any proceedings conducted pursuant to this section unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j), 34 C.F.R. § 300.518. The stay-put provision is a procedural safeguard for parents and children that seeks to preserve the status quo and " 'give the child's parents the choice of keeping the children his existing program until their dispute with the school authorities is resolved.'" (internal citation omitted). *Aaron M. v. Yomtoob*, 2003 U.S. Dist. LEXIS 21252. Furthermore, the stay-put provision prevents the School District Defendants from effecting unilateral change in a child's educational program." *R.B.*, 532 F. App'x at 139–40; *C.H. v. Cape Henlopen Sch. Dist.*, 606 F.3d 59, 72 (3d Cir. 2010); *Susquenita Sch. Dist. v. Raelee S. By & Through Heidi S.*, 96 F.3d 78, 83 (3d Cir. 1996); *See Honig v. Doe*, 484 U.S. 305, 108 S. Ct. 592, 98 L. Ed. 2d 686 (1988). A parent may invoke the stay-put provision when a school proposes a change in the child's "then-current educational placement." *See Jackson by Thompson v. Franklin Cty. Sch. Bd.*, 765 F.2d 535, 538 (5th Cir. 1985), *abrogated by Honig v. Doe*, 484 U.S. at 305 (1988); *20 U.S.C. § 1415(j)*.

Many Courts have referred to § 1415(j), IDEA's "stay-put" provision, as an automatic injunction.[10] *Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508 (7th Cir. 2005); *Johnson ex rel. Johnson*, 287 F.3d 1176; *Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859 (3d Cir. 1996); *Bd. of Educ. of Cmty. High Sch. Dist. No. 218, Cook Cty., Ill. V. Illinois State Bd. of Educ.*, 103 F.3d 545 (7th Cir. 1996); *Kuszewski ex rel. Kuszewski v. Chippewa Valley Sch.*, 131 F. Supp. 2d 926, 928 (E.D. Mich. 2001), *aff'd sub nom. Kuszewski v. Chippewa Valley Sch. Dist.*, 56 F. App'x 655 (6th Cir. 2003); *Ridley School Dist. v. M.R.*, 2015 WL 1619420, at *4

---

[10] *See Casey K. ex rel. Norman K. v. St. Anne Cmty. High Sch. Dist. No. 302*, 400 F.3d 508, 511 (7th Cir. 2005) (comparing a stay put injunction to an automatic stay in a bankruptcy case) (citing *Honig*, 484 U.S. at 326–37).

(The U.S. Supreme Court "has emphasized that the provision's text is 'unequivocal' and 'states plainly' that the child 'shall' remain in his current educational placement 'during the pendency of any proceedings initiated under the act'"); *see Tennessee Dep't of Mental Health & Mental Retardation v. Paul B.*, 88 F.3d 1466, 1472 (6th Cir. 1996).

As provided under §1415(j), the automatic stay remedy is statutory and does not require the Court to apply the standard test for an injunction under Fed. R. Civ. P. 65. *Cronin v. Bd. of Educ. of E. Ramapo Cent. Sch. Dist.*, 689 F. Supp. 197, 202 (S.D.N.Y. 1988), s*ee Cochran v. D.C.*, 660 F. Supp. 314, 319 (D.D.C. 1987) (although traditional preliminary injunction standards were not met, the district court found that injunction under stay-put provision ***would nonetheless issue***). The purpose of the stay-put provision is to give the child's parents the choice of keeping the child in [their] existing program until their dispute with the school authorities is resolved. *Board of Educ. of Oak Park & River Forest High Sch. Dist. 200 v. Illinois State Bd. of Educ.*, 79 F.3d 654, 659-660 (1996). The Act provides that during any proceedings to enforce it, "the child shall remain in the then-current educational placement of such child" ***unless the parents agree otherwise***. 20 U.S.C. § 1415(e)(3)(A). *Id.* at 656 (emphasis added).

The Seventh Circuit provides that the traditional preliminary injunction which requires the equitable balance of interests "has no place in [the IDEA] context" and "dilute[s] the statutory framework…the statute guarantees that [the child] and his parents be able to rely on an uninterrupted education during a contest between the school board and the parents." *Board of Educ. v. Illinois State Bd. of Educ.*, 10 F. Supp 2d 971 at 980 (1998) (N.D. Ill.); (omitting internal citation).

Plaintiffs herein maintain that the current educational placement is in-person learning, and during the pendency of this action, it should be maintained as afforded to Plaintiffs by law.

**B. Fed. R. Civ. P. 65**

Fed. R. Civ. P. 65(2) governs injunctions and restraining orders and in pertinent part:

> (2) persons bound. The Order binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Fed. R. Civ. P. 65(2).

If granted, Plaintiffs request that the Court's Order enjoin CTU from engaging in unlawful behavior, such as directly interfering with the FAPE afforded to Plaintiffs and other students similarly situated as set forth by this Court. Should CTU "vote" to arbitrarily transition to remote online learning, CTU would be in contempt of the proposed Order, as the organization comprises teachers within the jurisdiction—those tasked with delivering the IEP as designed to provide a FAPE to students.

### III. ANALYSIS

**A. Plaintiffs are not Required to Exhaust Administrative Remedies**

Generally, IDEA requires parents to exhaust administrative remedies before turning to the federal courts, courts have recognized other exceptions to the IDEA's general requirement that a party exhaust administrative remedies before bringing a claim in Federal Court. The Seventh Circuit explains as follows:

> [T]he exhaustion requirement is not absolute and is considered futile and excused where: the administrative remedy would be inadequate, the school has adopted a policy or practice of generalized applicability that is contrary to the IDEA, or the Plaintiff is making systematic allegations of IDEA violations.

(quoting *Honig*, 484 U.S. at 327). *M.O. v. Ind. Dep't of Educ.*, 2008 U.S. Dist. LEXIS 66632\*; 2008 WL 4056562; *citing Honig*, 484 U.S. at 327; *McQueen ex rel. McQueen Colo. Springs Sch. Dist. No. 11*, 488 F.3d 868, 875 (10th Cir. 2007); *Hoeft v. Tucson Unified Sch. Dist.*, 967 F.2d 1298, 1303-04 (9th Cir. 1992).

> "These exceptions often overlap, and courts often find that exhaustion is futile because of the presence of one or more of the other exceptions." *Id., citing,*

*e.g., Cave v. East Meadow Union Free Sch. Dist.*, 514 F.3d 240, 249 (2d Cir. 2008) (combining the exceptions when it stated that "the exhaustion requirement does not apply when the pursuit of the administrative remedies would be futile because the agency either was acting in violation of the law or was unable to remedy the alleged injury") (internal quotations omitted).

In *Hoeft v. Tucson Unified School District,* the Ninth Circuit explained that when determining the validity of a policy is purely a matter of law, there is less reason to require IDEA exhaustion because "agency expertise and an administrative record are theoretically unnecessary in resolving the issue at hand." 967 F.2d 1298 (1992); *See also, Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1095 (1st Cir. 1989) (noting that the purposes of the exhaustion doctrine are not furthered when the issue is a matter of law).

**B. This Court Should Issue a Temporary Restraining Order (TRO) to enjoin Defendants from transitioning Plaintiffs to remote, virtual instruction without complying with the procedural safeguards by IDEA.**

The IDEA provides a plethora of procedural rights for parents who seek remedy against a school district that fails to provide a student with a FAPE. IDEA requires a local educational agency (LEA) to give prior written notice of any action proposed by the LEA regarding the provision of a FAPE, specifically where the proposed action results in a change in the placement of student's educational program – the educational status quo. *See* 20 U.S.C. §1415(c)(1). Congress envisioned a significant parental role in the preparation of the IEP, as such, the Act establishes a variety of procedural protections that ensure parents have an opportunity to seek review of decisions with which they disagree. *Cronin*, 689 F. Supp. at 200-01, citing *Honig*, 108 S. Ct. at 598.

There are several procedural safeguards the IDEA includes "that guarantee parents both an opportunity for meaningful input into all decisions affecting their child's education and the right to seek review of any decisions they think inappropriate." *Honig*, 484 U.S. at 311-12. For example,

20 U.S.C. § 1415(b)(3) ***requires*** prior written notice to the child's parents whenever the local educational agency (LEA) ***proposes*** initiating or changing an IEP, and 20 U.S.C. § 1415(c)(1) describes what is required in that notice. Each Plaintiff's educational "status quo" is defined as "the last, uncontested status which preceded the pending controversy." *N.D. ex rel. parents acting as guardians ad litem*, 600 F.3d 1104 (9th Cir. 2010).

Without judicial intervention, it is abundantly clear that LEAs will independently, or at the behest of their unions, arbitrarily close their doors to students despite clear direction by superior officials not to do so and federal law that dictates otherwise. The State of Illinois currently educates upward of 1,887,316 students, of which approximately fifteen percent (15%) have disabilities (283,098 students).[11] For comparison, Aurora, Illinois has an estimated population of 200,000 people—the number of disabled students to be negatively affected by the flippant and arbitrary transition(s) to remote online learning represents a population ***significantly larger than that of Illinois' second-largest city***.

When state agencies deviate from student IEPs, and those deviations deprive students of a reasonable chance of achieving passing marks and advancing from grade to grade, those agencies fail to provide FAPE in violation of IDEA. *Endrew F. ex rel. Joseph F.*, 137 S. Ct. at 100; *Charles H.*, 2021 WL 2946127, at *2; *see*, *Reid ex rel. Reid v. D.C.*, 401 F.3d 516, 519 (D.C. Cir. 2005); 20 U.S.C. § 1414(d)(1)(A)(i)(IV)(bb). "A material failure occurs when there is more than a minor discrepancy between the services a school provides to a disabled child and the services required by the child's IEP." *Grafton Sch. Dist. v. JL*, 2020 U.S. Dist. LEXIS 119546 (citing *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811 (9th Cir. 2007).

---

[11] http://www.illinoisreportcard.com/State.aspx?source=studentcharacteristics&source2=iep&Stateid=IL

Each day a child is denied a FAPE by such procedural dereliction of a school system, the student is harmed yet again. *See Cox v. Brown*, 498 F. Supp. 823, 828-829 (D.D.C. 1980) (irreparable harm results when students "[lack] each day of their young lives an appropriate education, one that is sensitive to their particular disabilities, commensurate to their levels of understanding, and fulfilling their immediate needs"). As the Court in *Blackman v. D.C.*, 277 F. Supp.2d 71, 79-80 (D.D.C. 2003) held:

> [T]he failure of the District to comply with its statutory obligations and provide appropriate educational placements can have a devastating impact on a child's well-being. "Any agency whose appointed mission when it loses sight of the fact that, to a young, growing person, time is critical. While a month in the life of an adult may be insignificant, the rate at which a child develops and changes, especially one at the onset of biological adolescence with or without special needs like those of our Plaintiff, a few months can make a world of difference in the life of that child.

*Blackman v. D.C.*, 185 F.R.D. 4, 7-8 (D.D.C. 1999) (quoting *Foster v. District of Columbia*, Civil Action No. 82-0095, Memorandum Opinion and Order of February 22, 1982, at 4 (D.D.C. February 22, 1982))[12]

Defendants unilaterally, substantially, and materially altered the Plaintiff-Students' "status-quo" educational program relative to the Plaintiff-Students' placement without notice, parental consent, meaningful input, and the IDEA's other procedural safeguards. Defendants unilaterally closed their schools in March 2020 and now again on January 5, 2022. As a result, students were required to remain home, their constitutional rights seemingly suspended in the void, while the transition to at-home clearly alters the educational program status quo of the Plaintiff-Students in violation of the IDEA and other federal law. Defendant also failed to provide the Plaintiff-Students

---

[12] *See also, Spriegler v. D.C.*, 866 F.2d 461, 466-67 (D.C. Cir. 1989) (Act's procedural requirement for periodic and individualized assessment of each special education child "evinces a recognition that children, particularly young children, develop quickly and that a placement decision that may have been appropriate a year ago may no longer be appropriate today.").

with the special education and related services outlined in their IEPs and thereby denied Plaintiffs a FAPE as required by IDEA.[13]

A school district's unilateral removal of a disabled student from their educational program, or alteration of the student's educational program, for more than ten days in a school year, constitutes a "change in placement," **which must be undertaken only within the protective framework of the IDEA.** *Honig*, 484 U.S. at 323; *Parents of Student W. v. Puyallup Sch. Dist.*, No. 3, 31 F.3d 1489, 1495 (9th Cir. 1994)(emphasis added). Congress has not articulated a COVID exception to the IDEA.[14]

In *M.R. v. Ridley Sch. Dist.*,[15] the Court of Appeals for the Third Circuit provided a valuable discussion of the automatic preliminary injunction included in IDEA's "stay-put" rule:

> "Once a court ascertains the student's current educational placement, the movants are entitled to an order [maintaining that placement] without satisfaction of the usual prerequisites to injunctive relief.'" Drinker by Drinker, 78.F.3d at 864 (quoting *Woods v. N.J. Dep't of Educ.,* No. 93-5123, 20 Indiv. Disabilities Educ. L. Rep. (LRP Publications) 439, 440 (3d Cir. September 17, 1993))); *see Pardini v. Allegheny Intermediate Unit,* 420 F.3d 181, 188 (3d Cir. 2005) ("Congress has already balanced the competing harms as well as the competing equities"); *Zvi D. by Shirley D. v. Ambach*, 695 F.2d 904, 906 (2d Cir. 1982) ("The statute substitutes an absolute rule in favor of the status quo for the court's discretionary consideration of the factors…").

*Id*. at 118-119 (footnotes omitted; emphasis added).

---

[13] The maximum amount of time a school district can unilaterally displace a student and change the educational program without triggering a violation of 20 U.S.C.§1415(j) is 10 school days – cumulatively during any school year. Honig, 484 U.S. at325, 325-26 n.8. Such unilateral action by a school district may create a "change in placement," and by the terms of the IDEA, a change in placement can only occur with the consent of the parents, or after written notice, and the opportunity for a hearing. *Honig*, 484 U.S. 305, the ten-day limit was adopted by the Supreme Court in Honig from the Department of Education's Office of Civil Rights ("OCR"), which decided that "a suspension of up to 10 school days does not amount to a 'change of placement.'" *Honig*, 484 U.S. at 325 n. 8.
[14] *See*, CORONAVIRUS AID, RELIEF, AND ECONOMIC SECURITY ACT, PL 116-136, ("CARES Act"), March 27, 2020, 134 Stat 281, required the Secretary of Education to prepare a report regarding whether waivers of the IDEA's requirements were necessary during the pandemic. In her report, then-Secretary of Education Betsy Devos expressly declined to request "waiver authority for any of the core tenets of the IDEA"— including, "most notably," the right to a FAPE--leaving those obligations in place. U.S. Sec'y of Educ. Betsy Devos, Report to Congress: Recommended Waiver Authority under Section 3511(d)(4) of Division A of the CARES Act 11 (2020). *LV v. New York City Dept. of Educ.*, 03-CV-9917 (LAP), 2021 WL 663718, at *6 (S.D.N.Y. Feb. 18, 2021).
[15] *M.R. v. Ridley Sch. Dist.*, 744 F.3d 112 (3d Cir. 2014).

Plaintiff's IEPs share a commonality in that none of the current IEPs contain language about virtual instruction, remote, at-home, or distance learning instruction or services. Under this case law, here, this Court should grant an automatic injunction enjoining Defendants from moving Plaintiffs and putative class members from in-person instruction to remote, virtual instruction. Under Ridley, the Court should look to Plaintiffs' IEPs "actually functioning when the 'stay put' provision was "triggered" or "invoked." Ridley Sch. Dist. v. M.R., 575 U.S. 1008 (2015).

If CPS and OTHS #140 and other LEAs unilaterally change each Student-Plaintiff's current educational placement to a temporary transition to remote or distance learning, CPS and OTHS #140 would be violating the IDEA and depriving each Student of their right to a FAPE under the Act.

Accordingly, this Court should enjoin CPS, OTHSD #140, and the ISBE from moving the Plaintiffs and the putative class members from in-person instruction to remote online virtual instruction in violation of the IDEA. If Defendants intend to move the Student Plaintiffs to remote online virtual instruction, they must provide notice of the change of placement to all students with Individual Education Programs ("IEPs") and dates for IEP meetings to discuss how CPS and OTHSD #140 will ensure the students receive a FAPE during such closure or ensure that those special education classrooms and some general classrooms (as cited above) remain open for in-person learning.

**C. This Court Should Issue a Temporary Restraining Order (TRO) Enjoining ISBE, CPS and OTHSD #140 from Allowing its School Districts to Move Plaintiffs to Remote, Virtual, Instruction in Violation of the IDEA**

In *Honig,* the Supreme Court noted that in enacting the IDEA, Congress very much meant to strip schools of the unilateral authority they had traditionally employed to exclude disabled students from school. *Honig*, 484 U.S. at 323; *Drinker by Drinker*, 78 F.3d at 864. A school

district's removal of a disabled student from their educational program, or alteration of the Student's educational program, for more than ten days cumulatively in a school year, constitutes a "change in placement," which must be undertaken only within the protective framework of the IDEA. *Honig*, 484 U.S. at 323; *D.M.*, 801 F.3d 205.

By the terms of the IDEA, a change in placement may only occur with the parents' consent or after written notice and the opportunity for a hearing. *Id.* Determining whether there has been a "change" requires examining the child's IEP. *Gore v. D.C.*, 67 F. Supp. 3d 147 (D.D.C. 2014). Changing the location where a student receives services does not amount to a change in educational placement if the new setting replicates the educational program contemplated by the Student's original assignment. *D.K. v. D.C.*, 983 F. Supp. 2d 138 (D.D.C. 2013); *James v. D.C.*, 949 F. Supp. 2d 134 (D.D.C. 2013). If the new location **DOES NOT REPLICATE** the educational program contemplated by the Student's original assignment, a change in educational placement has occurred.

When a change in a child's IEP is sought, such as a transfer from in-person learning to a remote learning platform, regardless of whether the party seeking the change is the school district or the parents, the burden of showing that the placement is appropriate rests with the school district. *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260 (3d Cir. 2003). In Order for a placement to be "appropriate," the School District must show that the proposed change would provide Plaintiffs and those of the purported class with a *meaningful* educational benefit. *Id.* at 271. Here, Defendants cannot show that a transition to online remote learning would provide those students under the IDEA with a meaningful educational benefit.

As provided in 105 ILCS 5/14-1.02, Defendant ISBE is responsible for making "[s]uch rules [to] ensure that a free appropriate public education is available to all children with disabilities.

Furthermore, it requires that the Defendant ISBE ensure that children with special needs undergo "a case study fully reviewed by professional personnel in a multidisciplinary staff conference and only upon recommendation of qualified specialist . . . if available." 105 ILCS 5/14-8.02(b).

These statutes incorporate IDEA requirements for the State of Illinois. To secure IDEA Part B federal funds, each State must have procedures that protect the rights of students with disabilities. Defendants ISBE, CPS, and OTHSD #140 are responsible for ensuring compliance with IDEA. Therefore, this Court should enjoin ISBE, CPS, and OTHSD #140 from allowing its school districts to move the Student Plaintiffs and all others similarly situated to online remote learning.

## CONCLUSION

For the reasons stated herein, Plaintiffs respectfully request a Temporary Restraining Order pursuant to IDEA §14167(j) and Fed. R. Civ. P. 65 and 65(2). As such, this Order would bind the parties, the parties' officers, and other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B).

Dated: January 9, 2022

Respectfully submitted,

*/s/ Amale Knox*
Amale Knox, Of Counsel
Brain Injury Rights Group (BIRG)
300 East 95th Street, Suite 130
New York, New York 10128
Amale.knox.esq@gmail.com
Illinois Bar. Id. No. 6308622
Attorney for Plaintiffs

**PLAINTIFFS' CERTIFICATE OF SERVICE**

**MOTION FOR TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTION**

      I hereby certify that on January 9, 2022, I electronically filed the Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction with the Clerk of the Court using the ECF System, which will provide electronic copies to all attorneys of record in this matter.

Dated: January 9, 2022

                                          Respectfully submitted,

                                          */s/ Amale Knox*
                                          Amale Knox, Of Counsel
                                          Brain Injury Rights Group (BIRG)
                                          300 East 95th Street, Suite 130
                                          New York, New York 10128
                                          Amale.knox.esq@gmail.com
                                          Illinois Bar. Id. No. 6308622
                                          Attorney for Plaintiffs