**EXHIBIT 1**

Hearing Date: 5/9/2022 9:30 AM
Location: Court Room 2308
Judge: Cohen, Neil J

FILED
1/6/2022 5:04 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2022CH00144
Calendar, 5
16196282

FILED DATE: 1/6/2022 5:04 PM 2022CH00144

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, CHANCERY DIVISION

| | |
|---|---|
| LAUREL GOLDEN, AMELIA KESSEM, JANE SIAVELIS, MICHELLE SHVARTSER, ROBERT BARTLETT, DENISE HEITZ, *and* JOSEPH WARNKE<br><br>Plaintiffs,<br><br>v.<br><br>CHICAGO TEACHERS UNION, AFT-IFT LOCAL 1,<br><br>Defendant. | Case No. 2022CH00144<br><br>In Chancery<br><br>Injunction / Temporary Restraining Order |

**Complaint**

1. This lawsuit is brought by parents of children who are enrolled in Chicago Public Schools (CPS) against the Chicago Teachers Union (CTU), the exclusive bargaining representative of teachers employed by CPS. CPS has held district-wide, 5-days-a-week, in-person schooling since the beginning of the 2021–2022 school year. However, on January 4, 2022, CTU held a meeting of delegates and a vote of its members, in which they voted to refuse to work in-person. Although CTU claims its teachers are willing to work remotely, teachers may not work remotely without the approval of the Chicago Board of Education. CTU members voted to refuse to teach under the conditions set forth by CPS. That is a strike by definition.

2. The Illinois Educational Labor Relations Act (IELRA or "the Act") sets forth the conditions under which CTU and its members may hold a strike. Not all of the conditions set forth in the Act that are required before a strike may happen have been met in this case. As a result, the strike by CTU and its members is illegal.

1

FILED DATE: 1/6/2022 5:04 PM 2022CH00144

3. Plaintiffs, parents of children of CPS students, will be harmed by CTU's strike because their children will be denied schooling and they will be forced to arrange child care because their children are unable to attend school. Therefore, Plaintiffs bring this lawsuit seeking relief in the form of immediate injunctive relief, declaratory relief, and damages.

**Parties**

4. Plaintiff Laurel Golden is the parent of three children who attend public schools operated by CPS.

5. Plaintiff Amelia Kessem is the parent of two children who attend public schools operated by CPS.

6. Plaintiff Jane Siavelis is the parent of one child who attends a public school operated by CPS.

7. Plaintiff Michelle Shvartser is the parent of one child who attends a public school operated by CPS.

8. Plaintiff Robert Bartlett is the parent of one child who attends a public school operated by CPS.

9. Plaintiff Denise Heitz is the parent of one child who attends a public school operated by CPS.

10. Plaintiff Joseph Warnke is the parent of one child who attends a public school operated by CPS.

11. The Chicago Teachers Union is an "employee organization" or "labor organization" as defined by the Illinois Educational Labor Relations Act, 115 ILCS

FILED DATE: 1/6/2022 5:04 PM 2022CH00144

5/2(c). Additionally, CTU is an "exclusive representative" as defined by the Illinois Educational Labor Relations Act, 115 ILCS 5/2(d), as it has been recognized by CPS as the exclusive representative of CPS teachers.

## Jurisdiction

12. This Court has subject matter jurisdiction over this matter under 735 ILCS 5/2-701 because Plaintiffs seek a declaratory judgment that Defendant's actions violate the Illinois Educational Labor Relations Act, 115 ILCS 5/1, *et seq*.

13. This Court has personal jurisdiction over the Defendant because this lawsuit arises from Defendant's actions in the State of Illinois.

14. Venue is proper in Cook County because Plaintiffs reside in Cook County, Illinois, Defendant is located in Cook County, and all the relevant actions that concern this matter have taken place in Cook County.

## Factual Allegations

### I. The Collective Bargaining Agreement.

15. In November 2019, CPS and CTU entered a five-year (2019–2024) collective bargaining agreement governing the wages, hours, terms and conditions of employment of teachers employed by CPS. Part of that agreement provides:

> During the term of this Agreement, the [CTU] agrees not to strike nor to picket in any manner which would tend to disrupt the operation of any public school in the city of Chicago or of the administrative offices or any other facility of the [CPS]. During the term of this Agreement, the [CPS] agrees not to engage in any lockout.

16. Section I Preamble of the collective bargaining agreement between CPS and CTU provides:

3

FILED DATE: 1/6/2022 5:04 PM 2022CH00144

The purpose of this Agreement is to reaffirm the parties' common responsibility to maintain a collaborative and collegial collective bargaining relationship that furthers the parties' shared goal of delivering high quality instructional programs and significantly advancing a well-rounded public education for the students of the Chicago public school system. Through free and open dialogue, the parties have identified the educational objectives for the Chicago Public Schools (hereinafter referred to as "CPS") and have designed this Agreement to further those objectives through good faith cooperation now and in the future.

The parties firmly believe that a well-rounded public education is an absolute necessity for any graduate to be considered college-, career- and citizenship-ready. The parties also recognize that a well-rounded public education includes, but is by no means limited to, providing students with an enriched, diverse and comprehensive curriculum that allows them to obtain essential knowledge and skills; engage in critical and creative thinking; develop independent inquiry skills and an appreciation for the arts, music and literature; improve their physical and emotional health; prepare for leadership roles in their communities; attain the technical skills necessary to become career-ready; develop the academic discipline and proficiency in the intelligent use of technology necessary to become college-ready; and ultimately graduate from the Chicago public school system prepared to become productive and self-confident citizens capable of ethical participation in a free and democratic society.

In addition, the parties recognize that the achievement of these educational objectives requires substantial short- and long-term financial investments in public education and that the fulfillment of the aspirations described in this Preamble will require dramatic and cooperative changes in education funding at the federal, state and local levels; a commitment to good faith collaboration; mutual agreement on priorities and values; and the adoption of proven or research-based educational methods and instructional practices.

Furthermore, to foster a cosmopolitan spirit and better develop CPS students as tolerant and unbiased citizens, the BOARD and the UNION shall work affirmatively to the end that each student may have the educational advantage of an integrated school.

Finally, this Agreement is intended to affirm that the parties' shared goals will only be achieved if bargaining unit employees are fairly and adequately recognized and rewarded for their contributions to the

FILED DATE: 1/6/2022 5:04 PM 2022CH00144

educational process and provided with a wholesome work environment based on mutual respect and the highest level of professionalism. The guiding principles set forth in this Preamble shall remain at the forefront of the parties' negotiations now and in the years to come until these shared educational aspirations become a reality for each and every student and employee of the Chicago public school system.

17. The CBA has neither expired nor been terminated since CPS and CTU reached an agreement.

### II.     CTU's repeated threats to illegally strike during the COVID-19 pandemic.

18. Due to the COVID-19 pandemic, Governor Pritzker closed schools in Illinois, including CPS schools, starting on Tuesday, March 17, 2020. CPS implemented remote learning shortly thereafter. Based on requirements promulgated by the State of Illinois, CPS implemented remote learning programs for all students through the end of the 2019–2020 school year.

19. CTU repeatedly used the threat of a member strike, which it knew or should have known would have been illegal, as a negotiating tactic before and during the 2020–2021 school year.

20. Although CPS knew or should have known that any strike that CTU engaged in would have been unlawful, it continued to allow CTU to make such threats rather than obtaining relief from the Illinois Educational Labor Relations Board or from a court.

21. During the summer of 2020, CPS began floating a hybrid learning model that it proposed to start using at the beginning of the 2020–2021 school year. Under this

5

FILED DATE: 1/6/2022 5:04 PM 2022CH00144

model, students would rotate into buildings two days a week for in-person classes, while learning remotely the remaining three days of the week.

22. CTU opposed starting the 2020–2021 school year with the hybrid learning model, including threatening a strike.[1] In August 2020, CPS backtracked on its plan to start the school year with hybrid learning, instead acknowledging that it would start the school year with district-wide remote learning, although under a different model than it used in the spring of 2020. CPS acknowledged that this remote learning program would last through at least the first semester, with the hope that it could start the hybrid plan to begin the second semester on November 9.

23. On October 16, 2020, the CPS announced a plan to resume in person learning for pre-kindergarten and students in special education clusters. This plan did not indicate a date by which CPS would implement this plan. In response, on October 23, 2020, CTU filed an unfair labor practice with the Illinois Educational Labor Relations Board ("Board"), asserting that CPS failed to negotiate in good faith with it on an issue of safety. The Board denied CTU's request to enjoin CPS's plan.

24. On November 17, 2020, CPS set forth the following schedule for return to in-person learning at CPS:

- January 4, 2021: Return of Pre-K and cluster program staff
- January 11, 2021: Students in pre-K and cluster programs return
- January 25, 2021: Return of K-8 staff
- February 1, 2021: Return of K-8 students

---

[1] https://www.cbs58.com/news/chicago-public-schools-will-start-the-school-year-all-virtual.

6

25. On December 7, 2020, CTU filed a renewed motion for injunctive relief with the Board. That motion was denied by the Board by a 2-1 vote.

26. On January 4, 2021, CPS began its return of pre-K and cluster program teachers. Approximately 50% of the teachers that were required to return on January 4, did so. On Friday, January 8, 2021, CPS announced that any teacher who was required to show up in person who did not starting Monday, January 11, would not be paid.

27. On Thursday, January 21, 2021, CTU held a meeting of its delegates in which it voted to approve a measure that would encourage its pre-K, cluster, and K-8 teachers to continue to work remotely on Monday, January 25, despite CPS's requirement that those teachers report to their school buildings starting that day. The measure would authorize all teachers to stop work, remote and in-person, and strike if CPS prevented its K-8 teachers from working remotely by cutting off their remote access. CTU gave its members until midnight on Saturday, January 23, to vote whether to authorize the measure. On Sunday, January 24, CTU announced that 86% of its membership submitted a vote on the measure, and of the members who submitted a vote, 71% voted to authorize the measure.

28. On Sunday, January 24, 2021, CPS acquiesced to CTU's bad-faith behavior and announced that it would allow its K-8 teachers to continue working remotely while it attempted to work out a compromise with CTU.

29. CPS and CTU did not come to an immediate agreement, such that on Tuesday, January 26, CPS announced to its parents that pre-K and cluster students should not

7

report to school on Wednesday, January 27, because it could not guarantee enough teachers would be in the building.

30. Eventually CTU and CPS reached an agreement to permit a return to in-person learning for K-8 students at the beginning of March 2021.

31. Ultimately CTU's threats pushed back reopening of K-8 schools by at least a month.

32. Meanwhile, under Governor Pritzker's vaccine plan, teachers became eligible to receive the COVID-19 vaccines on January 25, 2021, as part of "Phase 1B," which covered "residents over the age of 65 and frontline essential workers."[2]

33. In March of 2021, CTU and CPS agreed that high schools would reopen for at least partial in-person instruction on April 19, 2021, the beginning of the fourth quarter of CPS's school year.

34. Under that schedule, Chicago Public High Schools would open more than a month after elementary and middle schools reopened (on March 1 for kindergarten through fifth grade and March 8 for sixth through eighth grade).

35. As with the other reopening agreements, the April 19 date would require CTU members to report for in-person work prior to the first day of in-person classes. Specifically, CTU members were expected to report for in-person work during the week of April 12, 2021.

36. However, CTU then reneged on that agreement.

---

[2] *Governor Pritzker Announces Initial Launch of Phase 1B of the COVID-19 Vaccine Administration Plan*, Illinois.gov (Jan. 22, 2021), https://www.illinois.gov/news/press-release.22682.html.

8

37. On April 11, 2021, CTU voted to put all of its teachers back on remote learning.

38. Therefore, CTU members failed to report for in-person work starting on April 14, as agreed to with CPS.

39. On April 15, 2021, CTU and CPS reached an agreement, which saw high school students return to in-person learning on Monday, April 19, 2021.

### III. CPS returned to in-person learning for the 2021–2022 school year until CTU voted to refuse to teach in person starting January 5, 2022.

40. CPS returned to district-wide, 5-days-a-week, in-person schooling for the 2021–2022 school year. From August 2021 through the end of 2021, CPS held district-wide, in-person schooling.

41. Just as they had been among the first to receive their initial doses, teachers were eligible for COVID-19 booster shots by the end of September 2021.[3] This is because they are essential workers and expected to be teaching in-person.

42. Nonetheless, in December 2021, CTU began questioning the safety of in-person schooling with the omicron-variant of COVID-19. On December 28, 2021, CTU held a meeting of delegates and electronically polled its members if they would "support a district-wide pause and temporary shift to remote learning." Of the CTU members who responded, 91% said they would participate in a "remote-work action" after winter break.

---

[3] Megan Cerullo, *Here are the workers now eligible for a COVID-19 booster shot*, CBS News (Sept. 27, 2021, 7:18 AM) https://www.cbsnews.com/news/covid-19-vaccine-booster-shot-workers-eligible/.

9

43. In response, CPS sent a district-wide email indicating that schools would remain open for in-person education on Monday, January 3, 2022, the scheduled return date after CPS's winter break.

44. CTU continued to vocalize its concerns about teacher safety because of the omicron variant of COVID-19, yet nonetheless did not call for a strike beginning January 3, 2022. Teachers and students, thus, returned to school on January 3, and January 4, 2022.

45. On Tuesday, January 4, 2022, however, CTU held an evening meeting of delegates to determine whether to ask its membership whether to withhold in-person teaching, as required by CPS, and provide teaching remotely only, even though teachers may not work remotely without approval of the Chicago Board of Education. CTU initially would allow members to vote electronically until 9 PM, but extended voting until 10 PM on Tuesday, January 4, 2022.

46. In response, CPS indicated that if CTU voted to withhold teaching in person, as the district required, then it would be forced to cancel classes on Wednesday, January 5, 2022, because it could not ensure enough teachers would be available for the students. In addition, CPS indicated that any teacher that did not show up to work in-person on Wednesday, January 5, 2022, would not be paid and would be placed on "no pay status."

47. At 10:51 PM on January 4, 2022, CTU announced that 73% of its members had voted to withhold in-person teaching, and provide only remote teaching, starting

10

FILED DATE: 1/6/2022 5:04 PM 2022CH00144

January 5, 2022.[4] Because CTU members refused to teach under the conditions set forth by CPS—in-person instruction—CTU members are, by definition engaged in a strike.

48. CTU indicated that "The action will end when one of the following conditions is met: The current surge in cases substantially subsides, or the mayor's team at CPS signs an agreement establishing conditions for return that are voted on and approved by the the [sic] CTU House of Delegates."[5]

49. In response to CTU's strike, CPS cancelled classes on Wednesday, January 5, 2022 and again, on Thursday, January 6, 2022, because it could not guarantee enough teachers would be in the schools to teach CPS students.

50. CTU never sent a notice of intent to strike to CPS, the regional superintendent, or the Educational Labor Relations Board. And less than 24 hours elapsed from the time CTU members voted on its measure to authorize a strike on January 4, 2022, and when they did not show up for work in-person the next day, in contrast to the requirement under Illinois law that 10 days elapse from the vote to authorize a strike to the time a strike begins.

51. With respect to the issue of whether it is safe for teachers to return to school in-person due to COVID-19, CPS and CTU have not engaged in mediation.

52. With respect to the issue of whether it is safe for teachers to return to school in-person due to COVID-19, CPS and CTU have not engaged in any fact-finding pursuant to 115 ILCS 5/13(b)(2.5).

---

[4] https://twitter.com/CTULocal1/status/1478590050107543552?s=20.
[5] https://twitter.com/CTULocal1/status/1478590050107543552?s=20.

11

## IV. The Illinois Educational Labor Relations Act.

53. Section 13 of the Act provides the requirements for educational employees to strike. In relevant part, Section 13 states:

> educational employees in a school district organized under Article 34 of the School Code shall not engage in a strike except under the following conditions:
> (1) they are represented by an exclusive bargaining representative;
> (2) mediation has been used without success and, for educational employers and exclusive bargaining representatives to which subsection (a-5) of Section 12 of this Act applies, at least 14 days have elapsed after the Board has made public the parties' offers;
> (2.5) if fact-finding was invoked pursuant to subsection (a-10) of Section 12 of this Act, at least 30 days have elapsed after a fact-finding report has been released for public information;
> (2.10) for educational employees employed in a school district organized under Article 34 of the School Code, at least three-fourths of all bargaining unit employees who are members of the exclusive bargaining representative have affirmatively voted to authorize the strike; provided, however, that all members of the exclusive bargaining representative at the time of a strike authorization vote shall be eligible to vote;
> (3) at least 10 days have elapsed after a notice of intent to strike has been given by the exclusive bargaining representative to the educational employer, the regional superintendent and the Illinois Educational Labor Relations Board;
> (4) the collective bargaining agreement between the educational employer and educational employees, if any, has expired or been terminated; and
> (5) the employer and the exclusive bargaining representative have not mutually submitted the unresolved issues to arbitration.

115 ILCS 5/13(b).

54. Article 34 of the School Code, 105 ILCS 5/34-1, applies only to cities having a population exceeding 500,000, which therefore applies only to CPS.

12

FILED DATE: 1/6/2022 5:04 PM 2022CH00144

55. Aside from 115 ILCS 5/13, no other provision in Illinois law authorizes CTU to strike.

56. Further, no provision of Illinois law, no contract, and no local ordinance authorizes CTU, its members, or CPS teachers to provide teaching remotely without approval by the Chicago Board of Education.

### Count I
### CTU's strike is not authorized by Section 13 of the Act or any other provision of Illinois law.

57. Plaintiffs reallege the preceding paragraphs of this Complaint as though fully set forth herein.

58. Section 13 of the Act, 115 ILCS 5/13, prohibits educational employees from engaging in a strike unless specific conditions are met. Among those conditions, in this case, the following conditions have not been met:

- 115 ILCS 5/13(b)(2) requires mediation to have been used without success and at least 14 days have elapsed after the Board has made public the parties' offers.
    - The parties have not engaged in mediation over the safety issues alleged by CTU related to in-person learning.

- 115 ILCS 5/13(b)(2.5) requires at least 30 days have elapsed after a fact-finding report has been released for public information pursuant to fact-finding invoked pursuant to Section 12(a-10) of this Act.
    - The parties never engaged in fact-finding with respect to the safety issues CTU alleges are at issue with in-person learning.

13

FILED DATE: 1/6/2022 5:04 PM 2022CH00144

- 115 ILCS 5/13(b)(2.10) requires at least three-fourths of all bargaining unit employees who are members of the exclusive bargaining representative have affirmatively voted to authorize the strike.
    - According to CTU, only 73% of its members voted to withhold in-person teaching, less than the three-fourths required to authorize a strike.
- 115 ILCS 5/13(b)(3) requires that at least 10 days have elapsed after a notice of intent to strike has been given by the exclusive bargaining representative to the educational employer, the regional superintendent and the Illinois Educational Labor Relations Board.
    - CTU never sent a notice of intent to strike to CPS, the regional superintendent, or the Board. And less than 10 days elapsed since CTU closed member voting on its measure to authorize a strike. Thus, this condition could not have been met.
- 115 ILCS 5/13(b)(4) requires that the collective bargaining agreement between the educational employer and educational employees, if any, has expired or been terminated.
    - The Collective Bargaining Agreement between CPS and CTU has neither expired nor been terminated.

59. In summary, the conditions that the Act requires to have been met before educational employees can legally strike have not been met.

60. Nonetheless, without a basis under Illinois law, CTU has instructed all of its members to withhold in-person teaching from all CPS students.

61. CTU has no basis to claim that its vote to withhold in-person learning is not a strike. "[T]he test is not whether the union calls its action a strike, but whether the effect of its action is equivalent to that of a strike. *Chi. Bd. of Educ. v. Chi. Teachers Union*, *11 (Illinois Educational Labor Relations Board, May 18, 2017). As stated, teachers may not work remotely unless they have approval of the Chicago Board of Education, which they do not have. "[T]he test is whether the union's conduct constitutes a concerted failure to report for work," *id.* at *12, including a sick-out, slow-down, or other work action not facially denominated a strike. Here, the union's conduct resulted in its members failing to report to work for in-person instruction, which forced CPS to cancel classes on January 5 and 6.

62. Therefore, the actions of CTU to authorize its members, educational employees of CPS, to strike by withholding in-person teaching for all of CPS, are illegal.

63. Plaintiffs, parents of CPS students, are harmed by CTU's illegal actions because their children are being denied schooling and they have had to secure child care for their children.

WHEREFORE, Plaintiffs respectfully pray that the Court grant the following relief:

A. Enter a declaratory judgment that the current collective bargaining agreement between CPS and CTU provides that CTU may not authorize a strike and that CTU's actions to stop in-person teaching violated the collective bargaining agreement;

15

FILED DATE: 1/6/2022 5:04 PM 2022CH00144

B. Enter a declaratory judgment that the facts of this case show that the conditions required for educational employees to strike under Section 13 of the Act are not met and therefore CTU's actions to stop in-person teaching constitute an illegal strike;

C. Enter temporary, preliminary, and permanent injunctive relief preventing CTU from continuing to authorize its members to stop in-person teaching unless and until all the conditions set forth in Section 13 of the Act are met and such actions do not violate the collective bargaining agreement;

D. Award Plaintiffs damages in the form of lost income and the cost of securing child care while CTU and its members were on strike;

E. Award Plaintiffs their reasonable costs and expenses; and

F. Award Plaintiffs any additional relief the Court deems just and proper.

| | |
|---|---|
| Dated: January 6, 2022 | Respectfully submitted, |
| | Laurel Golden, Amelia Kessem, Jane Siavelis, Michelle Shvartser, Robert Bartlett, Denise Heitz, and Joseph Warnke, |
| | /s/ Jeffrey M. Schwab |

Jeffrey M. Schwab (#6290710)
James McQuaid (#6321108)
Liberty Justice Center
Cook County No. 49098
141 West Jackson Boulevard
Suite 1065
Chicago, Illinois 60604
312-637-2280
(312) 263-7702 (fax)
jschwab@libertyjusticecenter.org
jmcquaid@liberytjusticecenter.org
*Attorneys for the Plaintiffs*

16