**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| CHRISTINE SIMMONS, as Parent and Natural Guardian of T.S. and CHRISTINE SIMMONS, Individually; HSINYI LIU, as Parent and Natural Guardian of B.W. and HSINYI LIU, Individually; and, All Others Similarly Situated, <br><br> Plaintiffs <br><br> v. <br><br> JAY ROBERT ("J.B.") PRITZKER, in his official capacity as Governor of Illinois, ILLINOIS STATE BOARD OF EDUCATION, CITY OF CHICAGO SCHOOL DISTRICT 299, BOARD OF EDUCATION OF THE CITY OF CHICAGO, RONALD AMUNDSEN HIGH SCHOOL, OTTAWA TOWNSHIP HIGH SCHOOL #140, DR. CARMENT I. AYALA, in her official capacity as Superintendent of Education in Illinois; PEDRO MARTINEZ, I his official capacity as Chief Executive Officer of Chicago, Public Schools; MIGUEL DEL VALLE, in his official capacity as President of the City of Chicago Board of Education, and MICHAEL CUSHING, in his official capacity as Superintendent of Ottawa Township Public Schools, <br><br> Defendants. | Case No. 22-cv-123 <br><br> Honorable Judge Manish S. Shah |

**DEFENDANTS GOVERNOR PRITZKER, CARMEN AYALA AND THE ILLINOIS STATE BOARD OF EDUCATION'S MEMORANDUM OF LAW IN SUPPORT OF <u>THEIR MOTION TO DISMISS PLAINTIFFS' COMPLAINT</u>**

Defendants, Governor JB Pritzker, in his official capacity, Dr. Carmen I. Ayala, in her official capacity, and the Illinois State Board of Education (the "State Defendants") through their attorney, Kwame Raoul, Attorney General of Illinois, submit this memorandum in support of their

1

motion to dismiss Plaintiffs' complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## INTRODUCTION

In March 2020, the COVID-19 virus became a global pandemic that impacted every facet of life. COVID-19 is a highly transmissible disease that spreads rapidly in enclosed settings. To curb the spread of COVID-19, individuals had to change their daily routines and governments across the world implemented protective measures. Some of the most common preventative steps included "social-distancing" requirements to prevent in-person gatherings. This included many schools adapting their curriculums to allow for virtual learning as opposed to traditional in-person learning.

Plaintiffs are two parents who bring claims on behalf of their minor children, themselves, and all similarly situated individuals. *See* ECF No. 1. Plaintiffs allege that Defendants, including the State Defendants, violated a myriad of federal laws and the Constitution when they determined that virtual learning was a necessary step to protect the safety of the people of Illinois, including its students and teachers. *See id*. Under the Individuals with Disabilities Education Act ("IDEA"), students with disabilities must be provided a free appropriate public education ("FAPE") and an individualized educational plan ("IEP"), and a student's FAPE or IEP cannot be changed without notice of the change, parental participation, or a meeting regarding the change. Plaintiffs allege that the shift to virtual learning due to the COVID-19 pandemic resulted in unauthorized changes to students' IEPs in violation of IDEA. Plaintiffs also allege that the move to virtual learning over in-person learning violates the Rehabilitation Act and the Americans with Disabilities Act ("ADA") because students with disabilities were discriminated against as compared to non-disabled students during the virtual learning period. Plaintiffs further allege that the decision to

2

use virtual learning during the COVID-19 pandemic violated their substantive due process and equal protection rights under the Fourteenth Amendment and Illinois state law. Finally, Plaintiffs allege that by receiving federal funding for the 2020 and 2021 school years, Defendants entered into a racketeering enterprise in violation of the Racketeer Influenced and Corruption ("RICO") Act.

None of Plaintiff's claims can survive a motion to dismiss. To avoid duplicative briefing, the State Defendants adopt the arguments of the Board of Education of the City of Chicago, Pedro Martinez, and Miguel Del Valle (the "Chicago Defendants") as appropriate. *See* ECF No. 27. Plaintiffs' claims against the State Defendants are moot because schools in Illinois are open for in-person learning. Further, the State Defendants' decisions about how to address the COVID-19 pandemic, including decisions to transition to virtual learning, are entitled to extreme deference under *Jacobson v. Massachusetts*, 197 U.S. 11, (1905), and do not violate the Fourteenth Amendment. Additionally, Plaintiffs cannot state a viable RICO claim against the State Defendants. As the Chicago Defendants explain in detail, Plaintiffs' claims under the IDEA, the ADA, and the Rehabilitation Act are not viable. Finally, Plaintiffs' claims under the Illinois Administrative Code are barred by the Eleventh Amendment.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) provides that a party may move to dismiss a case based on "lack of subject matter jurisdiction." F.R.C.P. 12(b)(1). Federal courts lack subject matter jurisdiction when a case becomes moot. *Pakovich v. Verizon LTD Plan*, 653 F.3d 488, 492 (7th Cir. 2011). Pursuant to Rule 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." F.R.C.P. 12(h)(3).

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint. A complaint may be dismissed if the plaintiff fails to allege sufficient facts to state a cause of action that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A sufficient complaint must allege "more than a sheer possibility that a defendant has acted unlawfully" and be supported by factual content; "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the court must accept all well-pleaded facts as true, but it must also "draw on its judicial experience and common sense" to determine if the plaintiff has stated a plausible claim for relief. *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009), *quoting Iqbal* 556 U.S. at 678. If the court determines that a plaintiff has failed to meet this plausibility requirement, the matter should be dismissed.

**ARGUMENT**

As a preliminary matter, Plaintiffs sue Dr. Carmen Ayala in her official capacity as the Director of the Illinois State Board of Education and the Illinois State Board of Education ("ISBE"). *See* ECF No. 1 at caption. Plaintiffs' claims against ISBE under the Fourteenth Amendment, RICO, and the ADA are barred by the Eleventh Amendment. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 97 (1984).

**I.     PLAINTIFFS' REQUEST FOR INJUNCTIVE RELIEF IS MOOT.**

The core of Plaintiffs' requested relief is an injunction that prohibits any schools in Illinois from suspending in-person education for more than 10 cumulative school days during the 2021-2022 school year. ECF No. 1 at Prayer for Relief ¶ 6. As of January 12, 2022, Chicago Public

Schools, and all other schools in the State, were open for in-person education.[1] Therefore, Plaintiffs have no need for the injunctive relief they are seeking through this lawsuit, and their claims are moot. *See, e.g., Milwaukee Police Ass'n v. Bd. of Fire and Police Com'rs of City of Milwaukee*, 708 F.3d 921, 928 (7th Cir. 2013) ("Mootness is the doctrine of standing set in a time frame.").

While standing "is evaluated at the time suit is filed," mootness requires "reevaluating the standing requirements throughout litigation." *Id.* at 928-29. As such, "when a party with standing at the inception of the litigation loses it due to intervening events, the inquiry is really one of mootness." *Id.* at 928; *see also Nat'l Rifle Ass'n of Am., Inc. v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 700 F.3d 185, 191 (5th Cir. 2012). A case becomes moot when "a court's decision can no longer affect the rights of litigants in the case before them and simply would be 'an opinion advising what the law would be upon a hypothetical state of facts.'" *H.P. by and Through W.P. v. Naperville Comm. Unit Sch. Dist. #203*, 910 F.3d 957, 960 (7th Cir. 2018). Here, Plaintiffs have no need for the injunctive relief they request because schools have reopened for in-person learning. As such, no decision by this Court is necessary on the issue of whether Plaintiffs T.S. and B.W. may return to their schools for in-person learning. Further, any request for a declaratory judgment does not change this conclusion because such a ruling would have no "impact on the parties." *Cornucopia Inst. v. U.S. Dep't of Agric.*, 560 F.3d 673, 676 (7th Cir. 2009). Plaintiffs' claims for injunctive relief are moot, Plaintiffs' claims should be dismissed.

There is a well-established exception to the mootness doctrine for cases in which the dispute is "capable of repetition, yet evading review." *See, e.g., Fed. Election Com'n v. Wisc. Right to Life, Inc.*, 551 U.S. 449 (2007) (citations omitted). Under this exception, "a defendant's

---

[1] *Chicago Schools to Reopen After Teachers Agree to End COVID-19 Walkout*, Costas Pitas, RUETERS, available at https://www.reuters.com/world/us/chicago-teachers-backs-deal-reopen-schools-after-covid-walkout-report-2022-01-11/ (last accessed March 24, 2022).

voluntary cessation of challenged conduct will not render a case moot because the defendant remains free to return to his old ways." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 645 (7th Cir. 2020) (citations and internal quotations omitted). Indeed, a case is rendered moot "only if it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (citation omitted). The Seventh Circuit has also noted, however, that when "the defendants are public officials . . . we place greater stock in their acts of self-correction, so long as they appear genuine," as a contrary conclusion would put the Court "in the position of presuming [Defendants] . . . acted in bad faith – harboring hidden motives to reenact the [policy] after we have dismissed the case – something we ordinarily do not presume." *Id.* (citations and internal quotations omitted).

Moreover, when considering whether a dispute has been rendered moot by actions taken voluntarily by a government actor, the Seventh Circuit has never required that government actor "to issue a promise that it will not return to its prior policy," nor is "the merely theoretical possibility that [the government actor] could decide to revisit the policy at some remote point in the future without any evidence of an intention to do so" enough to survive a mootness challenge. *Speech First, Inc.*, 968 F.3d at 647. Here, the action complained of by Plaintiff—a temporary suspension of in-person education due to public health and safety concerns caused by COVID-19—was never intended to be a long-term policy.[2] Rather, it was a temporary measure taken in response to an unprecedented public health crisis. Available evidence and data suggest that the crisis wrought by the COVID-19 pandemic is finally beginning to be brought under control, aided by the development and dissemination of vaccines and boosters. There is nothing to suggest that

---

[2] Additionally, the State Defendants maintain that their actions in temporarily suspending in-person learning were not wrongful, as the suspension was a public health and safety measure undertaken to combat the spread of COVID-19.

6

another shift to virtual learning is likely or imminent and, therefore, Plaintiffs' claims for injunctive relief are moot and should be dismissed.

## II. GOVERNOR PRITZKER'S DECISION TO TEMPORARILY STOP IN-PERSON LEARNING IS ENTITLED TO DEFERENCE UNDER *JACOBSON*.

The proper standard for analyzing the constitutionality of governmental action in a public health crisis derives from the seminal vaccination case of *Jacobson v. Massachusetts*, 197 U.S. 11 (1905). In *Jacobson*, the Supreme Court upheld a Massachusetts mandate for the residents of the state to get vaccinated against smallpox. *Id.* at 27. The mandate was enforced by a possible criminal penalty of a fine or imprisonment. *Id.* at 26. As the Supreme Court held, "the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand." *Id.* at 29.

COVID-19 is precisely the kind of public health crisis contemplated in *Jacobson*. *See Klaassen v. Trs. of Ind. Univ.*, 7 F.4d 592, 593 (7th Cir. 2021). Thus, the actions taken by the Governor to prevent the transmission of COVID-19 should be upheld so long as there is: (1) a "real or substantial relation" to public health and safety, and (2) the action does not constitute "beyond all question, a plain, palpable invasion of rights secured by the fundamental law." *Jacobson*, 197 U.S. at 31. Absent arbitrary or unreasonable action that far exceeds "what [is] reasonably required for the safety of the public," courts will defer to executive exercises of authority in extraordinary times. *Id.* at 28. Plaintiffs' position, that making temporary changes to shift to virtual learning to avoid in-person gatherings violates their Fourteenth Amendment rights, clearly fails under the *Jacobson* standard.

### III. PLAINTIFFS CANNOT STATE A VIABLE CLAIM UNDER THE FOURTEENTH AMENDMENT BECAUSE THE DEFENDANTS ACTED RATIONALLY.

Even so, Plaintiffs cannot state viable substantive due process or equal protection claims. The equal protection clause was designed to ensure that similarly situated people are treated the same, but it "is not a license for courts to judge the wisdom, fairness, or logic of legislative choices." *F.C.C v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). Here, Plaintiff's equal protection claim is subject to rational basis review because mental disability is not a suspect class. *See* ECF # 7 at 12; *City of Cleburne, Tex. v. Cleburne Living Ctr.* ("*Cleburne*"), 473 U.S. 432, 442 (1985) (holding that mental disability is not a suspect class). Further, because there is no fundamental right at issue, rational basis also applies to Plaintiffs' substantive due process claim. *Vill. of Orland Park v. Pritzker*, 475 F. Supp. 3d 886, 884 (N.D. Ill. Aug. 1, 2020).

Under the rational basis standard, courts are required to uphold the government's actions unless there is no rational relationship between that action and a legitimate government purpose. *St. Joan Antida High Sch. Inc. v. Milwaukee Public Sch. Dist.*, 919 F. 3d 1003, 1010 (7th Cir. 2019). "This standard of review is a paradigm of judicial restraint," and judicial inquiry ends as soon as a plausible reason for the action is found. *F.C.C.*, 508 U.S. at 313-14 (internal citations omitted); *St. Joan Antida High Sch. Inc.*, 919 F.3d at 1011 ("We need only identify a legitimate end and ask whether the means – the classification – bears a rational relationship to the end."). This deferential standard recognizes that courts "are required to accept a legislature's generalizations even when there is an imperfect fit between means and ends. A classification does not fail rational-basis review because it is not made with mathematical nicety or because in practice it results in some inequality." *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 946-7 (7th Cir. 2009) (quoting *City of Chicago v. Shalala*, 189 F.3d 598, 606 (7th Cir. 1999)). Under this standard, which gives a "strong presumption of validity" to governmental decisions, Defendants are not required

8

to justify their actions. Instead, the burden is on Plaintiff to negate every conceivable basis for the decision. *Minerva Dairy, Inc. v. Harsdorf*, 905 F.3d 1047, 1053 (7th Cir. 2018) (internal citations omitted). Plaintiff cannot meet this burden and has not even attempted to do so.

As explained above, there were compelling reasons to both temporarily suspend and cautiously approach reopening in-person learning. Plaintiff may disagree with the State Defendants' decisions and dispute the validity of the reasoning behind those decisions, but a disagreement as to whether a government decision is appropriate does not establish that there was no rational basis for the decision. *Tuan Anh Nguyen v. I.N.S.*, 533 U.S. 53, 77 (2001) ("The fact that other means are better suited to the achievement of governmental ends . . . is of no moment under rational basis review.") The temporary suspension of in-person learning is also clearly in line with other states that have similarly suspended in-person schooling, which is further evidence of a clear rational basis. As such, there is no basis for judicial interference with the State Defendants' decision-making process. Plaintiffs cannot succeed on their substantive due process or equal protection claims and those claims should be dismissed with prejudice.

## IV. PLAINTIFFS' RICO CLAIM AGAINST THE INDIVIDUAL STATE DEFENDANTS FAILS.

Plaintiffs cannot bring a RICO claim for monetary damages against Governor Pritzker or Dr. Ayala in their official capacities because that claim is barred by the Eleventh Amendment. *See Pennhurst,* 465 U.S. at 97 (holding that the Eleventh Amendment bars suits against nonconsenting states); *Kentucky*, 473 U.S. at 166 (holding that the Eleventh Amendment bars claims against state official in their official capacities). The Eleventh Amendment applies to RICO claims. *See Vierra v. California Highway Patrol,* 644 F. Supp.2d 1219, 1232 (E.D. Cal. 2009) (the Eleventh Amendment barred a RICO claim against the California Highway Patrol); *Kashelkar v. MacCartney*, 79 F. Supp.2d 370 (S.D.N.Y. 1999) (dismissing RICO claims against law secretary

to state court judge on Eleventh Amendment and quasi-judicial immunity grounds); *Smith v. Babbitt*, 875 F. Supp. 1353, 1365 (D. Minn. 1995) (holding that RICO claim against sovereign tribe as barred by the Eleventh Amendment). Plaintiffs' RICO claims against Governor Pritzker and Dr. Ayala are barred by the Eleventh Amendment and must be dismissed.

However, even if Plaintiffs RICO claims against the State Defendants were not barred, Plaintiffs cannot state a viable RICO claim. The Plaintiffs in *J.T.*, represented by the same law firm as the Plaintiffs in this action, attempted to bring a RICO claim against every school district in the United States *See J.T. v. de Blasio*, 500 F. Supp. 3d 137, 164 (S.D.N.Y. Nov. 13, 2020) (discussing how the RICO claim, which was not in the complaint, became a part of the case). In *J.T.*, the court dismissed every RICO claim with prejudice. *Id.* at 172. In reaching its determination, the *J.T.* court determined that "it is perfectly apparent that Plaintiff has not and cannot plead a viable RICO claim" . . . and that "the RICO allegations here asserted reek of bad faith and contrivance." *Id.* at 165 & 172. The defects in the RICO claim in *J.T.* have not been amended here and Plaintiffs' RICO claim should be dismissed with prejudice.

A viable RICO claims requires a showing that "(1) that the defendant (2) through the commission of two or more acts (3) constituting a 'pattern' (4) of 'racketeering activity' (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an 'enterprise,' (7) the activities of which affects interstate or foreign commerce." *Id.* at 165. "Because the mere assertion of a RICO claim has an almost inevitable stigmatizing effect on those named as defendants, courts should strive to flush out frivolous RICO allegations at an early stage of the litigation." *Id.* quoting *Schmidt v. Fleet Bank*, 16 F. Supp. 2d 340, 346 (S.D.N.Y. 1998).

As in *J.T.*, Plaintiffs assert their RICO claims based on allegations of the fraudulent receipt of money. *See* ECF No. 1 at Count VII. Standing to bring a RICO claim is limited to "any person

injured in his business or property." 18 U.S.C. §1964(c) (1988). Thus, Plaintiffs must show that they were the intended targets of the RICO violations and, as in *J.T.*, they cannot meet this requirement and do not have standing to bring a RICO claim. *Id.* at 166. The requirement that civil RICO plaintiffs allege an injury to "business or property" serves to "preclude recovery for personal injuries and the pecuniary losses incurred therefrom." *Ryder v. Hyles*, 2022 U.S. App. LEXIS 5775 (7th Cir. 2022) (holding that plaintiffs lacked standing to bring RICO claim against a church for alleged abuse), quoting *Doe v. Roe*, 958 F.2d 763, 767 (7th Cir. 1992); see also *Reiter v. Sonotone Corp.*, 442 U.S. 330, 339, 99 S. Ct. 2326, 60 L. Ed. 2d 931 (1979) ("The phrase 'business or property' . . . would, for example, exclude personal injuries suffered.").

As in *J.T.*, Plaintiffs allege that their children were not provided a FAPE but this is not a RICO predicate act. *Id.* Moreover, Plaintiffs were not the intended victim of any alleged fraud. If any defendants engaged in fraudulent activities to receive monetary gain, the only victim would be the United States as they supplied all of the monies at issue. As such, Plaintiffs do not have standing to bring this claim because they have not alleged, and cannot possibly be, the intended victims of any alleged RICO violation. *Id.* Therefore, Plaintiffs' RICO claim should be dismissed.

Jurisdictional issues aside, Plaintiffs still have not alleged a viable RICO claim. A RICO claim requires an enterprise, defined as "any individual, partnership, corporation, association, or other legal entity, and any . . . group of individuals associated in fact." 18 U.S.C. § 1961(4). "And most importantly, '[a] plaintiff's conclusory naming of a string of entities does not adequately allege an enterprise." *Id.* quoting *First Capital Asset Mgmt. v. Satinwood, Inc.*, 385 F.3d 159, 175 (2nd Cir .2004). Further, because RICO claims are based in fraud, they are held to a heightened pleading standard that requires specificity. Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake"). Here, there

11

are no specific RICO allegations related to Governor Pritzker and the allegations related to Dr. Ayala are boilerplate at best. *See* ECF No. 1 at Count VII. Ultimately, the entire premise of the RICO claim is based on the entirely implausible theory that schools throughout Illinois are using a global pandemic to defraud the federal government. *See* ECF No. 1. Like the RICO claim in *J.T.*, Plaintiffs' RICO claim lacks any basis and must be dismissed.

## V.  PLAINTIFFS' HAVE NOT STATED A CLAIM UNDER THE IDEA.

The State Defendants adopt and incorporate the arguments from the Chicago Defendants explaining why Plaintiff Liu, as guardian of Plaintiff B.W., has failed to state a claim. Moreover, the same arguments apply with equal force to the claims of Plaintiff Simmons, as guardian of Plaintiff T.S., because, like Plaintiff B.W., the administrative remedies available to Plaintiff T.S. have not been exhausted. ECF No. 1 at ¶ 15. Like Plaintiff B.W., Plaintiff T.S. alleges that exhaustion is not required. *Id.* at ¶ 15 & 104. However, for this argument fails for the same reasons it fails as to Plaintiff B.W. *See* Chicago Defendants' Memorandum of Law in Support of Their Motion to Dismiss Plaintiffs' Complaint.

Additionally, the arguments made by the Chicago Defendants explaining why Plaintiff B.W. has not stated a viable claim for any systemic violations under the IDEA apply to Plaintiff T.S.'s claims. Accordingly, the State Defendants adopt the Chicago Defendants' arguments as to why Plaintiff B.W.'s claims fail under the IDEA and further state that those arguments apply with equal force to Plaintiff T.S. Thus, neither set of Plaintiffs have stated a claim under the IDEA. *Id.*

## VI.  PLAINTIFFS' HAVE FAILED TO STATE CLAIMS UNDER THE REHABILITATION ACT OR THE ADA.

The State Defendants adopt and incorporate the arguments of the Chicago Defendants explaining why Plaintiff B.W. and Plaintiff Liu cannot state viable claims under the Rehabilitation

Act or the ADA. Additionally, these arguments apply with equal force to Plaintiff T.S. and Plaintiff Simmons. *Id.* Thus, no Plaintiff has stated a viable claim under the Rehabilitation Act or the ADA.

### VII. PLAINTIFFS CLAIMS AGAINST THE INDIVIDUAL STATE DEFENDANTS UNDER THE ILLINOIS ADMINISTRATIVE CODE ARE BARRED BY THE ELEVENTH AMENDMENT.

Plaintiffs' claims that the State Defendants violated any Illinois statute or regulation are barred by the Eleventh Amendment. The Eleventh Amendment is an "affirmation that the fundamental principle of sovereign immunity limits the grant of judicial authority in Article III [of the Constitution]." *Pennhurst*, 465 U.S. at 97. Under *Pennhurst*, sovereign immunity bars suits against a state by its own citizens, as well as citizens of other states, because federal jurisdiction over suits against nonconsenting states was not contemplated when establishing the judicial power of the United States. *Id.*; *Hans v. Louisiana*, 134 U.S. 1 (1890). The sovereign immunity bar also prevents claims against state officials in their official capacities. *Kentucky*, 473 U.S. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985) ("an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" and further, "[i]t is *not* a suit against the official personally, for the real party in interest is the entity"); *Brokaw v. Mercer County*, 235 F.3d 1000, 1009 (7th Cir. 2000).

There are three exceptions to sovereign immunity: (1) Congress has abrogated the state's immunity from suit through an unequivocal expression of its intent to do so through a valid exercise of congressional power; (2) a state has waived its immunity and consented to the suit; and (3) the suit is one for prospective injunctive relief pursuant to *Ex parte Young*, 209 U.S. 123 (1908). *Sonnleitner v. York*, 304 F.3d 704, 717 (7th Cir. 2002). None of these exceptions apply here.

Although the Eleventh Amendment does not bar claims for injunctive relief against state officials to stop an ongoing violation of *federal* law, *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002), this exception does not extend to allowing claims based on

13

alleged violations of state law. "A federal Court's grant of relief against state officials on the basis of state law … does not vindicate the supreme authority of federal law." *Id.* at 107. In holding that the Eleventh Amendment bars suits against state officials to compel them to conform their conduct to state law, the *Pennhurst* Court noted that "it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* The Eleventh Amendment similarly bars state-law claims for declaratory relief. *Watkins v. Blinzinger*, 789 F.2d 474, 483–84 (7th Cir. 1986); *Benning v. Bd. of Regents*, 928 F.2d 775, 778 (7th Cir. 1991). A declaratory judgment cannot be used to avoid the Eleventh Amendment when monetary and injunctive relief would be barred. *Council 31 of AFSCME. v. Quinn*, 680 F.3d 875, 884 (7th Cir. 2012).

To determine that Plaintiffs' state-law claims are barred by the Eleventh Amendment, the Court need only conduct the straightforward inquiry mandated by *Verizon Maryland* and ask whether their state-law claims seek prospective relief to stop an ongoing violation of *federal* law. The answer is clearly "no," and it is irrelevant that Plaintiffs' other arguments allege violations of federal law. The limits on federal jurisdiction over state-law claims cannot be evaded by making those claims pendant to federal claims. *Pennhurst*, 465 U.S. at 119–21.

Because Plaintiffs seek relief based on state law, which is expressly prohibited by *Pennhurst,* such arguments are barred by the Eleventh Amendment. Thus, the Court need not address the merits Plaintiffs' requested relief under state law. In addition, if the Court agrees that Plaintiffs have also failed to state a viable federal claim, then it should follow the general rule of not exercising supplemental jurisdiction over the remaining state-law claims. *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1043 (7th Cir. 1998). Accordingly, Plaintiffs' state-law claim should be dismissed as well.

**CONCLUSION**

WHEREFORE, for the foregoing reasons, Governor Pritzker, Dr. Ayala, and the Illinois State Board of Education respectfully request that this Court dismiss all of Plaintiffs' claims against them and for any other relief this Court deems appropriate.

                                            Respectfully submitted,

                                            KWAME RAOUL
                                            Illinois Attorney General

By:    */s/ Mary A. Johnston*
        MARY ALICE JOHNSTON
        ERIN WALSH
        ASSISTANT ATTORNEYS GENERAL
        Office of the Illinois Attorney General
        General Law Bureau – Civil Rights Unit
        100 W. Randolph St., 13th Floor
        Chicago, IL 60601
        mary.johnston@ilag.gov
        erin.walsh@ilag.gov