## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

_____

| | |
|---|---|
| CHRISTINE SIMMONS, as Parent and Natural Guardian of T.S. and CHRISTINE SIMMONS, Individually; | ) ) ) ) |
| HSINYI LIU, as Parent and Natural Guardian of B.W. and HSINYI LIU, Individually, | ) ) ) |
| and All Other Similarly Situated, | ) ) |
| Plaintiffs | ) Case No.: 1:22-cv-00123 |
| | ) |
| v. | ) Judge Shah |
| | ) |
| | ) |
| JAY ROBERT ("J.B") PRITZKER, in his official capacity As Governor of Illinois, ILLINOIS STATE BOARD OF EDUCATION, CITY OF CHICAGO SCHOOL DISTRICT 299, BOARD OF EDUCATION OF THE CITY OF CHICAGO, RONALD AMUNDSEN HIGH SCHOOL, OTTAWA TOWNSHIP HIGH SCJOOL #140, DR. CARMEN L. AYALA, in her official capacity as Superintendent of Education of Illinois; PEDRO MARTINEZ, in his official capacity as Chief Executive Officer of Chicago Public Schools; MIGUEL DEL VALLE, in his official capacity as President of the City of Chicago Board of Education; and MICHAEL CUSHING, in his official capacity as Superintendent of Ottawa Township Public Schools, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) ) |

_____ )

## DEFENDANTS OTTAWA TOWNSHIP HIGH SCHOOL #140 AND DR. MICHAEL CUSHING'S MOTION TO DISMISS PLAINTIFF CHRISTINE SIMMONS and T.S.'s COMPLAINT

Filed by
WILLIAM F. GLEASON (wgleason@petrarcagleason.com)
ERIC B. BERNARD (ebernard@petrarcagleason.com)
PETRARCA, GLEASON, BOYLE & IZZO, LLC
19730 Governors Highway, Suite 10, Flossmoor, IL 60422
(708)799-6766

## <u>TABLE OF CONTENTS</u>

Page

Background ...................................................................................................................1

Argument ....................................................................................................................3

I.    Standard of Review.................................................................................3

II.    IDEA Claims.........................................................................................4

III.    Plaintiffs' Claims under Counts One, Two and Three Should be Dismissed for Failure to Exhaust Administrative Remedies...................................................6

IV.    Plaintiffs fail to state a claim for violation of IDEA................................................8

    1.    District 140 was not required by IDEA to Provide Prior Written Notice .........8

    2.    District 140 did not change T.S.'s educational placement...............................9

V.    Count IV should be dismissed because Plaintiff does not adequately plead a § 1983 equal protection claim .................................................................10

    1.    Plaintiff does not plead the elements of an equal protection claim ................10

    2.    Plaintiff's equal protection claim cannot survive rational basis review ..........12

VI.    Plaintiff's Substantive Due Process claim fails as a matter of law.............................14

    1.    Defendants' conduct does not "shock the conscience"...................................14

    2.    Defendants did not violate a fundamental right................................17

VII.    Plaintiffs cannot state a private cause of action against District 140 under 23 Ill. Admin. Code § 226.710 or 105 ILCS 14/8.02 *et seq*..............................17

VIII.    Plaintiff's fail to state a RICO cause of action .........................................................20

    1.    Plaintiffs fail to allege sufficient facts to demonstrate that District 140 was aware of any fraudulent scheme or that anyone engaged in a fraudulent act.............21

    2.    Plaintiffs fail to establish that any RICO violation was the but for and proximate cause of any injury suffered..........................................................22

    Conclusion ..........................................................................................24

## <u>TABLE OF AUTHORITIES</u>

<u>Page</u>

UNITED STATE SUPREME COURT CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........................................................4

*Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist. v. Rowley*,
    458 U.S. 176 (1982)...............................................................4, 5

*Cnty. of Sacramento v. Lewis*, 523 U.S. 833 (1998)...............................14, 15

*Fry v. Napoleon Community Schools*, 137 S.Ct. 743 (2017).....................5, 6

*Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010) ..........................22, 23

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992).......................21

UNITED STATE COURTS OF APPEALS CASES

*Brouwer v. Raffensperger, Hughes & Co.*, 199 F.3d 961 (7th Cir. 2000)..................20

*Brown v. City of Michigan City, Ind.*, 462 F.3d 720 (7th Cir. 2006)..........................17

*Doe v. AZ Dept. of Ed.*, 111 F.3d 678 F.3d 678 (9th Cir. 1997)...................................7

*Dunn v. Fairfield Cmty. High Sch. Dist. No. 225*,
    158 F.3d 962 (7th Cir. 1998) .........................................14, 15, 16, 17

*Flying J. Inc. v. City of New Haven*, 549 F.3d 538 (7th Cir. 2008) ...........................13

*Hecker v. Deere & Co.*, 556 F.3d 575 (7th Cir. 2009)...................................................4

*Henson v. CSC Credit Services*, 29 F.3d 280 (7th Cir. 1994).......................................4

*Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012).........................7

*McCormick v. Waukegan School District 60*, 374 F.3d 564 (7th Cir. 2004)................6

*Midwest Grinding Co. v. Spitz*, 976 F.2d 1016 (7th Cir. 1992)..................................20

*Miller v. Henman*, 804 F.2d 421 (7th Cir. 1986) ........................................................14

*Murphy v. Walker*, 51 F.3d 714 (7th Cir. 1995) ...........................................................4

*Remer v. Burlington Area School Dist.*, 286 F.3d 1007 (7th Cir. 2002).....................15

*Richards v. Michoff*, 696 F.3d 635 (7th Cir. 2012).......................................................3

*Seattle Sch. Dist. No. 1 v. B.S.*, 82 F.3d 1493 (9th Cir. 1996) ......................................4

*Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479 (1985) ....................................................20

*Tun v. Whittacker*, 398 F.3d 899, 902 (7th Cir. 2005).................................................14

*T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412 (2nd Cir. 2009)...........................8

*Vicom, Inc. v. Harbridge Merchant Servs., Inc.*, 20 F.3d 771 (7th Cir. 1994) ...........20

*Wright v. Associated Ins. Companies, Inc.*, 29 F.3d 1244 (7th Cir. 1994) ...................4

UNITED STATES DISTRICT COURT CASES

*A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 263 F. Supp. 705 (N.D. Ill. 2017) ...12, 13

*Brad K. v. Bd. of Educ. of the City of Chicago*,
    787 F. Supp. 2d 734 (N.D. Ill. 2011) ..................................................................8

*Brady for Smith v. SSC Westchester Operating Co LLC*,
    533 F. Supp. 3d 667 (N.D. Ill. 2021) ................................................................11

*Brown v. City of Michigan City, Ind.*, 462 F.3d 720 (7th Cir. 2006)...........................17

*Doe v. Bd. of Educ. of City of Chi.*, No. 19 C 00263, 2020 WL 1445638 (N.D. Ill. Mar. 24, 2020) ...................................................................................................................10, 12

*Loch v. Edwardsville School District 7*, 573 F. Supp. 2d 1072 (S.D. Ill. 2008)............6

*Village of Orland Park v. Prtizker*, 475 F. Supp. 3d 866 (N.D. Ill. 2020) .................16

*Zummo v. City of Chi.*, 345 F. Supp. 3d 995 (N.D. Ill. 2018).......................................4

STATE COURT CASES

*Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455 (1999) ....................................18

UNITED STATES STATUTES

18 U.S.C. § 1961...........................................................................................................22

18 U.S.C. § 1962...........................................................................................................22

18 U.S.C. § 1964...........................................................................................................22

20 U.S.C. § 1400.............................................................................................................4

20 U.S.C. § 1415.........................................................................................................5, 8

## UNITED STATES REGULATIONS

34 C.F.R. § 300.1 .............................................................................................................4

34 C.F.R. § 300.507 .........................................................................................................5

## STATE STATUTES

105 ILCS 5/10-30 ...........................................................................................................11

105 ILCS 5/14-1 *et seq* ..................................................................................................21

105 ILCS 5/14-8.02 ..........................................................................................................5

105 ILCS 5/14-8.02a ......................................................................................................19

105 ILCS 5/14-8.02e ......................................................................................................19

## STATE REGULATIONS

23 Ill. Admin. Code § 226.570 .......................................................................................19

23 Ill. Admin. Code Part 226 .........................................................................................21

23 Ill. Admin. Code § 226.600 *et seq.* ..........................................................................19

23 Ill. Admin. Code § 226.635 .........................................................................................5

23 Ill. Admin. Code § 226.710 .......................................................................................17

## FEDERAL RULES OF CIVIL PROCEDURE

Fed. R. Civ. Proc. 9(b) ...................................................................................................20

Fed. R. Civ. Proc. 12(b)(6) ..............................................................................................3

NOW COME Defendants, OTTAWA TOWNSHIP HIGH SCHOOL #140 ("District 140"), and MICHAEL CUSHING ("Dr. Cushing," and together with District 140, the "District 140 Defendants"), in his official capacity as the Superintendent of Ottawa Township High School District 140, by their attorneys, PETRARCA, GLEASON, IZZO & BOYLE, LLC pursuant to Federal Rule of Civil Procedure 12(b)(6) to present their Motion to Dismiss Plaintiff Christine Simmons and J.S.'s Complaint.

## **BACKGROUND**

Plaintiff T.S. is a child with disabilities and Christine Simmons ("Simmons") is the parent T.S. who receives special education services under IDEA. (Comp. ¶23-25). T.S. is currently age eighteen (18)[1] and in his final year as a Senior in District 140. (Comp. ¶23; Ex. 2).

In March of 2020, Plaintiff T.S. was 16 years old and qualified for special education services through an individual education plan ("IEP") under the primary eligibility of a Specific Learning Disability. (Comp. ¶24; Ex. 2). Under the language of his IEP, T.S. was to receive general education instruction for 78% of the school day and special education instruction in reading and English for 28% of the school day. (Comp. Ex. 2, Pg. 17; 20; 23). In addition, to assist Plaintiff T.S. in his ability to have meaningful access to his educational opportunities, Plaintiff T.S. was provided extended time 1.5x on tests in an alternative setting at the student's request. (Comp. ¶97; Ex. 2, Pg. 9). The related services offered to Plaintiff T.S. through his IEP were Transitional Education Services related to graduation; including employment, training, and independent living skills. (Comp. Ex. 2, Pg. 26).

---

[1] This raises questions regarding whether Ms. Simmons can continue to serve as a Plaintiff by serving as T.S.'s next friend in this matter.

On March 13, 2020, Governor J.B. Pritzker issued Executive Order 2020-05 which closed all schools in the State of Illinois, including District 140, for in-person educational services and required schools to switch to a remote learning platform. (Comp., ¶56; Ex. 5).  All students including T.S. continued to have access to their education through a remote learning platform through the end of the school year in May 2020.  (Comp. ¶99-100).  According to the IEP developed by District 140, Plaintiff T.S. did not qualify for the Extended School Year ("ESY") in Summer of 2020.  (Comp. Ex. 2).

When the 2020-2021 school year started in August 2020, most of the students who attended District 140 continued their education five days a week through a remote learning environment. Plaintiff T.S., however, was provided in-person instruction four days a week. (Comp. ¶101).  He received in person instruction four days a week for half of the school day and completed the second half of the school day and full days on Friday through the remote learning environment.  (Comp. ¶101).

On January 5, 2022, Christine Simmons filed a Due Process Complaint with ISBE against District 140 alleging that the District denied student T.S. FAPE when it required him to complete his education through remote learning.  (Comp. ¶103; See Exhibit A attached hereto[2]).  On January 29, 2022 the Hearing Officer issued an Order determining the complaint to be insufficient and allowed for the parent to submit an amended complaint by February 10, 2022. (See Exhibit B attached hereto).  On March 14, 2022 the amended complaint was also deemed insufficient by the hearing officer and the parent was granted leave to file a third amended complaint by March 25, 2022. (See Exhibit C attached hereto).   Ms. Simmons filed a second amended due process

---

[2] The District 140 Defendants are contemporaneously filing a Motion for Leave to File Exhibits Under Seal, which pertains to Exhibits A, B, C, and D referred to herein.

complaint on March 21, 2022. (See Exhibit D attached hereto). This is now subject to a third Notice of Deficiency which is pending a decision.

Plaintiffs assert that they are bringing this action on behalf of themselves and all other similarly situated school aged children with disabilities covered by IDEA in Illinois and their parents to assert the claims alleged in this complaint on a common basis. As noted in the Plaintiff's original complaint "the primary mechanism for ensuring implementation of IDEA's mandate for FAPE is the IEP as defined by 20 U.S.C. §§ 1401 (14) and § 1414(d). The IEP is an *individualized* "written statement prepared for every child that sets forth the special education and related services, supplementary aids, and services, as well as program modifications or supports to be provided to the child or on behalf of the child, to enable that child to achieve a comprehensive set of annual goals and short-term objectives." *Id.* By its very nature any violation of IDEA requires a look at each individual student's plan and a determination on a case-by-case basis whether that individual student was denied FAPE. Even the Questions and Answers sheet provided by the Plaintiff as **Exhibit 4** indicates that "each school would have to make an individualized determination whether and to what extent compensatory services may be needed."

The individual claims asserted against the District 140 Defendants by Ms. Simmons and T.S. are without merit and should be dismissed as a matter of law and should be dismissed for the reasons set forth herein.

## ARGUMENT

### I. Standard of Review

A motion under Rule 12(b)(6) tests whether the complaints states a claim for which relief can be granted. *Richards v. Michoff,* 696 F.3d 635, 637 (7th Cir. 2012). In considering a motion to dismiss, the Court must accept as true all facts alleged in the complaint and construe all reasonable

3

inferences in favor of the Plaintiff. *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir. 1995). The Court must only accept as true factual allegations which are pled in the complaint; it need not accept legal conclusions as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

When ruling on a motion to dismiss, a court may consider documents attached to the pleadings without converting the motion to dismiss into a motion for summary judgment, as long as the documents are referred to in the complaint and are central to the plaintiff's claims. *Wright v. Associated Ins. Companies, Inc.,* 29 F.3d 1244, 1248 (7th Cir. 1994). There is a relatively liberal approach to permitting the attachment of documents to a motion to dismiss. *Hecker v. Deere & Co.,* 556 F.3d 575, 582 (7th Cir. 2009). The Court may also take judicial notice of matters of public record in considering a motion to dismiss pursuant to Rule 12(b)(6) motion without converting it into a motion for summary judgment. *Henson v. CSC Credit Services,* 29 F.3d 280, 284 (7th Cir. 1994). A court may take judicial notice of filings and orders within administrative hearings and consider the same in adjudicating a motion to dismiss. *See Zummo v. City of Chicago,* 345 F.Supp.3d 995, 1006-1007 (N.D. Ill. 2018). As such, the Defendants have attached orders from the administrative due process hearing and the most recently filed complaint of the Ms. Simmons. These documents are subject to judicial notice and can be reviewed without converting the motion into one for summary judgment.

## II.     IDEA Claims

The IDEA requires all children with disabilities be offered a FAPE that meets their individual, needs. *20 U.S.C. § 1400(d); 34 C.F.R. § 300.1.* These needs include academic, social, health, emotional, communicative, physical, and vocational needs. *Seattle Sch. Dist. No. 1 v. B.S.,* 82 F.3d 1493, 1500 (9th Cir.1996). A FAPE requires "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Bd. of Educ. of*

4

*Hendrick Hudson Cent. Sch. Dist. v. Rowley,* 458 U.S. 176, 204 (1982)*.* A child receives a FAPE if the program: "(1) addresses his unique needs, (2) provides adequate support services so he can take advantage of the educational opportunities, and (3) is in accord with an individualized educational program." *Id.* at 188-89.

The Individuals with Disabilities Education Act ("IDEA") ensures that children with disabilities receive needed special education services. *Fry v. Napoleon Community Schools,* 137 S.Ct. 743, 748 (2017). Section 1415(l) of IDEA requires that if a suit is brought that "seek[s] relief that is also available under" the IDEA, the plaintiff is required to first exhaust the IDEA's administrative remedies. 20 U.S.C. §1415(l). The IDEA requires a parent or guardian to challenge the identification or evaluation of a student, the educational placement of a student with a disability or the provision of services to a student with a disability through an administrative hearing. 20 U.S.C. §1415(b)(6); 34 CFR §300.507(a). The Illinois State Board of Education ("ISBE") appoints impartial hearing officers who hear disputes regarding special education, including disputes regarding the development and implementation of a student's IEP, pursuant to provisions of the Illinois School Code and Illinois Administrative Code that correspond to IDEA. See 105 ILCS 5/14-8.02a(f-5); 23 Ill. Admin. Code § 226.635.

Section 1415(l) "is not merely a pleading hurdle" and it "requires exhaustion when the gravamen of the complaint seeks redress for a school's failure to provide a FAPE, even if not phrased or framed in precisely that way." *Fry*, 137 S.Ct. at 755. In addressing whether a complaint implicates IDEA and exhaustion, the Supreme Court has suggested that two (2) hypothetical questions be asked: (1) could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school and (2) could an adult at the school have pressed essentially the same grievance. *Id.* at 756. When the answer to either of these

5

questions is "no", then the complaint probably does concern a FAPE and IDEA's exhaustion requirements are implicated. Moreover, the Court should look to the history of the proceedings between the parties in order to assess whether FAPE is at issue. *Id.* at 757. The "prior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE, even if the complaint never explicitly uses that term." *Id.*

A similar exhaustion requirement exists for claims under Section 504 and the Americans with Disabilities Act when involving special education students and the services which they receive. *Loch v. Edwardsville School District 7,* 573 F.Supp.2d 1072, 1080 (S.D. Ill. 2008) *affirmed, Loch v. Edwardsville School Dist. 7,* 327 Fed.Appx. 647 (7th Cir. 2009). Whether exhaustion of administrative remedies is required is a question of law for the Court. *McCormick v. Waukegan School District 60,* 374 F.3d 564, 565 (7th Cir. 2004).

### III. Plaintiffs' Claims under Counts One, Two and Three Should be Dismissed for Failure to Exhaust Administrative Remedies.

Count One of the Complaint and each of the Systemic Violations sub-headings No. 1 - 5 expressly addresses violations under the Individuals with Disabilities Education Act (IDEA) that are related to the denial of a Free and Appropriate Public Education (FAPE). On January 5, 2022, three days prior to the filing of this federal cause of action, Plaintiff T.S. filed a Complaint of Due Process with Ottawa School District 140, requesting a hearing with an Impartial Hearing Officer (IHO) through the Illinois State Board of Education (ISBE). (Comp. ¶103; Ex. A) The main relief sought in their due process complaint was a finding that "the District failed to offer T.S. a FAPE for the 2019 – 2020 and 2020 – 2021 extended school years." (See Exhibit A).

6

Given that the Complaint itself clearly references receiving FAPE and because the Plaintiffs are attempting to seek relief through the administrative procedures of ISBE, it is clear that exhaustion of administrative remedies is first required in order to pursue these claims. The claims at issue are unquestionably tied to the educational program and could not have been brought against any other public facility. Moreover, no adult could have pursued these causes of action; only a student. When coupled with the fact that the Plaintiffs are not even seeking damages, it is clear that the underlying allegations all involve FAPE and that the administrative procedures available through ISBE and as provided by IDEA must first be exhausted prior to any proceedings here. Indeed, Plaintiffs admit that they "have initiated, but have not exhausted, the administrative remedies under 20 U.S.C. §1415 (i)(2) because they fall within the exceptions." (Comp. ¶104). While it is not expressly stated which exception the Plaintiffs contend applies, based upon the pleading as a whole, it appears that they are asserting that review is futile based upon a systemic violation of IDEA.

First, the Seventh Circuit has questioned whether this is a legitimate basis to avoid the exhaustion requirements of IDEA. *See Jamie S. v. Milwaukee Public Schools,* 668 F.3d 481, 494, fn. 3, (7th Cir. 2012). Moreover, even under the jurisprudence of the Ninth Circuit for which this argument is based, Plaintiffs fail to meet the criteria to excuse the exhaustion of administrative remedies. "[A] claim is "systemic" if it implicates the integrity or reliability of the IDEA dispute resolution procedures themselves, or requires restructuring the education system itself in order to comply with the dictates of the Act; but that it is not "systemic" if it involves only a substantive claim having to do with limited components of a program, and if the administrative process is capable of correcting the problem." *Doe v. AZ Dept. of Ed.,* 111 F.3d 678, 681 (9th Cir. 1997).

7

The claims being asserted by Ms. Simmons and T.S. are not systemic under this definition and are clearly capable of being corrected by the administrative process. Indeed, they are proceeding in the administrative process which substantially undercuts any argument that it cannot correct the issue. The core issues are: (1) whether proper written notice was provided, (2) whether placement modifications were made and, if so, were they proper, (3) whether IEP meetings were properly commenced and/or reconvened. (Comp. ¶135-161). If there were violations, the Plaintiffs seek reimbursement for expenses and additional costs associated for tutoring, co-pays and tuition. (Comp. ¶161). With respect to T.S. individually, there is no allegation that Ms. Simmons incurred any of these expenses. Most importantly, these types of claims are handled and adjudicated by Hearing Officers appointed by ISBE all the time. There is simply no problem with the resolution procedure or the educational system of District 140 that requires restructuring. For these reasons, Plaintiffs cannot establish that they are entitled to an exception to the exhaustion requirements of IDEA, the Rehabilitation Act or the ADA. As such, since they failed to exhaust administrative remedies and that failure is apparent from the pleadings, this matter should be dismissed as a matter of law.

**IV.    Plaintiffs fail to state a claim for violation of IDEA.**

1.    <u>District 140 was not required by IDEA to Provide Prior Written Notice</u>

20 U.S.C. §1415(c)(1) requires prior written notice "whenever the LEA proposes to change or refuses to change of initiate the identification, evaluation or educational placement of a child, or the provision of a free appropriate public education to the child." Neither the Complaint nor the attachments pertinent to T.S. specifically allege that the District altered the substance of the T.S.'s IEP as written or that he was no longer provided educational services in both the general education curriculum and special education curriculum in accordance with his IEP. It is clear that T.S.'s IEP

did not specify whether the instruction was to occur in-person or not. (See Exhibit 2). Changing the school environment to a remote learning platform did not alter the services to be implemented under student T.S's IEP. There is no specific mention of his services being provided in-person, but rather a distinction between those services being provided through general education curriculum or modified instruction through special education instruction. (See Exhibit 2). Since the services required by the IEP were not changed or modified, then there was no need for prior written notice to the parents.

### 2. District 140 did not change T.S.'s educational placement.

Plaintiff asserts that there was a systematic violation of the IDEA when T.S.'s educational placement was changed without including the parents in this decision. "The term 'educational placement' in the regulations refers only to the general type of educational program in which the child is placed." *T.Y. v. New York City Dep't of Educ.*, 584 F.3d 412, 419 (2nd Cir. 2009). "'Educational placement' refers to the general educational program-such as the classes, individualized attention and additional services a child will receive-rather than the 'bricks and mortar' of the specific school." *Id.* "There is no requirement in the IDEA that the IEP name a specific school location." *Id.* "An IEP's failure to identify a specific school location will not constitute a per se procedural violation of the IDEA." *Id.* at 420. "The mere fact that the ultimate location of the placement is determined by an administrator in a central office does not violate the procedural mandates of IDEA." *Brad K. v. Bd. of Educ. of the City of Chicago,* 787 F.Supp.2d 734, 743–44 (N.D.Ill.2011).

In this case, while Plaintiff alleges that the location of his services changed, he never alleges that the actual program that he was offered changed at all. He does not allege that the accommodations that he previously required regarding testing times were changed nor does he

allege that he was not provided with special education services in conformity with the language of the IEP. Instead, he merely alleges that he received those services in a different location. The failure to allege a modification to the educational program itself dooms his claims.

**V.      Count IV should be dismissed because Plaintiff does not adequately plead a § 1983 equal protection claim.**

In Count IV of the Complaint, T.S. alleges that the District 140 Defendants violated his "rights as guaranteed by the Fourteenth Amendment to the United States Constitution…when they closed their in-person instruction in March of 2020[3]." (Compl. ¶ 194). T.S. further contends that District 140 discriminated against him on account of his status as a disabled individual and special education student. (Compl. ¶¶ 122, 175, 196). Count IV should be dismissed, however, because (a) Plaintiff fails to plead the elements of an equal protection claim, and (b) Plaintiff's claim cannot survive rational basis review.

1.      Plaintiff does not plead the elements of an equal protection claim.

"For an equal-protection claim based on class membership to survive a motion to dismiss, a plaintiff must sufficiently allege that they were (1) treated differently by the government (2) based on membership in a protected class, and (3) that the defendant acted with discriminatory intent." *Doe v. Bd. of Educ. of City of Chi.*, No. 19 C 00263, 2020 WL 1445638, *6 (N.D. Ill. Mar. 24, 2020) (citing *Greer v. Amesqua*, 212 F.3d 358, 370 (7th Cir. 2000). In his Complaint, T.S. does not allege facts sufficient to demonstrate a prima facie claim.

---

[3] Paragraph 194 of the Complaint also references a school closure in January 2022. However, the January 2022 closure only pertains to the CPS Defendants. (Compl. ¶ 74). Plaintiff alleges that District 140 sent a survey to parents on January 5, 2022 asking their opinion on remote versus in-person instruction. (Compl. ¶ 78). Notably, the link to this survey (Compl. ¶ 73, n. 3) reveals that this survey was referring to instruction for the Spring 2021 semester – not spring 2022. District 140 has remained open for full in-person instruction throughout the entire 2021-2022 school year.

First, Plaintiffs fail to demonstrate that T.S. was treated differently by the District 140 defendants based upon his membership in any protected class. Plaintiffs assert that District 140 discriminated against T.S. when it closed for in-person instruction in March 2020. (Compl. ¶¶ 107, 175-76, 189). Specifically, T.S. contends that District 140 discriminated against him by virtue of this closure because he is a special education student who requires in-person services and that he was denied equal access to education, programs, and services as compared to non-disabled peers. (Compl. ¶ 175). Contrary to Plaintiff's framing, however, this is ultimately an allegation that Plaintiff was treated the *same* as his non-disabled peers. On March 13, 2020, Governor Pritzker issued an executive order closing "all public and private schools in Illinois serving pre-kindergarten through 12th grade students." (Comp. ¶ 56; Ex. 5). On March 27, 2020, Governor Pritzker issued Executive Order 2020-15[4] which, *inter alia*, authorized ISBE to issue regulations providing for remote learning.

Following the Governor's orders, District 140 provided remote instruction at the conclusion of the 2019-2020 school year to all students. This was simply because the Governor had closed schools and in-person educational opportunities were not allowed. During the 2020-2021 school year, individual school districts were permitted by the Governor's Order, ISBE guidance and modifications to the Illinois School Code (105 ILCS 5/10-30) to provide for remote or blended learning. There is no allegation that non-disabled students were provided with in-person learning while disabled students were denied the same. This would simply be untrue. Equal

---

[4] The Court may take judicial notice of executive orders as public records not subject to reasonable dispute. *Brady for Smith v. SSC Westchester Operating Co LLC*, 533 F. Supp. 3d 667, 674 (N.D. Ill. 2021). A copy of Executive Order 2020-15 is available at https://www.illinois.gov/government/executive-orders/executive-order.executive-order-number-15.2020.html.

treatment of disabled and non-disabled students cannot reasonably be construed as discriminatory as a matter of law.

Second, nowhere in their 50-page Complaint do Plaintiffs allege that the District acted with a discriminatory intent. Nor can they. By Plaintiffs' own allegations, District 140 entered remote learning after Governor Pritzker closed all Illinois schools for in-person instruction. Consequently, in March 2020, the decision to close District 140 for in-person instruction cannot be attributed to the District. Moreover, even if it could, Plaintiffs do not allege anywhere that the District intended to discriminate against T.S. or other special education students when it provided remote educational services. For these reasons, Plaintiffs fail to state an equal protection claim as a matter of law and Count IV should therefore be dismissed.

2.    <u>Plaintiff's equal protection claim cannot survive rational basis review.</u>

Plaintiff's allegation that District 140 discriminated against him because of his disability cannot survive rational basis review. "Disability is not a 'suspect classification' under the Equal Protection Clause, so a plaintiff alleging an equal-protection violation on the basis of their disability also has to show that the state actor's discrimination was not rationally related to a legitimate state interest." *Doe*, 2020 WL 1445638 at *6, n. 5 (citing *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 366-68 (2001)). "Thus, although disabled individuals receive broader protection under the ADA, the relevant standard of review for a constitutional claim is rational basis review." *A.H. by Holzmueller v. Ill. High Sch. Ass'n*, 263 F. Supp. 705, 728 (N.D. Ill. 2017). "There is a rational basis for an action if there is any reasonably conceivable state of facts that could provide a rational basis." *Id.* (citations and quotations omitted). Indeed, "under rational-basis review, the challenger must negative every conceivable basis that might support the challenged law, and it is entirely irrelevant whether the conceived reason for the challenged distinction

12

actually motivated the policy maker." *Id.* (quoting *Monarch Beverage Co., Inc.*, 861 F. 3d 678, 681 (7th Cir. 2017) (citations and internal quotation marks omitted)). "A rational basis may be based on rational speculation unsupported by evidence or empirical data." *Id.* (citations and quotations omitted).

To get past a Rule 12(b)(6) motion to dismiss on an equal protection claim, a plaintiff must allege facts sufficient to overcome the presumption of rationality that applies to government classifications. *Flying J. Inc. v. City of New Haven,* 549 F.3d 538, 546 (7th Cir. 2008). "[T]he test for rationality does not ask whether the benign justification was the *actual* justification. All it takes to defeat the plaintiffs' claim is a *conceivable* rational basis for the difference in treatment." *Id.* Thus, the plaintiff bears a heavy burden because any hypothetical rational basis dooms a plaintiff's equal protection claim. *Id.* at 686-87.

The allegations of the Complaint make clear that District 140 began remote learning when all Illinois schools were closed as a result of the COVID-19 pandemic due to an order of the Governor. It cannot seriously be questioned that following the Executive Order of the Governor and taking steps to guard against the spread of an unknown infectious disease causing a global pandemic was rational. The fact that District 140 attempted to mitigate the spread of COVID-19 based upon the Executive Orders of the Governor, guidance from the Illinois Department of Public Health (IDPH) and guidance from the Illinois State Board of Education (ISBE) is clearly rational. Consequently, even assuming, *arguendo*, that District 140 somehow discriminated against Plaintiff by providing him with educational services in a remote setting like all other students, it had a rational basis for doing so and Plaintiff's equal protection claim should therefore be dismissed.

**VI.    Plaintiff's Substantive Due Process claim fails as a matter of law.**

Plaintiff does not, and cannot, state a claim for substantive due process against the District 140 defendants. "The nub of a substantive due process claim is that some things the state just cannot do, no matter how much process it provides." *Miller v. Henman*, 804 F.2d 421, 427 (7th Cir. 1986). However, "the scope of substantive due process is very limited." *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005). The Supreme Court has "made it clear that the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with statue authority causes harm." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 848 (1998). Rather, "the essence of due process is the 'protection of the individual against arbitrary action of government.'" *Tun*, 398 F.3d at 902 (quoting *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974)). "Substantive due process involves the exercise of governmental power without reasonable justification." *Id*.

"The criteria that govern what is fatally arbitrary" in substantive due process cases "depend upon whether legislation or a specific act of a governmental officer is at issue." *Dunn v. Fairfield Cmty.*, 158 F.3d 962, 965 (7th Cir. 1998). It is not entirely clear from the face of the Complaint whether Plaintiff's substantive due process claim is premised on an executive action or a policy that violates a purported fundamental right or liberty. The opaqueness of Plaintiff's claim ultimately does not matter, however, as Plaintiff does not sufficiently allege a cause of action under either theory.

1.    Defendants' conduct does not "shock the conscience"

In cases dealing with executive action, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Lewis*, 523 U.S. at 846 (citations and quotations

14

omitted). Accordingly, the Supreme Court has consistently held that "the cognizable level of executive abuse of power" is that which "shocks the conscience." *Id.* In addition to showing this high level of arbitrariness, the Plaintiff must also establish that the official conduct is "unjustifiable by *any* governmental interest". *Remer v. Burlington Area School Dist.,* 286 F.3d 1007, 1013 (7th Cir. 2002).

In *Lewis*, a 16-year old boy was killed by a police officer during a high speed chase. 523 U.S. at 837. During the chase, the boy's motorcycle and the patrol car both reached speeds over 100 miles per hour through a residential neighborhood. *Id.* The chase ended when the motorcycle tipped over, at which point the patrol car was unable to stop, hit the boy, and propelled him 70 feet down the road, causing massive injuries and his death. *Id.* The boy's parents subsequently filed a substantive due process claim against the defendant police officer. *Id.* at 837-38. The parents asserted that the officer's actions "were an abuse of executive power so clearly unjustified by any legitimate objective of law enforcement as to be barred by the Fourteenth Amendment." *Id.* at 840. The Court rejected the plaintiffs' assertion, finding in favor of the defendant. *Id.* at 855. In so doing, the Court stated that "conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level." *Id.* at 848.

In *Dunn*, two students filed substantive due process claims when, as punishment for violating school policy during a band concert, the principal removed them from band class for the remainder of the school year, causing them to fail the class. 158 F.3d at 962. In rejecting the students' claim, the Seventh Circuit cited to *Lewis*, stating:

> "One is tempted to say that if a police officer's "precipitate recklessness," which caused the deprivation of someone's life, was not sufficiently shocking to satisfy substantive due

15

> process standards, then it would be nearly absurd to say that a school principal's decision effectively to give two students at "F" in Band class did."

*Id.* at 965. Accordingly, the Seventh Circuit affirmed the dismissal of the plaintiffs' substantive due process claim.

In this case, Plaintiffs allege that T.S.'s substantive due process rights were violated when the District closed for in-person instruction in March 2020 because of the COVID-19 pandemic. This falls woefully short of the "shocks the conscience" standard that has been set forth by the Supreme Court. Not only does the alleged violation here pale in comparison to the loss of life at issue in *Lewis*, it falls short of the deprivation which occurred in *Dunn*. There two students were removed from class entirely, causing them to fail, because they performed a guitar solo at a basketball game without district approval in technical violation of a school rule. *Dunn*, 158 F.3d at 962. The Seventh Circuit found that the requisite level of shock was not reached despite the severity of the punishment coupled with how benign the underlying conduct was.

In this case, the educational services for T.S. were moved to a remote setting at the end of the 2019-2020 school year. Far from being arbitrary, District 140 was implementing an Executive Order issued by the Governor. That order, of course, was entered to protect people from the spread of a contagious disease causing a global pandemic. These orders have been upheld by several courts within this District with one finding the orders to serve a "compelling state interest". *Village of Orland Park v. Pritzker,* 475 F.Supp.3d 866, 885 (N.D. Ill. 2020). Taking steps to ameliorate the spread of a contagious disease hardly "shocks the conscience" and cannot demonstrate a substantive due process claim as a matter of law. Accordingly, Count V should be dismissed.

2.      Defendants did not violate a fundamental right.

For legislative violations of substantive due process claims, the first inquiry is whether there is "governmental interference with certain fundamental rights and liberty interests[.]" *Dunn*, 158 F.3d at 966. If the legislative action does not implicate a fundamental right or liberty interest, it is subject to review under a highly deferential rational basis review. *Id.* The Seventh Circuit has stated that liability exists only when the action is "utterly lacking in rational justification." *Brown v. City of Michigan City, Ind.,* 462 F.3d 720, 733 (7th Cir. 2006).

Here, the decisions about the manner and mechanism of providing educational services does not implicate a fundamental right. "Although students may have some substantive due process rights while they are in school, education itself is not a fundamental right." *Dunn*, 158 F.3d at 966 (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1 (1973).

Since there is no fundamental right at issue, the decision to provide educational services remotely cannot violate substantive due process rights unless it is wholly lacking in rational justification. For all the reasons already set forth herein, these decisions were not wholly lacking in rational justification and, as such, Plaintiffs claims fail as a matter of law and Count V should be dismissed.

**VII.  Plaintiffs cannot state a private cause of action against District 140 under 23 Ill. Admin. Code § 226.710 or 105 ILCS 14/8.02 *et seq*.**

In Count VI of the Complaint, Plaintiffs allege that the IDEA is codified under Illinois law through 23 Ill. Admin Code § 226.710. (Compl. ¶ 207). They further contend that, under 105 ILCS 5/14-8.02, ISBE is required to "make rules under which local school board shall determine the eligibility of children to receive special education" and which "ensure that a free appropriate public education be available to all children with disabilities as defined in § 14-1.02." (Compl. ¶ 209).

17

Against this backdrop, Plaintiff asserts that: (1) "ISBE failed to ensure that each LEA in Illinois including [District 140] failed to take steps that provide children with disabilities have access to the same educational opportunities as their non-disabled peers"; (2) "ISBE failed to provide FAPE from March 2020 to June 2020 where all in person services as prescribed by each student's IEP ceased; and (3) ISBE has denied Plaintiffs and those similarly situated a FAPE as a result of the closure initiated as of January 3, 2022 by closing in-person learning and services, and requiring *all* students to learn via a remote online learning platform, without a foreseeable end in sight." (Compl. ¶¶ 208, 210-11). Although not entirely clear, based on these allegations it appears that Count VI is directed only at ISBE – not at the District 140 Defendants. To the extent Count VI is directed at the District 140 Defendants, however, it fails because Plaintiff does not have a private cause of action under the cited regulatory and statutory sections. As such, Count VI should be dismissed.

Neither 23 Ill. Admin Code § 226.710 nor 105 ILCS 5/14-8.02 *et seq*. provide Plaintiff with a private cause of action. The Illinois Supreme Court has, however, "delineated four factors to be considered in determining if a private right of action may be implied from a statute." *Fisher v. Lexington Health Care, Inc.*, 188 Ill. 2d 455, 460 (1999). Specifically, it has stated that:

> implication of a private right of action is appropriate if: (1) the plaintiff is a member of the class for whose benefit the statute was enacted; (2) the plaintiff's injury is one the statute was designed to prevent; (3) a private right of action is consistent with the underlying purpose of the statute; and (4) implying a private right of action is necessary to provide an adequate remedy for violations of the statute.

*Id*. Article 14 of the Illinois School Code and Part 226 of ISBE's regulations both provide that administrative proceedings are the proper vehicle for Plaintiff to assert and protect his rights. As such, Plaintiff cannot establish that implying a private right of action is necessary to provide an

18

adequate remedy for violation of the cited regulation and statutes. There is already an underlying procedure set forth within the statutes which would be wholly undermined if a cause of action were implied. In addition, the implication of a private cause of action is not necessary to implement the statutes in question; these statutes already provide for a mechanism to obtain relief administratively.

Article 14 of the Illinois School Code and Part 226 of the ISBE's regulations provide for two different types of administrative proceedings which are available to students and families. First, students and families can seek an administrative "due process hearing" before a "due process hearing officer" appointed by ISBE. 105 ILCS 5/14-8.02a; 23 Ill. Admin. Code. § 226.600 *et seq*. Section 14-8.02a further provides that "any party to an impartial due process hearing aggrieved by the final written decision of the impartial due process hearing officer shall have the right to commence a civil action with respect to the issues presented in the impartial due process hearing." 105 ILCS 5/14-8.02a(i). As set forth above, Plaintiff has initiated, but not exhausted, the administrative due process procedure. As such, he does not yet have a right to pursue a cause of action under Section 14-8.02 at this time.

In addition, Article 14 and Part 226 both provide for "state complaint procedures." 105 ILCS 5/14-8.02e; 23 Ill. Admin. Code § 226.570. This procedure permits "a parent, individual, or organization" to "file a signed, written complaint with the State Board of Education alleging that a local school district…has violated the rights of one or more children with disabilities." 23 Ill. Admin. Code § 226.570(a). Again, this section contemplates an administrative proceeding and does provide for a private cause of action.

Except for a judicial action filed upon the exhaustion of administrative due process proceedings, Article 14 and Part 226 do not provide students and families with a private cause of

action. Their interests are protected, however, by the availability of two separate administrative proceedings. As such, a private judicial cause of action is not "necessary" to protecting Plaintiff's rights under Article 14 of the School Code or Party 226 of ISBE's regulations. Therefore, based on the factors set forth by the Illinois Supreme Court, a private right of action cannot be implied. Count VI should therefore be dismissed insofar as it pertains to the District 140 Defendants.

## VIII.   Plaintiff's fail to state a RICO cause of action.

In order to state a viable cause of action under §1962(c), a plaintiff must allege "'(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985). Allegations of fraud are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b) which requires a plaintiff to plead "all averments of fraud ... with particularity." Fed.R.Civ.Pro. 9(b). Rule 9(b) is applicable to allegations of fraud in a civil RICO complaint. *See Vicom, Inc. v. Harbridge Merchant Servs., Inc.,* 20 F.3d 771, 777 (7th Cir. 1994). Accordingly, a RICO plaintiff "must, at a minimum, describe the predicate acts [of fraud] with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud." *Midwest Grinding Co. v. Spitz,* 976 F.2d 1016, 1020 (7th Cir. 1992). Moreover, in a multiple defendant case, Rule 9(b) requires a RICO plaintiff to plead sufficient facts to notify each defendant of his alleged participation in the scheme. *See Vicom,* 20 F.3d at 778. That is, there must be a showing that each Defendant joined an agreement to participate in "an endeavor which, if completed, would satisfy all of the elements" of a substantive violation of RICO. *Brouwer v. Raffensperger, Hughes & Co.,* 199 F.3d 961, 964 (7th Cir. 2000). Lastly, a plaintiff's right to sue under RICO in a private cause of action is limited to those situations where the plaintiff can establish that "the defendant's violation not only was a 'but for' cause of

his injury, but was the proximate cause as well." *Holmes v. Securities Investor Protection Corp.,* 503 U.S. 258, 268 (1992).

1.     <u>Plaintiffs fail to allege sufficient facts to demonstrate that District 140 was aware of any fraudulent scheme or that anyone engaged in a fraudulent act.</u>

The Complaint is absolutely devoid of any allegation that District 140 was aware of any scheme by ISBE to defraud the United States Department of Education. There are also no facts to suggest that District 140 was engaged in any agreement or scheme with CPS or Ronald Amundsen High School. The Plaintiff pleads absolutely no facts to establish an actionable conspiracy or agreement.

Moreover, the alleged predicate acts of fraud as made against ISBE and District 140 fail to state a claim anyways. The alleged fraudulent misrepresentation is that ISBE assured the Department of Education that "children with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §300.400 through 300.536 and in accordance with 20 U.S.C. §1412(a)(6)." (Comp. ¶227). The State of Illinois *does* provide the procedural safeguards required by the federal regulation and these safeguards are set forth in the Illinois School Code and regulations of the ISBE which were in effect at the time of the alleged representations. *See* 105 ILCS 5/14-1 *et seq.*; 23 Ill.Admin.Code Part 226. The same would apply to the alleged representation of Dr. Cushing regarding availability of procedures. (Comp. ¶268-272). Since the procedures clearly existed under Illinois law, any representation that the procedural safeguards required by IDEA were in place was necessarily true. Absent a fraudulent act, Plaintiffs RICO claims are obviously deficient.

2.     Plaintiffs fail to establish that any RICO violation was the but for and proximate cause of any injury suffered.

Count VII should also be dismissed because Plaintiffs' purported injuries are not related to, much less caused by, the mail and wire fraud allegedly committed by the District 140 Defendants. RICO provides a cause of action to "any person injured in his business or property *by reason of* a violation of section 1962 of this chapter." 18 U.S.C. § 1964(c) (emphasis added). Section 1962, in turn, provides that "it shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity[.]" 18 U.S.C. § 1962(c). Mail and wire fraud are both predicate offenses which constitute "racketeering activity" under RICO. 18 U.S.C. § 1961(1). As described below, the alleged wire and mail fraud at issue has no relationship to Plaintiffs' alleged injury. Plaintiffs therefore fail to adequately allege a RICO claim and Count VII should be dismissed.

In *Hemi Group, LLC v. City of New York, N.Y.*, 559 U.S. 1 (2010), the Supreme Court described the level of causation necessary to support a RICO claim premised on a purported violation of Section 1962(c). At issue in that case were various laws relating to cigarette taxes and cigarette sale reporting requirements for out-of-state retailers. *Id.* at 5-6. Under New York City ordinances, in-state cigarette vendors were obligated to charge, collect, and remit the tax to the city. *Id.* at 5. In contrast, "the City [was] responsible for recovering, directly from the customers, use taxes on cigarettes sold outside New York." *Id.* A federal law, out-of-state cigarette sellers are required file a report with the state "listing the name, address, and quantity of cigarettes purchased by state residents." *Id.* To help the New York City identify residents who purchased cigarettes from out of state vendors, and consequently to collect the tax from those consumers, the State

agreed to provide the City with information from the reports filed by out-of-state vendors. *Id*. at 5-6.

Hemi Group was an out-of-state cigarette vendor who did not file its reports with New York State. *Id*. at 6. Consequently, the City was not able to identify persons who purchased cigarettes from Hemi Group, and could not collect taxes from them. *Id*. The City filed a RICO suit against Hemi Group, alleging that it was injured by Hemi Group's failure to file the report with New York State. *Id*. The Court dismissed the City's claim. *Id*. at 5.

In reaching this decision, the Court focused on RICO's requirement that a plaintiff's injury be caused "by reason of" the alleged RICO violation. *Id*. at 4-5. As explained by the Court, "to state a claim under civil RICO, the plaintiff is required to show that a RICO predicate offense no only was a 'but for' cause of his injury, but was the proximate cause as well." *Id*. at 9 (citations and quotations omitted). For RICO purposes, proximate cause "requires some direct relation between the injury asserted and the injurious conduct alleged. A link that is to remote, purely contingent, or indirect is insufficient." *Id*. (citations and quotations omitted). The Court determined that the City's injury (missing tax revenue) was not proximately caused by Hemi Group's conduct (failing to file a report with New York State). Rather, the City's injury was caused by the customers who failed to pay their taxes when they purchased cigarettes from an out-of-state vendor. *Id*. at 11. Consequently, the RICO claim failed and was dismissed.

Here, Plaintiffs' alleged injury is that he was "deprived of [his] rights under IDEA." (Compl. ¶ 283). Plaintiffs further contend that this injury was caused by the District 140 Defendants' "predicate acts." (*Id*.) Specifically, Plaintiffs contends that the District 140 Defendants engaged in mail and/or wire fraud by submitting various false reports to ISBE, who in turn submitted false reports to the U.S. Department of Education, concerning the District's special

education procedures and services in order to obtain special education funding. (*See e.g.* Compl. ¶¶ 229-31, 236-39, 244-46, 267-75).

Plaintiffs' claims necessarily fails, however, because the purported mail and wire fraud cannot be construed as a "but for" cause, much less a proximate cause, of any alleged injury. Plaintiffs' entire Complaint is premised on the idea that District 140 failed to provide T.S. with a free and appropriate public education in accordance with his IEP and applicable law. The provision of special education services is entirely distinct from the steps taken by District 140 to receive funding for those services. The alleged injury is the failure to provide educational services in a proper manner and the failure to comply with procedural requirements of the IDEA. It is completely divorced from the acts of District 140 which were undertaken in order to obtain funding. Whether District 140 received or did not receive federal funding would not change the underlying alleged violations regarding the implementation of IDEA relative to T.S. Simply put, the steps taken by District 140 to receive special education funding have no bearing on whether District 140 actually provided appropriate special education services. As such, the predicate acts alleged in the Complaint cannot reasonably be construed as the but for or a proximate cause of Plaintiffs' injury and Count VII should therefore be dismissed as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendants, the Board of Education of Ottawa Township High School #140 and Michael Cushing, ask this Court to dismiss Plaintiff's Complaint in it entirety, with prejudice, as it pertains to them, and to grant such other relief as the Court deems just and fair.

Respectfully submitted,

BOARD OF EDUCATION OF OTTAWA
TOWNSHIP HIGH SCHOOL DISTRICT
140 and DR. MICHAEL CUSHING


By:   /s/ Eric B. Bernard
       ERIC B. BERNARD
       One of Its Attorneys

WILLIAM F. GLEASON
ERIC B. BERNARD
PETRARCA, GLEASON, BOYLE & IZZO, LLC
19730 Governors Highway, Suite 10
Flossmoor, IL 60422
(708)799-6766
wgleason@hauserizzo.com
ebernard@hauserizzo.com

25