UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| CHRISTINE SIMMONS, et al., <br><br> Plaintiffs, <br><br> v. <br><br> JAY ROBERT PRITZKER, in his official capacity, et al., <br><br> Defendants. | No. 22 CV 0123 <br><br> Judge Manish S. Shah |

MEMORANDUM OPINION AND ORDER

Plaintiffs Christine Simmons and Hsinyi Liu filed suit on behalf of themselves, their children, and all others similarly situated. They allege that the state of Illinois, the City of Chicago School District 299, and Ottawa Township High School #140, among others, violated students' rights by failing to comply with the Individuals with Disabilities in Education Act, the Americans with Disabilities Act, the Rehabilitation Act, the Fourteenth Amendment's Equal Protection and Due Process Clauses, and Illinois law. They also allege violations of the Racketeer Influenced and Corrupt Organizations Act. Defendants move to dismiss the complaint.

I. **Legal Standard**

A complaint must contain "a short and plain statement" showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009). To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must allege facts that "raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). At this stage, I accept all factual allegations in

the complaint as true and draw all reasonable inferences in the plaintiffs' favor, disregarding legal conclusions or "threadbare recitals" supported by only "conclusory statements." *See Iqbal*, 556 U.S. at 678.

In cases where a party alleges fraud, as plaintiffs do here with their RICO claims, the complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Intent can be alleged generally, though. *Id.* "Fraud is a serious matter" and Rule 9 "represents a policy decision to protect potential fraud defendants from litigation based on nothing but…speculation." *United States v. Molina Healthcare of Ill., Inc.*, 17 F.4th 732, 740 (7th Cir. 2021). The rule is designed to discourage a "sue first, ask questions later" approach. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011). Particularity requires alleging the "who, what, when, where, and how" of an alleged fraud—"the first paragraph of any newspaper story." *Pirelli*, 631 F.3d at 441–42 (quoting *United States ex rel. Lusby v. Rolls-Royce Corp.*, 570 F.3d 849, 853 (7th Cir. 2009)); *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990)).

## II. Facts

On March 13, 2020, at the beginning of the COVID-19 pandemic, Illinois Governor J.B. Pritzker issued an executive order instructing all public and private schools serving pre-kindergarten through 12th grade students to close through March 30, 2020. [1] ¶ 56; Exec. Order 2020-05 § 1. The order suspended a state law that requires school districts to receive approval before implementing virtual learning, and to hold a public hearing and communicate to teachers, students, and staff thirty days before moving to virtual learning. [1] ¶¶ 57–58; Exec. Order 2020-05 § 3.

Plaintiffs B.W. and T.S. are both children with disabilities whose schools shut down in March 2020. [1] ¶¶ 17–28. B.W., who was 15 in March 2020, has Down Syndrome and cognitive delays. [1] ¶¶ 17–18. He was a student in the Chicago Public Schools during the 2019–2020, 2020–2021, and 2021–2022 school years. [1] ¶ 22. His mother is plaintiff Hsinyi Liu. [1] ¶ 19. B.W.s' 2019–2020 Individualized Education Plan included instruction in non-academic independent functioning, occupational therapy, vision services, and speech pathology. [1] ¶ 86. Those services could be provided by a special education teacher or a paraprofessional. [1] ¶ 86. From March 16, 2020, through April 2020, B.W. received at-home instruction. [1] ¶ 87. From April 2020 to June 2020, he mostly received at-home instruction. [1] ¶ 87. But every other week, for half a day, he attended school in person. [1] ¶ 87.

T.S., who was 16 in March 2020, has a general learning disability and cognitive impairment. [1] ¶¶ 23–24. He was a student in the Ottawa Public School District during the relevant school years. [1] ¶ 28. His mother is plaintiff Christine Simmons. [1] ¶ 25. T.S.'s IEP requires him to have extended time on tests, be allowed to take those tests in alternate settings, and receive accommodations for classroom assessments. [1] ¶ 97. His IEP also requires a health class about personal hygiene, nutrition, and other life skills. [1] ¶ 98. From March 16, 2020, through August 2020, his instruction was entirely virtual. [1] ¶¶ 99, 101. From fall 2020 to the end of the 2020–2021 school year, he received half-a-day of in-person instruction daily. [1] ¶ 101.

The school-shutdown order lasted until the end of the 2019-2020 school year. *See* Exec. Orders 2020-05, 2020-06, 2020-33, 2020-39. On June 4, 2020, the governor

issued an order allowing schools to "transition to limited in-person instruction" after the end of the school year, as long as they complied with certain public-health measures. [1] ¶ 63; Exec. Order 2020-40.

Plaintiffs allege that defendants committed multiple violations of the IDEA. They say defendants changed plaintiffs' educational placements without offering prior notice and reconvening IEP meetings. [1] ¶¶ 88, 100, 135–41, 154–57. They say defendants didn't comply with the IDEA's "stay-put provision," which requires schools to keep children with disabilities in their current educational placements while administrative or judicial due-process proceedings are pending. [1] ¶¶ 142–53. And they say defendants failed to reimburse them for the out-of-pocket expenses they spent on their children to make up for the schools' failures. [1] ¶ 161.

Plaintiffs say defendants violated the ADA and Rehabilitation Act by denying them equal access to educational services and programs compared to their non-disabled peers. [1] ¶¶ 175–76, 189. Plaintiffs also claim defendants violated their Fourteenth Amendment equal-protection rights by taking actions that disparately impacted students with disabilities, [1] ¶ 196, and violated plaintiffs' Fourteenth Amendment substantive-due-process rights by ending in-person instruction, [1] ¶ 203. Plaintiffs also claim that defendants violated Illinois law governing special education and a free appropriate public education. [1] ¶¶ 208–11 (alleging violations of 105 ILCS/14/8.02 and 23 Ill. Admin. Code § 226.710). Finally, plaintiffs claim that defendants violated RICO by committing mail and wire fraud in their applications for IDEA funding. [1] ¶¶ 213–16, 219–84.

Plaintiffs ask for injunctive and retrospective relief. They ask that I certify the purported class, [1] at 47, and enjoin defendants "and other similarly situated [local educational agencies]" from violating the IDEA, including unilaterally changing plaintiffs' educational placement for more than ten cumulative days in the event of any school closures. [1] ¶ 120(1)–(4), (6). They ask that I enjoin defendants from violating the ADA, the Rehabilitation Act, the Fourteenth Amendment, and state law. [1] ¶ 120(6). They also ask that I appoint a special monitor to figure out how much purported class members regressed as a result of the changes in their educational placements, to reconvene IEP meetings, and to make recommendations to me about compensatory education or pendency payments for purported class members. [1] ¶ 120(5). But they also specify what that compensatory education should be: an additional year of education, or more, for each year that plaintiffs received remote or hybrid education. [1] at 49. Finally, they ask that I appoint a special monitor to ensure that defendants don't violate RICO. [1] ¶ 120(7).

### III. Analysis

#### A. Mootness

The Constitution limits federal jurisdiction to cases and controversies. U.S. Const. art. III, § 2. "[A]n actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *N.J. by Jacob v. Sonnabend*, 37 F.4th 412, 421 (7th Cir. 2022) (citation and quotations omitted). When a court "can no longer affect the rights of litigants in the case," the case becomes moot and the court lacks jurisdiction. *Evers v. Astrue*, 536 F.3d 651, 662 (7th Cir. 2008) (citation and quotations omitted). The defendant bears the burden of establishing

5

mootness. *See Freedom from Religion Found., Inc. v. Concord Cmty. Schs.*, 885 F.3d 1038, 1051 (7th Cir. 2018).

The state defendants say plaintiffs' request for injunctive relief is moot because the state shutdown order was issued more than two years ago, is no longer in effect, and no similar order has been issued since. [29] at 4–7. Plaintiffs respond that although schools have since reopened, the state retains the ability to impose another shutdown. [43] at 13, 16. For that reason, they say, their requested injunctive relief (ordering schools to provide prior written notice of any changes in educational placement, keep children in their then-current educational placements during the pendency of administrative hearings, hold IEP meetings before changing educational placements, and ensure that disabled and abled students are treated equally, *see* [1] ¶¶ 135–61) isn't moot. [43] at 16–17.

It is true that a defendant's voluntary cessation of a challenged practice doesn't automatically render a case moot. *See City of Mesquite v. Aladdin's Castle*, 455 U.S. 283, 289 (1982); *Freedom from Religion Found., Inc.*, 885 F.3d at 1051. But "[w]hen the defendants are public officials…we place greater stock in their acts of self-correction [of the allegedly illegal conduct], so long as they appear genuine." *Speech First, Inc. v. Killeen*, 968 F.3d 628, 645 (7th Cir. 2020) (citation and quotations omitted). Unless there is "evidence creating a reasonable expectation that the [government officials] will reenact the [policy] or one substantially similar," a complete repeal of a challenged policy renders a case moot. *Id.* (citation and quotations omitted).

6

That is the case here. The governor's June 2020 executive order allowing schools to reopen repealed his earlier orders shutting schools down. [1] ¶ 63; Exec. Order 2020-40. And the state hasn't issued a shutdown order in the two years since then.[1] Based on these facts, there is no reasonable expectation that the governor will reissue a shutdown order. That's especially true given that, during that time, two new variants emerged and the country experienced surges of the virus. *See Hawse v. Page*, 7 F.4th 685, 693 (8th Cir. 2021); *Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 11–12 (1st Cir. 2021); *Eden, LLC v. Justice*, 36 F.4th 166, 171 (4th Cir. 2022) (states' decisions not to bring back certain COVID policies during pandemic surges, including Delta and Omicron surges, are strong evidence that those policies aren't likely to be brought back at all, mooting the case). Nor is there any evidence that the non-state defendants can be reasonably expected to shut down schools; the Chicago Public Schools have held full-time, in-person instruction since the 2020–2021 school year started, *see* [1] ¶ 87,[2] and Ottawa Township High School #140 seems to have held full-time, in-person instruction since at least the beginning of the 2021–2022 school year. *See* [1] ¶ 102. Plaintiffs' requests for injunctive relief are therefore moot.

---

[1] Plaintiffs note that schools were shut down in January 2022 as well. [43] at 21. But that's only true of the City of Chicago School District, which shut down in-person instruction because of a teachers' union walkout. [1] ¶¶ 73–77 (citing Dana Goldstein, *Omicron Upends Return to School in the U.S.*, N.Y. Times (Jan. 4, 2022), https://www.nytimes.com/live/2022/01/03/us/school-closings-covid). The state was not responsible for that shutdown. Nor was the district, which had little choice but to keep students away from schools with no teachers.

[2] In their complaint, plaintiffs say that "the school district[']s failure to provide B.W. with in-person services during the 2019–2020 and 2020–2021 school year[s] denied B.W. [a free appropriate public education] by the school district." [1] ¶ 89. But plaintiffs only claim that B.W. received at-home instruction or hybrid instruction from March 2020 to June 2020, [1] ¶ 87, and don't allege that B.W. received any such instruction in the 2020–2021 school year.

B.     State Sovereign Immunity

The state defendants say Governor Pritzker and State Superintendent Ayala are immune from plaintiffs' state-law claims for injunctive relief. [29] at 13–14; [48] at 11–12. Plaintiffs counter that sovereign immunity doesn't bar federal courts from enjoining state officers, and that the state waived sovereign immunity by accepting IDEA funds. [43] at 23–25. All of plaintiffs' claims for injunctive relief—including their state-law claims—are moot under the federal constitution, as I explain above. But even if they weren't, plaintiffs could not get around sovereign immunity. It's true that sovereign immunity doesn't bar federal courts from enjoining state officers from violating federal law. *See Ex parte Young*, 209 U.S. 123 (1908). But federal courts can't enjoin state officers from violating state law. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984). Pritzker and Ayala are therefore immune from the state-law injunctive-relief claims. It doesn't matter that the state "waived [its] right to sovereign immunity in exchange for IDEA Part B funds," in plaintiffs' words. [43] at 25. By accepting IDEA funds, the state waived its sovereign immunity only as to IDEA suits—not state-law suits. 20 U.S.C. § 1403; 34 C.F.R. § 300.177(a)(1).

In their complaint, plaintiffs also sue Pritzker and Ayala in their official capacities for nominal damages under RICO. [1] at 49. The state defendants counter that they are immune from official-capacity suits for monetary damages under the Eleventh Amendment. [29] at 9–10. In response, plaintiffs change course and say in a single sentence at the end of their reply brief that they "do not seek money damages that would trigger Eleventh Amendment protections." [43] at 26. Nominal damages, like punitive or compensatory damages, trigger state sovereign immunity because

8

they come out of the state treasury and are not ancillary to an award for injunctive relief. *See Edelman v. Jordan*, 415 U.S. 651, 666–68 (1974); *Kentucky v. Graham*, 473 U.S. 159, n.18 (1985). Any nominal-damages RICO claim plaintiffs may be bringing against Ayala and Pritzker in their official capacities is therefore dismissed.

## C. Administrative Exhaustion

Plaintiffs' requests for nominal, compensatory, and punitive damages under the IDEA, ADA, Rehabilitation Act, and Fourteenth Amendment are not moot, but they are all subject to administrative-exhaustion requirements. Plaintiffs haven't exhausted the administrative process for any of these claims.

### 1. *Individuals with Disabilities Act Claims*

Generally, an IDEA plaintiff must exhaust her administrative remedies before filing suit. *See* 20 U.S.C. § 1415(i)(2)(A); *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 494 (7th Cir. 2012). But exhaustion isn't required when the plaintiff isn't bringing a so-called "FAPE" (free appropriate public education) claim. *Fry v. Napoleon Cmty. Schs.*, 137 S. Ct. 743, 750 (2017). The Chicago and Ottawa defendants spend parts of their briefs explaining why plaintiffs' claims are FAPE claims (i.e., why plaintiffs must first exhaust), [30] at 17–18; [31] at 12, but plaintiffs don't appear to contest this. And in any event, the claims at issue are undoubtedly FAPE claims. Plaintiffs couldn't have brought "essentially the same claim[s]" had the conduct occurred at a public facility that wasn't a school, and only a child at the school—not an adult—could bring this sort of claim. *Fry*, 137 S. Ct. at 756 (two-part test to determine whether a claim is a FAPE claim).

9

Plaintiffs say they're excused from exhaustion because the alleged IDEA violations are systemic, administrative relief would be inadequate, and going through the administrative process would be futile. [41] at 15–17 ("Exhaustion of administrative remedies under the IDEA is unnecessary if: (1) it would be futile to resort to the IDEA's due process procedures; (2) an agency has adopted a policy or pursued a practice of general applicability that is contrary to the law; or (3) it is improbable that adequate relief can be obtained by pursuing administrative remedies.").

They cite cases from the Second, Ninth, and Tenth Circuits, as well as from various district courts, that delineate these exceptions, *see, e.g.*, *Handberry v. Thompson*, 446 F.3d 335 (2d Cir. 2006); *Doe by and through Brockhuis v. Arizona Dep't of Educ.*, 111 F.3d 678 (9th Cir. 1997); *Ellenberg v. New Mexico Mil. Inst.*, 478 F.3d 1262 (10th Cir. 2007), [41] at 15, 16, but all of these exceptions are just different ways of framing the futility exception that the Supreme Court recognized in *Honig v. Doe*, 484 U.S. 305, 327 (1988). They boil down to the same idea: pursuing administrative remedies is futile when the administrative officer can't order the changes necessary to ensure a free appropriate public education.[3]

---

[3] To the extent that these exceptions differ, the one that plaintiffs hang their hat on—the "systemic violation" exception—"is something of an enigma," *Martinez v. Newsom*, 46 F. 4th 965, 974 (9th Cir. 2022), and hasn't been recognized by the Seventh Circuit. Though at least three circuits recognize a systemic-violation or general-applicability exception, of those, only the Second Circuit has ever found one in practice. *Compare J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 113–15 (2d Cir. 2004) (citing other Second Circuit cases), *with Martinez*, 46 F. 4th at 974 ("[N]o published opinion in this circuit has ever found that a challenge was 'systemic' and exhaustion not required.") (quoting *Student A ex rel. Parent A v. S.F. Unified Sch. Dist.*, 9 F.4th 1079, 1084 (9th Cir. 2021)); *McQueen ex rel. McQueen v. Colo. Springs Sch.*

10

Plaintiffs say exhaustion is futile because, if they're required to exhaust their own claims, the administrative officer wouldn't be able to provide relief to the needs of every student and parent in the purported class. [41] at 16–17 & n.8. But plaintiffs can't side-step exhaustion requirements just by bringing their case as a class action. "[A] policy or practice is not necessarily systemic or of general applicability simply because…the complaint is structured as a class action seeking injunctive relief." *Martinez*, 46 F.4th at 974 (citation and quotations omitted). Plaintiffs haven't offered evidence that an administrative officer would be incapable of granting them the compensatory relief they request. Without that, they haven't shown that exhaustion is futile.

### 2. *Rehabilitation Act, Americans with Disabilities Act, and Fourteenth Amendment Claims*

Plaintiffs seeking a free appropriate public education under the ADA, Rehabilitation Act, or similar laws must first exhaust the IDEA's administrative procedures. *Fry*, 137 S. Ct. at 752. Plaintiffs don't contest that they are seeking a free appropriate public education. Their claims under the ADA, Rehabilitation Act, and Fourteenth Amendment are therefore dismissed for failure to exhaust.

### D. Racketeer Influenced and Corrupt Organizations Act

Plaintiffs allege that defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c), by "us[ing] their respective enterprises to defraud [p]laintiffs" (the beneficiaries of IDEA funding) and "making

---

*Dist. No. 11*, 488 F.3d 868, n.1 (10th Cir. 2007) ("[W]e have never excused a party's failure to exhaust its IDEA administrative remedies under the general-applicability exception.").

11

false assurances" to the Department of Education that defendants were complying with the IDEA. [1] ¶ 213. To state a claim for relief under Section 1962(c), plaintiffs must allege 1) conduct 2) of an enterprise 3) through a pattern of racketeering activity. *DeGuellege v. Camilli*, 664 F.3d 192, 199 (7th Cir. 2011). "Racketeering activity" includes mail and wire fraud. § 1961(1). Only a "person injured in his business or property" can bring a claim, § 1964(c), and the plaintiff must show that the defendants' actions proximately caused the plaintiff's injury. *Hemi Grp., LLC v. City of New York*, 559 U.S. 1, 9 (2010).

Plaintiffs' claims for damages under RICO remain as to the non-state defendants only, and plaintiffs haven't adequately alleged fraud. Allegations based on information and belief generally do not satisfy Rule 9(b)'s particularity requirement. *See Pirelli Armstrong Tire Corp. Retiree Med. Ben. Tr. V. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011). There is one exception: when 1) the facts constituting the fraud aren't accessible to the complaining party, and 2) the party provides "grounds for…suspicion[]" of the fraud. *Id.* at 443. This exception accounts for information asymmetries—when only the other party has access to certain facts. *See Cincinnati Life Ins. Co. v. Beyrer*, 722 F.3d 939, 948 (7th Cir. 2013); *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1328 (7th Cir. 1994).

Almost all of plaintiffs' fraud-related who, what, when, where, and how information is asserted on information and belief, *see* [1] ¶¶ 222–24, 229–31, 242–45, 249–54, 258–63, 267–72, and plaintiffs offer no grounds to suspect fraud. What's more, plaintiffs' who, what, when, where, and how information is too vague to meet

Rule 9(b)'s particularly requirement. *See Midwest Grinding Co., Inc. v. Spitz*, 976 F.2d 1016, 1020 (7th Cir. 1992) ("[A RICO] complaint must, at minimum, describe the predicate acts with some specificity and state the time, place, and content of the alleged communications perpetrating the fraud.") (quotations and citation omitted). Plaintiffs don't provide the specific dates on which defendants allegedly committed mail and wire fraud; plaintiffs only provide multiple ranges or full months. *See, e.g.*, [1] ¶¶ 258–64. Nor do plaintiffs specify the "how"—what medium defendants used to make allegedly false assurances to the state. *See, e.g.*, [1] ¶¶ 258–64.

Finally, even assuming defendants committed mail and wire fraud, the fraud itself didn't proximately cause the alleged IDEA violations nor did it injure plaintiffs. *See Hemi Grp., LLC*, 559 U.S. at 9. Any injury to plaintiffs came from the alleged IDEA violations—failure to offer prior notice, reconvene IEP meetings, reimburse parents, and comply with the law's "stay-put" provisions. Assuming plaintiffs were injured at all, they were injured by defendants' lack of compliance with the IDEA—not by defendants' misrepresentations to the federal government about their compliance. Those misrepresentations would instead have injured the government, which gave the state funding on the explicit condition that the state comply with the IDEA. The absence of proximate cause cannot be fixed by amending the complaint, and because amending the RICO claims would be futile, those claims are dismissed with prejudice.[4]

---

[4] The RICO claims against the state officers are barred by sovereign immunity, and therefore would normally be dismissed without prejudice. *See Sorrentino v. Godinez*, 777 F.3d 410, 414–15 (7th Cir. 2015); *Lewis v. Suthers*, 2011 WL 2415166, at *4 (N.D. Ill. June 10, 2011) (if

13

### E. State-law claims

Because I dismiss the federal claims, I decline to exercise jurisdiction over the supplemental state-law claims for damages and dismiss them without prejudice. *See RWJ Mgmt. Co., Inc. v. BP Prods N.A., Inc.*, 672 F.3d 476, 479 (7th Cir. 2012).

## IV. Conclusion

The motions to dismiss, [28], [30], [31], are granted. The claims for injunctive relief and for relief under the IDEA, ADA, Rehabilitation Act, and Fourteenth Amendment are dismissed without prejudice for lack of jurisdiction and failure to exhaust administrative remedies. The RICO claims are dismissed with prejudice, and the remaining state-law claims are dismissed without prejudice under 28 U.S.C. § 1367(c)(3). Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: October 12, 2022

---

claims barred by sovereign immunity could be dismissed with prejudice, that dismissal would "bar the plaintiff's bringing the action in state court, to which action the Eleventh Amendment would not apply"). But even if they weren't barred by sovereign immunity, they would be dismissed for the same reason the RICO claims against the municipalities and municipal officials are dismissed. For that reason, the RICO claims against the state officers are dismissed with prejudice.